# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF LOUISIANA
### SHREVEPORT DIVISION

RENEÉ PIPKINS, EVERITT PIPKINS,
THERON JACKSON, LAWHITNEY JOHNSON,
ADRIANA THOMAS, AND ALL OTHERS
 SIMILARLY SITUATED,                                                    **PLAINTIFFS**

VERSUS                                              CIVIL ACTION NO. _____

DALE G. COX, IN HIS OFFICIAL CAPACITY
AS DISTRICT ATTORNEY OF CADDO PARISH,
(FIRST JUDICIAL DISTRICT OF LOUISIANA),                                 **DEFENDANT**

## COMPLAINT FOR DECLARATORY JUDGMENT AND PERMANENT INJUNCTIVE RELIEF

Plaintiffs Reneé Pipkins, Everitt Pipkins, Theron Jackson, LaWhitney Johnson, and Adriana Thomas, on behalf of themselves and all others similarly situated, bring this complaint under 42 U.S.C. § 1983 against Defendant Dale G. Cox, in his official capacity as District Attorney of Caddo Parish (First Judicial District of Louisiana), and allege the following facts in support of their claim for relief:

1.      Service as a juror in a criminal case is, along with voting in elections, one of the two means designed to be available to all citizens to participate in our government. But in Caddo Parish, Louisiana, the process of jury selection in criminal cases is intentionally manipulated by the District Attorney of Caddo Parish (First Judicial District of Louisiana) ("District Attorney") to limit the number of African-Americans seated on a jury. The District Attorney employs a custom, usage, and/or policy to exercise peremptory challenges against African-American citizens because

of their race, in order to empanel criminal trial juries that are predominantly white, in violation of the Fourteenth Amendment to the United States Constitution.

2.     Plaintiffs, adult resident citizens of Caddo Parish, Louisiana, are each qualified to serve as jurors in criminal cases under Article 401 of the Louisiana Code of Criminal Procedure. As registered voters, they each are on the list of eligible jurors maintained by the Caddo Parish Jury Commission. But because Plaintiffs are African-Americans, they face the imminent threat that they will be blocked from the jury box in criminal cases by the racial discrimination intentionally practiced by the District Attorney. The District Attorney's racially discriminatory custom, usage, and/or policy violates the rights guaranteed to Plaintiffs by the Equal Protection Clause of the Fourteenth Amendment.

3.     The District Attorney's racial discrimination is enabled by Article 795(C) and (E) of the Louisiana Code of Criminal Procedure, which on its face permits the exercise of peremptory challenges on the basis of racial criteria unless such challenge is "based **solely** upon the race" of the juror or where "no satisfactory racially neutral" reason is given. Article 795 (C) and (E), as applied, violate Plaintiffs' rights under the Equal Protection Clause of the Fourteenth Amendment.

4.     Further, Article 795(D) of that Code allows even the most blatant discrimination so long as both parties challenge the same juror. Article 795(D), both on its face and as applied, violates Plaintiffs' rights under the Equal Protection Clause of the Fourteenth Amendment.

5.     To redress these wrongs, Plaintiffs bring this civil action under 42 U.S.C. § 1983 ("Section 1983") for a declaratory judgment that the District Attorney's custom, usage, and/or policy to exercise peremptory challenges against African-American citizens because of their race

in order to empanel predominantly white criminal trial juries violates the Fourteenth Amendment.[1] Plaintiffs also seek permanent injunctive relief against this custom, usage, and/or policy.

6.      Plaintiffs further seek a declaratory judgment that Article 795 (C),(D), and (E) of the Louisiana Code of Criminal Procedure violates the Fourteenth Amendment to the extent those provisions permit the District Attorney to exercise a peremptory challenge motivated in substantial part by discriminatory intent.

### JURISDICTION AND VENUE

7.      This Court has jurisdiction over this civil action pursuant to 28 U.S.C. § 1331, as Plaintiffs' claims arise under the Fourteenth Amendment to the United States Constitution. Jurisdiction is also conferred by 28 U.S.C. § 1343(a)(3), in that Plaintiffs seek to redress the deprivation, under color of State law, custom, or usage, of their rights secured by the Fourteenth Amendment, and 28 U.S.C. § 1343(a)(4), in that Plaintiffs seek to secure equitable relief under Section 1983.

8.      Venue is appropriate in the Western District of Louisiana pursuant to 28 U.S.C. § 1391(b)(1) because the District Attorney resides in this district. Venue is also appropriate under 28 U.S.C. § 1391(b)(2) because a substantial number of the events and omissions giving rise to the claim occurred in the Western District.

---

[1] The District Attorney's custom, usage, and/or policy to exercise peremptory challenges against African-American citizens because of their race, in order to empanel predominantly white criminal trial juries, will sometimes be referred to below as "the District Attorney's custom of racially discriminatory jury selection."

## PARTIES

### A.    Plaintiffs

9.     Reneé Pipkins, Everitt Pipkins, Theron Jackson, LaWhitney Johnson, and Adriana Thomas are African American citizens of Caddo Parish, Louisiana, who are qualified to serve as criminal trial jurors in Caddo Parish, Louisiana, under La. C. Cr. P. art. 401. Each plaintiff is registered to vote in Caddo Parish, Louisiana, and is therefore on the list of eligible jurors compiled by the Caddo Parish Jury Commission.

### B.    Defendant

10.    Dale G. Cox is the currently serving District Attorney of Caddo Parish (First Judicial District of Louisiana).  As such, pursuant to Article V, § 26 of the Louisiana Constitution of 1974 and Article 61 of the Louisiana Code of Criminal Procedure, Defendant Cox has entire charge and control of every criminal prosecution instituted or pending in Caddo Parish, Louisiana, and determines whom, when, and how he shall prosecute. Cox is sued in his official capacity.

11.    At all times relevant to this Complaint, the District Attorney of Caddo Parish (First Judicial District of Louisiana) acted, and continues to act, under color of State law.

## CLASS ACTION ALLEGATIONS

12.    Pursuant to Rule 23 of the Federal Rules of Civil Procedure, the individual Plaintiffs named above bring this suit on behalf of themselves and all others similarly situated who are or will in the future be affected by Defendant's unconstitutional policies, practices, and customs.

13.    Plaintiffs seek to represent a class comprised of African-American citizens of Caddo Parish, Louisiana, who are registered to vote, meet all of the qualifications of La. C. Cr. P.

art. 401, and are therefore eligible to serve on criminal trial juries in Louisiana's First Judicial District.

14.    The class is so numerous that joinder of all members is impracticable. According to the Louisiana Secretary of State, there are currently 75,485 African-American registered voters in Caddo Parish. On information and belief, most of these African-American citizens also qualify for jury service.

15.    There are questions of fact and law common to all class members.

16.    Common questions of fact include, among others: whether the District Attorney has a custom, usage, and/or policy to exercise peremptory challenges against African-American citizens because of their race, in order to empanel criminal trial juries that are predominantly white; whether the District Attorney can justify his disproportionate use of peremptory challenges against African-American citizens for reasons other than race; whether the rights afforded to criminal defendants by the Supreme Court's decision in *Batson v. Kentucky,* 476 U.S. 79 (1986) effectively protect the class members from racial discrimination; whether the standard for implementing *Batson* found in Article 795 (C), (D), and (E) of the Louisiana Code of Criminal Procedure effectively protects the class members from racial discrimination.

17.    Common questions of law include, among others: whether the District Attorney has a custom, usage, and/or policy to exercise peremptory challenges against African-American citizens because of their race, in order to empanel criminal trial juries that are predominantly white; whether such a custom, usage, and/or policy violates the Fourteenth Amendment; whether the standard for implementing *Batson v. Kentucky* found in Article 795 (C) of the Louisiana Code of Criminal Procedure violates the Fourteenth Amendment, by only disallowing peremptory challenges where the peremptory challenge is based "solely" upon the race of the juror; whether

the standard for implementing *Batson v. Kentucky* found in Article 795 (D) of the Louisiana Code of Criminal Procedure violates the Fourteenth Amendment, by allowing peremptory challenges to be exercised on the basis of race where both the prosecutor and the defense attorney have challenged the same juror; whether the standard for implementing *Batson v. Kentucky* found in Article 795 (E) of the Louisiana Code of Criminal Procedure violates the Fourteenth Amendment, by only disallowing peremptory challenges where "no satisfactory racially neutral . . . reason is given or apparent."

18.     The questions of law or fact common to class members predominate over any questions affecting only individual members, so that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

19.     The claims or defenses of the Plaintiffs are typical of the claims of the proposed class members. The constitutional deprivations suffered by Plaintiffs are the same as those of the putative class members.

20.     The District Attorney has acted on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

21.     The Plaintiffs and their attorneys will fairly and adequately protect the interests of the class.  The Plaintiffs have no interests antagonistic to the proposed class, and they are represented by attorneys with significant expertise in criminal procedure and complex civil litigation.

## STATEMENT OF FACTS

### A.     The Importance of Jury Service in the Democratic Process of Self-Government

22.     One of the most significant privileges of self-government – second only to the right to vote – is the right to serve on a jury. The United States Supreme Court has held that "with the exception of voting, for most citizens the honor and privilege of jury duty is their most significant opportunity to participate in the democratic process."

23.     The tie between the right to vote and the right to serve on juries – the two foundations of democratic participation in self-government – was explicitly made in the ratification debates. And jury service eligibility has historically been tied to voter registration.

24.     It is no more constitutional to exclude these Plaintiffs from the jury box than it would be to bar them from the ballot box. But excluding Plaintiffs, and the putative class of African-American citizens of Caddo Parish who are qualified for jury service in criminal cases, is exactly what the District Attorney has done and continues to do.

### B.     The Process of Selecting Jurors in Caddo Parish, Louisiana

25.     Article 401 of the Louisiana Code of Criminal Procedure provides the following qualifications for jury service in criminal cases. A prospective juror must be a citizen of the United States of America and of the State of Louisiana. She must have been a resident of the parish in which she has been called to serve for at least one year prior to her potential service. She must be able to read, write, and speak the English language and be possessed of "sufficient knowledge of the English language." She must not be under interdiction, nor may she suffer from a mental or physical infirmity that renders her "incapable of serving as a juror." She must not be under indictment for a felony. She must never have been convicted of a felony.

7

26.    In Caddo Parish, the list of eligible voters is comprised of the parish voter registration list supplied by the Louisiana Secretary of State.

27.    According to the Louisiana Secretary of State, there are currently 163,414 registered voters in Caddo Parish; of these, 75,485 are African-Americans.

28.    Twice monthly, the Clerk of Court sends a jury summons and a questionnaire to prospective jurors. Approximately 13-14,000 summonses and questionnaires are sent annually. The questionnaire seeks information on the potential jurors' availability to serve, and on any basis for which they should be disqualified from service.

29.    Before the trial date set forth in the jury summons, a retired district judge serving as Judicial Administrator has discretion to excuse any juror for any reason. Once a juror attends the court on the summons/trial date, only the District Judge whose courtroom the juror is assigned may excuse the juror.

30.    When the prospective jurors arrive at the courthouse, they are sent to the judge's courtroom to which they have been assigned for *voir dire*.

31.    Either party may challenge jurors for cause under Articles 787 and 797 of the Louisiana Code of Criminal Procedure. The prosecution may also challenge potential jurors for cause under Article 798 of that Code.

32.    Article 788 (B) of the Louisiana Code of Criminal Procedure allows each judicial district to employ a system of simultaneous peremptory challenges in jury selection in criminal cases. Caddo Parish has opted to employ simultaneous peremptory challenges by local rule.

33.    In trials of offenses punishable by death or necessarily by imprisonment at hard labor, Article 799 of the Louisiana Code of Criminal Procedure allows each party in a criminal

case to exercise twelve peremptory challenges. This corresponds to the twelve-person jury required in such cases under Article 782 (A) of the Code.

34.    In trials of offenses not punishable by death or necessarily by imprisonment at hard labor, Article 799 of the Louisiana Code of Criminal Procedure allows each party to exercise six peremptory challenges. This corresponds to the six-person jury required in such cases under Article 782 (A) of the Code.

35.    Article 799.1 of the Louisiana Code of Criminal Procedure allows either party to exercise peremptory challenges at any time prior to the full complement of jurors being seated and before being sworn in by the court. This allows either the prosecution or the defense to exercise peremptory challenges to one or more of the jurors previously accepted. This practice is commonly referred to as "backstriking."

### C.    Custom, Usage, and Policy of Race Discrimination by the District Attorney

36.    The District Attorney employs a custom, usage, and/or policy to exercise peremptory challenges against African-American citizens because of their race, in order to empanel criminal trial juries that are predominantly white.

37.    The District Attorney's custom of racially discriminatory jury selection is long-established. The intentional use of peremptory challenges to strike African-Americans because of their race has been admitted by former members of the District Attorney's office.

38.    Objective evidence demonstrates the existence of the District Attorney's custom of racially discriminatory jury selection. From January 28, 2003 through December 5, 2012, over 330 criminal cases came on for trial in Caddo Parish (First Judicial District of Louisiana).

39.    The records of 332 non-sealed criminal trials from that time period, for which complete records were available, have been obtained by Plaintiffs pursuant to Louisiana Public

Records Act requests made by Reprieve Australia, a non-profit organization not affiliated with Plaintiffs or their counsel.

40.     The 332 trials were conducted during the following time period:

| Year | Cases |
|-----:|------:|
| 2003 | 25 |
| 2004 | 27 |
| 2005 | 35 |
| 2006 | 43 |
| 2007 | 41 |
| 2008 | 25 |
| 2009 | 38 |
| 2010 | 30 |
| 2011 | 40 |
| 2012 | 28 |

41.     Forty-five (45) different Assistant District Attorneys were involved as counsel for the prosecution in these 332 cases. Thirty (30) of those attorneys were white; fifteen (15) were African-American.

42.     Of these 332 trials, 224 utilized twelve-person juries, and 108 used six-person juries.

43.     In these 332 trials, 8,318 potential jurors were tendered to the District Attorney for peremptory challenge or acceptance as trial jurors. These 8,318 Caddo parish citizens survived the initial process of eliminating non-qualified jurors through the Parish Jury Coordinator's review of the questionnaires returned with the jury summonses. The 8,318 qualified jurors also survived any challenges for cause during or after *voir dire.* Each and every one of these 8,318 potential jurors were fully qualified under Louisiana law to serve as trial jurors.

44.     Of the 8,318 qualified jurors, 2,908 were identified as African-Americans. The District Attorney utilized the prosecution's peremptory challenges against 1,338 of these citizens.

Thus, the District Attorney barred 46% of the African-American qualified jurors from the jury box.

45.     Out of the remaining 5,410 qualified jurors who were not identified as African-Americans, the District Attorney struck only 830 such persons with peremptory challenges. This amounted to 15 % of the potential jurors who were presented to the District Attorney for jury selection.

46.     The table below illustrates the basic facts regarding the jurors accepted or struck by the District Attorney:

| Race | Accepted | Struck | TOTAL |
|---|---|---|---|
| Black | 1570 | 1338 | 2908 |
| Not Black | 4580 | 830 | 5410 |
| **TOTAL** | **6150** | **2168** | **8318** |

47.     Thus, when presented with an otherwise qualified black juror, the District Attorney's Office exercised its discretion to peremptorily strike that juror 46% of the time. By comparison, when presented with an otherwise qualified juror who was not black, the Office exercised its discretion to peremptorily strike the juror only 15% of the time.

48.     Over a ten-year period, this pattern of peremptory strikes shows that the District Attorney struck African-American citizens of Caddo Parish from jury service at three times the rate he struck jurors who were not African-American. The effect was statistically significant (p<.001).

49.     Even after controlling for other case characteristics and factors that may influence the District Attorney in exercising peremptory strikes (including the number of defendants, nature of the offense, jury size, gender of prospective juror, race and gender of defendant, race and gender

of judge, race and gender of prosecuting attorney, proportion of effective jury pool that was black, and proportion of effective jury pool that was male), the disproportionate rate of challenge to qualified African-American jurors remains. In fact, it becomes even more extreme. With these controls added (in addition to controlling for the potential interdependence among decisions about jurors within the same case), prosecutors struck African-American citizens of Caddo Parish from jury service at five times the rate of jurors who were not African-American. The effect was statistically significant (p<.001).

50.    Joint consideration of the race of the defendant and race of the juror showed that the disproportionate rate of challenge against African-American jurors was exacerbated when the defendant was black. When the defendant was white, the District Attorney was 2.6 times more likely to strike a black juror than he was to strike a white juror (p<.001). When the defendant was black, the District Attorney was 5.7 times more likely to strike a black juror than he was to strike a white juror (p<.001).

51.    In addition, statistical analyses controlling for extraneous factors revealed that the District Attorney was three times more likely to exercise a "backstrike" (as discussed in paragraph 35 above) on a previously accepted black juror than on a previously accepted white juror (p<.001).

52.    Because no other plausible explanation accounts for the disparity between the District Attorney's peremptory challenges against African-American jurors and those against white jurors, the only statistically significant factor explaining the disparity is the race of the juror.

53.    Although the time period of the trial data used in the detailed statistical analysis was from 2003-2012, the District Attorney's custom of racially discriminatory jury selection began before that time and has continued through the present.

54.     As a part of this custom, usage, and/or policy, the District Attorney directs, trains, and/or encourages prosecutors in the First Judicial District to use peremptory challenges to strike sufficient numbers of African-Americans to empanel predominately white juries. Prosecutors are directed, trained, and/or encouraged to use facially neutral pretexts, where called upon, to cover up the racially discriminatory intent that underlies the exercise of their peremptory challenges.

### D.     The District Attorney's Racially Disproportionate Use of Prosecutorial Power

55.     The District Attorney's custom of racially discriminatory jury selection to empanel predominately white criminal trial juries serves Defendant's purpose of disproportionately punishing African-Americans charged with criminal offenses.

56.     In the absence of racial diversity, criminal juries are vulnerable to implicit bias against races or cultures other than their own. This inherent bias may be triggered by the use of coded or "primed" language.

57.     Recent studies on judicial decision-making show that priming has devastating consequences for judicial decision-making. Empirical studies demonstrate that the cognitive influence of implicit bias can cause jurors to unknowingly misremember facts about cases in racially biased ways.

58.     Empirical studies also show that priming of implicit bias increases perceptions of youthful offenders as more culpable under the law and potentially dangerous in the future. Jurors who are racially primed are more likely to consider youthful behaviors the product of mature intent. Jurors who are racially primed are more likely to consider youthful offenders to be likely to reoffend. Jurors who are racially primed are more likely to believe that youthful behavior indicates an aggressive or hostile disposition.

59.     Where juries are predominantly composed of white citizens, prosecutors are free to use primed language, coded references, or similar tactics to induce a responsive verdict of a more severe crime than is the result where the defendant is tried by a more racially balanced jury.

60.     The District Attorney for the First Judicial District intentionally manipulates these dynamics. Where juries are predominantly white, the District Attorney more frequently introduces evidence of an African-American defendant's unemployment, paternity of children out of wedlock, use of marijuana and/or alcohol, and use of colloquialisms, i.e. "street talk." These characteristics are employed in argument to the jury to depict the defendant as a dangerous criminal – a "thug."

61.     Consistent with these tactics, the District Attorney characterizes parts of Caddo Parish society as a "jungle" – an express reference to the African ancestry of the defendants he chooses to prosecute.

62.     This racially-skewed justice is reflected in the District Attorney's prosecution of death penalty cases, in which 77% of condemned prisoners from Caddo Parish in the last forty years have been African-American.

63.     This disproportionality is the result of the District Attorney's discriminatory intent. For example, of the 868 homicides committed in Caddo Parish from 1988-2008, only 8.4% were allegedly committed by African-Americans against white victims. But of the 45 homicides in which the District Attorney sought the death penalty, 42.2% of the cases involved African-Americans accused of the murder of white victims.

64.     Put another way, the District Attorney sought death as punishment in 84% (61 of 73) of black-on-white homicides, but only 24% (193 of 795) of all other homicides.

E.     **The Louisiana Code of Criminal Procedure Aids and Abets the District Attorney's Racial Discrimination in Jury Selection**

65.     The Louisiana Legislature enacted Article 795 of the Louisiana Code of Criminal Procedure to implement *Batson* in the criminal courts of this state. But that code provision erects a high barrier of proof as a threshold to disallowing an otherwise racially discriminatory peremptory challenge.

66.     Thus, Article 795 (C) provides, in pertinent part (emphasis added): "No peremptory challenge made by the state or the defendant shall be based **solely** upon the race or gender of the juror. If an objection is made that the state or defense has excluded a juror **solely** on the basis of race or gender, and a prima facie case supporting that objection is made by the objecting party, the court may demand a satisfactory race or gender neutral reason for the exercise of the challenge, unless the court is satisfied that such reason is apparent from the *voir dire* examination of the juror."

67.     Likewise, Article 795 (E) states, in part (emphasis added): "Those jurors who have been peremptorily challenged and **for whom no satisfactory racially neutral or gender neutral reason** is apparent or given may be ordered returned to the panel, or the court may take such other corrective action as it deems appropriate under the circumstances."

68.     Thus, where the District Attorney and his well-trained staff provide any "race-neutral" reason when challenged, Louisiana law requires the juror be dismissed, even if, despite the presence of some "race-neutral" factors, the substantial or motivating reason for the peremptory challenge was based on race.

69.     Louisiana law therefore tolerates peremptory challenges that violate the Fourteenth Amendment.

15

70.     Additionally, Article 795 (D) gives a safe harbor for racism in the exercise of peremptory challenges. That provision states, in pertinent part, "The provisions of Paragraph C and this Paragraph shall not apply when both the state and the defense have exercised a challenge against the same juror." Thus, if both the District Attorney and the defense attorney agree to exclude Plaintiffs and putative class members on account of race, Louisiana law requires that the citizen be barred from the jury box.

**F.     The Effect of Race Discrimination in Jury Selection**

71.     The effect of the District Attorney's custom, usage, and/or policy of race discrimination in the exercise of peremptory challenges, combined with the enabling of these racial practices by Louisiana statutory law, is devastating to Plaintiffs and putative class members.

72.     Citizens excluded from juries because of their race are as much aggrieved as those indicted and tried by juries chosen under a system of racial exclusion.

73.     Further, the widespread knowledge that African-Americans will be blocked from jury service in Caddo Parish places a stigma or badge of inferiority on Plaintiffs and putative class members that imposes an indelible mark that African-Americans are second-class citizens in the prosecution of crimes in their courts. As a result, the criminal justice system itself loses legitimacy within the African-American community.

# CLAIMS FOR RELIEF

**A. The District Attorney's Custom of Racially Discriminatory Jury Selection Violates the Fourteenth Amendment Rights of Plaintiffs and Putative Class Members to Equal Protection of the Law.**

74.    Plaintiffs re-allege the allegations set forth in Paragraphs 1 – 73 of this Complaint.

75.    The District Attorney employs a custom, usage, and/or policy to exercise peremptory challenges against African-American citizens because of their race, in order to empanel criminal trial juries that are predominantly white, in violation of the Fourteenth Amendment to the United States Constitution.

76.    Pursuant to 42 U.S.C. § 1983, "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

77.    The District Attorney of the First Judicial District, in his official capacity, may be enjoined from constitutional violations inflicted by governmental custom under 42 U.S.C. § 1983, even though such a custom has not received formal approval through official decision-making channels.

78.    Congress included customs and usages in Section 1983 because of the persistent and widespread discriminatory practices of state officials. Even where not authorized by written law, such practices could be so permanent and well-settled as to constitute a custom or usage with the force of law.

79.     The Plaintiffs and putative class members have been, are, and will continue to be harmed by the custom, usage, and/or policy of the District Attorney of the First Judicial District to exercise peremptory challenges against qualified African-American jurors so as to exclude them from criminal trial juries on account of their race.

80.     The District Attorney's custom, usage, and/or policy violates the rights of Plaintiffs and putative class members to the equal protection of the laws, contrary to the Fourteenth Amendment to the United States Constitution. This Court has authority to enter a declaratory judgment to that effect.

81.     This Court also has authority to issue a permanent injunction forbidding the use of this custom, usage, and/or policy now and in the future, including such orders as are necessary to effectuate the constitutional command.

82.     Plaintiffs are also entitled to an award of attorney's fees and costs for the prosecution of this cause of action.

**B.  Article 795 of the Louisiana Code of Criminal Procedure Violates the Equal Protection Clause of the Fourteenth Amendment to the Extent that it Permits the District Attorney to Exercise Peremptory Challenges on the Basis of Race.**

83.     Article 795 (C) of the Louisiana Code of Criminal Procedure provides, in pertinent part: "No peremptory challenge made by the state or the defendant shall be based solely upon the race or gender of the juror. If an objection is made that the state or defense has excluded a juror solely on the basis of race or gender, and a prima facie case supporting that objection is made by the objecting party, the court may demand a satisfactory race or gender neutral reason for the exercise of the challenge, unless the court is satisfied that such reason is apparent from the *voir dire* examination of the juror."

84.     Likewise, Article 795 (E) states, in part: "Those jurors who have been peremptorily challenged and for whom no satisfactory racially neutral or gender neutral reason is apparent or given may be ordered returned to the panel, or the court may take such other corrective action as it deems appropriate under the circumstances."

85.     Thus, where the District Attorney provides any "race-neutral" reason when challenged, Louisiana law requires the juror be dismissed, even if, despite the presence of some "race-neutral" factors, the substantial or motivating reason for the peremptory challenge was based on race.

86.     Louisiana law therefore tolerates peremptory challenges that violate the Fourteenth Amendment's Equal Protection guarantee as interpreted by the Supreme Court in *Snyder v. Louisiana*, 552 U.S. 472 (2008).

87.     Article 795 (D) states, in pertinent part, "The provisions of Paragraph C and this Paragraph shall not apply when both the state and the defense have exercised a challenge against the same juror."

88.     Thus, if both the District Attorney and the defense attorney agree to exclude Plaintiffs and putative class members on account of race, Louisiana law requires that the citizen be barred from the jury box. This blatant "safe harbor" for racism in jury selection violates the rights of Plaintiffs and putative class members to equal protection of the laws.

89.     This Court has authority to enter a declaratory judgment that Article 795 (C), (D), and (E) of the Louisiana Code of Criminal Procedure violate the Fourteenth Amendment's Equal Protection Clause, to the extent that these provisions permit the District Attorney to exercise peremptory challenges motivated, even in part, by race.

## PRAYER FOR RELIEF

90.     WHEREFORE, PREMISES CONSIDERED, Plaintiffs request the following relief:

A.  Certification of a class of Plaintiffs comprised of African-American citizens of Caddo Parish, Louisiana, who are registered to vote, meet all of the qualifications of La. C. Cr. P. art. 401, and are therefore eligible to be listed by the Caddo Parish Jury Commission as potential jurors and to serve on criminal trial juries in Louisiana's First Judicial District.

B.  Entry of a declaratory judgment that the District Attorney of Caddo Parish (First Judicial District of Louisiana) has employed, and continues to employ, a custom, usage, and/or policy to exercise peremptory challenges against African-American citizens because of their race, in order to empanel criminal trial juries that are predominantly white.

C.  Issuance of a permanent injunction forbidding the District Attorney of Caddo Parish (First Judicial District of Louisiana) from exercising any peremptory challenges in criminal jury trials.

D.  In the alternative, issuance of a preliminary injunction forbidding the District Attorney of Caddo Parish (First Judicial District of Louisiana) from exercising any peremptory challenges to strike otherwise qualified African-American jurors from jury service in criminal jury trials.

E.  In the alternative, issuance of a permanent injunction forbidding the District Attorney of Caddo Parish (First Judicial District of Louisiana) to employ a custom, usage, and/or policy to exercise peremptory challenges against African-American citizens because of their race, in order to empanel criminal trial juries that are predominantly white.

F.  Issuance of a permanent injunction requiring the District Attorney of Caddo Parish (First Judicial District of Louisiana) to provide training to all attorneys and investigators of the office to prevent the use of peremptory challenges to discriminate against qualified African-American jurors in Caddo Parish in future criminal jury trials.

G.  Entry of a declaratory judgment that Article 795 (C), (D), and (E) of the Louisiana Code of Criminal Procedure violate the rights of qualified African-Americans to be free from discrimination on the basis of race in jury selection in criminal trials, to the extent that those sections (1) allow a peremptory challenge to be exercised against a qualified African-American juror, even if race is part of the motivation for the jury strike, so long as some "race-neutral" reason is given for the challenge; (2) allow a peremptory challenge to be exercised against a qualified African-American juror on account of race, if both the District Attorney and the defendant's attorney strike the same juror.

H.  Granting an award of attorneys' fees and costs under 42 U.S.C. § 1988.

I.   Such other relief as the Court finds to be proper in the premises.

Respectfully submitted,

*/s/James W. Craig*
James W. Craig, Bar No. 33687
Emily M. Washington, Bar No. 34143
Katie M. Schwartzmann, Bar No. 30295
Eric A. Foley, Bar No. 34199

Roderick & Solange MacArthur Justice Center
4400 S. Carrollton Ave.
New Orleans, LA 70119
(504) 620-2259 (p)
(504) 208-3133 (f)

jim.craig@macarthurjustice.org
emily.washington@macarthurjustice.org
katie.schwartzmann@macarthurjustice.org
eric.foley@macarthurjustice.org

*Attorneys for Plaintiffs*