UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| RENEE PIPKINS, EVERITT PIPKINS, THERON JACKSON, LAWHITNEY JOHNSON, ADRIANA THOMAS, REGINALD AUTREY, DARRYL CARTER, DIANE JOHNSON, KIMBERLY HORTON, THERESA HAWTHORNE AND ALL OTHERS SIMILARLY SITUATED | CIVIL ACTION NO. 5:15-CV-02722<br><br>JUDGE: DEE D DRELL<br><br>MAGISTRATE JUDGE: MARK L HORNSBY<br><br>JURY DEMAND |

*versus*

JAMES E. STEWART, SR., IN HIS
OFFICIAL CAPACITY AS DISTRICT
ATTORNEY OF CADDO PARISH
(FIRST JUDICIAL DISTRICT OF
LOUISIANA)

**MEMORANDUM IN SUPPORT OF
MOTION TO DISMISS UNDER FRCP 5.1, 19, 12(b)(1) and 12(b)(6)**

Respectfully submitted by:

| | |
|---|---|
| Allison A. Jones, T.A.<br>DOWNER, JONES, MARINO & WILHITE<br>401 Market Street, Suite 1250<br>Shreveport, Louisiana 71101<br>Tel: 318-213-4444<br>Fax: 318-213-4445<br>Email: aadnj@aol.com | Tommy Johnson<br>CADDO PARISH DISTRICT<br>ATTORNEY'S OFFICE<br>525 Marshall St. Fourth Floor<br>Shreveport, LA 71101<br>Phone: (318) 429-7618, ext. 2<br>Fax: (318) 629-4300<br>Email: TJohnson@caddoda.com |

Counsel for the Defendant

# TABLE OF CONTENTS

PROCEDURAL POSTURE ........................................................................................................ 6

ARGUMENT AND LAW .......................................................................................................... 7

1.  The Plaintiffs Have Failed to Properly Notice the Attorney General of the State of Louisiana and/or to Join A Proper Party Under FRCP 5.1 and FRCP 19 ................................. 7

2.  The Complaint Should Be Dismissed Under FRCP 12(b)(1) ............................................ 9

A.  The Plaintiffs Lack Standing to Pursue the Alleged Claims Because They Cannot Show That They Are Subject to Imminent Harm. ................................................................. 9

i.  Plaintiffs Cannot Establish an Injury in Fact, Causation and Redressablility ........... 10

B.  The Plaintiffs' Claims Should be Dismissed as There is No Justiciable Controversy Given That Plaintiffs' Claims Are Moot ........................................................................... 13

C.  Alternatively, This Court Should Abstain From Exercising Jurisdiction .................... 17

i.  Application of the Middlesex Factors ........................................................................ 19

(a)  First *Middlesex* Factor: Ongoing State Judicial Proceeding .............................. 19

(b)  Second *Middlesex* Factor: Important State Interest............................................. 19

(c)  Third *Middlesex* Factor: Adequate State Court Remedy ................................... 19

3.  Plaintiffs Fail to State a Claim Under FRCP 12(b)(6) .................................................... 20

A.  The Plaintiffs' Claims Are Barred by Res Judicata and Collateral Estoppel. .............. 20

B.  Plaintiffs Have Failed to State a Claim under 18 U.S.C. Section 243 ......................... 22

C.  Plaintiffs' Federal and State Claims are Barred by Prosecutorial Immunity............... 22

D.  Plaintiffs' Federal Claims are Barred by Qualified Immunity..................................... 22

E.  Plaintiffs' Federal Claims are Barred by the Eleventh Amendment............................ 22

CONCLUSION........................................................................................................................ 23

# TABLE OF AUTHORITIES

## Cases

*Aaron Wilson v. Burl Cain, Report and Recommendation of Magistrate Judge Kay* .................. 20

*Aetna Life Ins. Co. of Hartford, Connecticut v. Haworth,* 300 U.S. 227, 57 S.Ct. 461 (1937).... 13

*Arizonans for Official English v. Arizona,* 520 U.S. 43, 45 (1997) ........................................... 14

*Armstrong v. Turner Industries,* 141 F. 3d 554, 563 n.23 (5th Cir 1998) .................................. 10

*Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949 (2009) ...................................................................... 20

*Ashcroft v. Mattis,* 431 U.S. 171 (1977) ................................................................................. 11

*Baker v. Carr,* 369 U.S. 186, 204 (1962) ................................................................................ 10

*Batson v. Kentucky,* 109 S.Ct. 1712 (1986) .............................................................................. 6

*Bell Atlantic v. Twombly,* 550 U.S. 544, 553-55 (2007) ........................................................... 20

*Brown v. Nationsbank Corp,* 188 F.3d 579, 585-86 (5th Cir. 1999) ........................................ 20

*Celestine v. TransWorld  Inc.,* 467 Fed. App'x. 317, 318 (5th Cir. 2012) ................................. 9

*Church of Scientology of Cal. v. United States,* 506 U.S. 9, 12, 113 S.Ct. 447, 449 (1992)........ 15

*Church of Scientology,* 506 U.S. at 12, 113 S.Ct. 447 .............................................................. 15

*City of Los Angeles v. Lyons,* 461 U.S. 95, 105 (1983) ....................................................... 10, 11

*Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813, 817 (1976)....... 17

*Connick v. Thompson, U.S,* 131 S.Ct. 1350, 1363 (2011) ........................................................ 16

*Corwin v. Johnson,* 150 F.3d 456, 471 (5th Cir. 1998) ......................................................... 20

*Deakins v. Monaghan*, 484 U.S. 193, 203 (1988) .................................................................... 17

*Friends of the Earth Inc. v. Laidlaw Envtl. Servic Inc.* 528 U.S. 167, 120 S.Ct. 693 (2000)....... 15

*Funk v. Stryker Corp.,* 631 F.3d 777, 783 (5th Cir. 2011) ..................................................... 12

*Health Net, Inc. v. Wooley,* 534 F.3d 487, 494 (5th Cir. 2008) ................................................ 18

*Henschen v. City of Houston,* 959 F.2d 584, 588 (5th Cir. 1992) ........................................... 10

*Huffman v. Pursue, Ltd.*, 420 U.S. 592, 601 (1975) ................................................................ 18

*Imbler v. Pachtman*, 424 U.S. 409, 96 S.Ct. 984 .................................................................... 22

*Kohen v. Pacific Inv. Management Co. LLC,* 571 F.3d 672, 676 (7th Cir. 2009) ...................... 6

*Lewis v. Cont'l Bank Corp., 494 U.S. 472, 477–79, 110 S.Ct. 1249, 1253-54 (1990)* ................. 14

*Louisiana Debating and Literary Ass'n v. City of New Orleans*, 42 F.3d 1483, 1490 (5th Cir.
    1995) ................................................................................................................................. 18

*Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992) .................................................... 9, 10

*Mansfield C. & L.M.R. Co. v Swan,* 111 U.S. 379, 382, 4 S.Ct. 510, 511, 28 L.Ed. 426 (1984). 14

*Marathon Oil Co. v Ruhrgas,* 145 F.3d 211 (5th Cir. 1998) .................................................. 14

*Maryland Cas. Co. v. Pacific Coal & Oil Co*., 312 U.S. 270, 273, 61 S.Ct. 510, 512 (1941) ..... 14

*McNutt v. Gen. Motors Acceptance Corp*., 298 U.S. 178, 189, 56 S.Ct. 780, 785 (1936) ............ 9

*Middlesex County Ethics Commission v. Garden State Bar Association*, 457 U.S. 423, 432
    (1982) ............................................................................................................................... 18

*Miller-El v. Dretke,* 125 S.Ct. 2317, 2325 (2005) ............................................................. 6, 20

*Mitchell v. Forsyth,* 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985) ............................. 22

*Nall v. Stringer,* 4 F.3d 989, 1993 WL 360771, at *3 (5th Cir. 1993) ...................................... 18

*O'Shea v. Littleton,* 414 U.S. 488, 496 (1974) ...................................................................... 10

*Perez v. Doctor's Hosp. at Renaissance, Ltd.,* 624 F. App'x 180, 183 (5th Cir. 2015) ............... 10

*Powers v. Ohio*, 499 U.S. 400, 111 S. Ct. 1364, 113 L. Ed. 2d 411 (1991) ........................... 20, 22

*S. Bank & Trust Co. v. Harrison Sales Co*., 285 S.C. 50, 51–52, 328 S.E.2d 66, 67 (1985) ....... 14

*Samuels v. Mackell,* 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed. 2d 688 (1971) ...................................... 19

*Sossaman v. Lone Star State of Texas*, 560 F. 3d. 316, 324 (5th Cir. 2009).................................. 15

*State of Louisiana v. Tommorrea Shamichael Carter* No. 316, 082............................................... 12

*Stauffer v. Gearhart,* 741 F.3d 574 (5th Cir. 2014) ...................................................................... 15

*Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 93-102 (1998) ............................................. 9

*Steering Committee v. BP Exploration & Prod (In re Deepwater Horizon),* 785 F.3d 1003, 1018-20 (5th Cir. 2015).......................................................................................................................... 6

*Tex. Midstream Gas Services, LLC v. City of Grand Prarie,* 608 F.3d. 200, 204-5 (5th Cir. 2010) .......................................................................................................................................................... 15

*Texas Ass'n of Business v. Earle*, 388 F.3d 515, 519 (5th Cir. 2004) ........................................ 18

*United States v. Fischer,* 372 F. App'x 5343, 535-36 (5th Cir. 2010) ......................................... 15

*United States v. Hays*, 515 U.S. 737, 743, 115 S.Ct. 2431, 2435 (1995) ...................................... 9

*Van de Kamp v. Goldstein*, 555 U.S. 335, 129 S.Ct. 855 ............................................................. 22

*Wightman v. Tex. Supreme Ct*., 84 F.3d 188, 189 (5th Cir. 1996)............................................... 18

*Younger v. Harris,* 401 U.S. 371 (1971).................................................................................. 17, 19

## Statutes

18 U.S.C. Section 243 ................................................................................................................... 22

42 U.S.C. Section 1983 ................................................................................................................. 22

FRCP 12(b)(6) ............................................................................................................................... 20

La. Sup. Ct. R. XXV .................................................................................................................. 12, 19

## Other Authorities

Albert W. Alschuler, *The Supreme Court and the Jury: Voir Dire, Peremptory Challenges, and the Review of Jury Verdicts*, 56 U. CHI. L. REV. 153, 194-95 (1989) .................................... 21

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

RENEE PIPKINS, EVERITT PIPKINS,          CIVIL ACTION NO. 5:15-CV-02722
THERON JACKSON, LAWHITNEY
JOHNSON, ADRIANA THOMAS,                 JUDGE: DEE D DRELL
REGINALD AUTREY, DARRYL
CARTER, DIANE JOHNSON,                   MAGISTRATE JUDGE: MARK L HORNSBY
KIMBERLY HORTON, THERESA
HAWTHORNE AND ALL OTHERS                 JURY DEMAND
SIMILARLY SITUATED

*versus*

JAMES E. STEWART, SR., IN HIS
OFFICIAL CAPACITY AS DISTRICT
ATTORNEY OF CADDO PARISH
(FIRST JUDICIAL DISTRICT OF
LOUISIANA)

**MEMORANDUM IN SUPPORT OF
MOTION TO DISMISS UNDER FRCP 5.1, 19, 12(b)(1) and 12(b)(6)**

James E. Stewart, Sr., in his official capacity as District Attorney of Caddo Parish

("Stewart" or "Defendant" herein"),  by and through undersigned counsel, without waiving and

expressly maintaining all rights, defenses and motions to these proceedings, appears solely

pursuant to Federal Rules of Civil Procedure ("FRCP") 5.1, 19, 12(b)(1) and 12(b)(6)  and

respectfully moves this Court to dismiss the claims of  Plaintiffs Renee Pipkins, Everitt Pipkins,

Theron Jackson, LaWhitney Johnson, Adriana Thomas, Reginald Autrey, Darryl Carter, Diane

Johnson, Kimberly Horton and Theresa Hawthorne (collectively the "Plaintiffs"), set forth in the

Third Amended Complaint (R.18)[1]:

---

[1] Defendant Stewart maintains all rights, objections and privileges and defenses and does not admit
any of the Plaintiffs' allegations expressly denying the same.

5

## PROCEDURAL POSTURE

In *Batson v. Kentucky,* 109 S.Ct. 1712 (1986), the United States Supreme Court ("Supreme Court") held that the state's use of peremptory strikes to remove prospective jurors based on race violated the Fourteenth Amendment.  As a result, a state court mechanism is in place to ensure that preemptory strikes are not used in a discriminatory manner.  *Miller-El v. Dretke,* 125 S.Ct. 2317, 2325 (2005). That state court mechanism is subject to federal review under federal habeas review. *Id*. On November 19, 2015, the Plaintiffs commenced this case against former District Attorney Dale Cox, asserting systemic race discrimination based upon the use of peremptory challenges in criminal cases by District Attorney Dale Cox and his predecessors in office. (R.1). Plaintiffs sought declaratory and injunctive relief under a variety of theories, seeking, among other things, declaratory and injunctive relief "forbidding the District Attorney in Caddo Parish (First Judicial District of Louisiana) from exercising any peremptory challenges in criminal jury trials." (R. 18, para. 125(C)) [2] The Plaintiffs allege that the District Attorney Dale Cox, and his predecessors in office, allowed a custom, practice and usage of peremptory strikes such that jurors who have been struck have had a violation of their rights under the Constitution. Plaintiffs' unfounded premise, is in direct contradiction to the *Batson* guiding principles*,* and if sanctioned opens the litigation

---

[2] On January 8, 2016, Plaintiffs filed a Motion to Certify Class (R. 7).  Following a Status Conference with the Court, the parties have submitted two proposed Plans of Work (R. 19). This Motion is limited to notice, standing, mootness and other justiciability issues including the request for abstention. Defendant Stewart does not address Plaintiffs' Motion to Certify Class because Defendant believes that the Court should first rule on Defendant's Motion to Dismiss. Defendant will oppose Plaintiffs' motion for class certification in accordance with any Plan of Work adopted by this Court; however, Defendant notes that in the event of a ruling by this Court that the named Plaintiffs lack standing to assert these claims, and/or to the extent that the case is deemed moot as argued for herein, resolution of the motion for class certification likewise becomes moot. See, *Kohen v. Pacific Inv. Management Co. LLC,* 571 F.3d 672, 676 (7th Cir. 2009), *Steering Committee v. BP Exploration & Prod (In re Deepwater Horizon),* 785 F.3d 1003, 1018-20 (5th Cir. 2015).

6

floodgates for every potential juror excluded via the use of peremptory strikes.[3]  For the reasons set forth more fully herein, Plaintiffs' claims should be rejected.

On November 21, 2015, shortly after the filing of the Complaint, Caddo Parish elected James E. Stewart, Sr., as the first African American to hold office as the District Attorney of Caddo Parish.  Plaintiffs filed an Amended Complaint to name District Attorney James E. Stewart, Sr. as the proper Defendant in this case. (R.6). The First Amended Complaint was subsequently amended a second and third time to add additional named Plaintiffs. (R. 16, R 18.).

As discussed in more detail herein below, Stewart vehemently denies the allegations of the Plaintiffs and files this Motion to Dismiss because: (i) there is a failure to provide proper notice and to join the Louisiana Attorney General as a required party pursuant to FRCP 5.1 and 19; (ii) Plaintiffs lack standing to pursue the alleged claims;  (iii) there is no longer a justiciable case or controversy for the Court to decide such that the claims should be dismissed as moot; and (iv) Plaintiffs' claims fail to state a cause of action against Stewart.  Alternatively, Stewart submits that the Court properly should abstain from considering this case.

## ARGUMENT AND LAW

**1.    The Plaintiffs Have Failed to Properly Notice the Attorney General of the State of Louisiana and/or to Join A Proper Party Under FRCP 5.1 and FRCP 19**

Rule 5.1 provides as follows:

 a.  Notice by a Party. A party that files a pleading, written motion, or other paper drawing into question the constitutionality of a federal or state statute must promptly:

  1.  File a notice of constitutional question stating the question and identifying the paper that raises it, if:

---

[3] Ironically, if the state is denied the right to use peremptory challenge, but the defense is allowed to exercise the same, the effect of the relief requested by Plaintiffs is, in and of itself, discriminatory.

> A.      A federal statute is questioned and the parties do not include the United States, one of its agencies, or one of its officers or employees in an official capacity; or
>
> B.      A state statute is questioned and the parties do not include the state, one of its agencies, or one of its officers or employees in an official capacity; and
>
> 2.      *Serve the notice and paper on the Attorney General of the United States if a federal statute is questioned – or on the state attorney general if a state statute is questioned – either by certified or registered mail or by sending it to an electronic address designated by the attorney general for this purpose. (emphasis added).*

Plaintiffs' Third Amended Complaint specifically seeks declaratory relief and directly challenges the constitutionality of a Louisiana statute. (R.18, paras. 74-79, 113-120).  Plaintiffs did not provide the required notice to the Attorney General of the State of Louisiana. Accordingly, Plaintiffs have failed to provide proper notice, as required by FRCP 5.1.

Moreover, FRCP 19 provides as follows:

(a) PERSONS REQUIRED TO BE JOINED IF FEASIBLE.

> (1) *Required Party.* A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
>
> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
>
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>
>> (i)      as a practical matter impair or impede the person's ability to protect the interest; or
>>
>> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

(2) *Joinder by Court Order.* If a person has not been joined as required, the court must order that the person be made a party. A person who refuses to join as a plaintiff may be made either a defendant or, in a proper case, an involuntary plaintiff.

Defendant shows that it is feasible to join the Louisiana Attorney General in this case, and that said joinder is required under FRCP 5.1 and 19.

**2.      The Complaint Should Be Dismissed Under FRCP 12(b)(1)**

The Federal Rules of Civil Procedure allow a defendant to move for dismissal when the court lacks jurisdiction over the subject matter of the action. FRCP 12(b)(1). In considering a 12(b)(1) motion to dismiss, the burden is on the party asserting jurisdiction to prove that federal subject matter jurisdiction is proper. See *United States v. Hays*, 515 U.S. 737, 743, 115 S.Ct. 2431, 2435 (1995)(citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189, 56 S.Ct. 780, 785 (1936)) *Celestine v. TransWorld  Inc.,* 467 Fed. App'x. 317, 318 (5th Cir. 2012). Plaintiffs have failed to prove that federal subject matter is proper, and, accordingly, their claims should be dismissed.

**A.      The Plaintiffs Lack Standing to Pursue the Alleged Claims Because They Cannot Show That They Are Subject to Imminent Harm**

Standing is a jurisdictional doctrine that must be decided before the merits of a case. *See, Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 93-102 (1998). Article III, Section 2 of the Constitution limits the subject matter jurisdiction of this Court to certain "cases" and "controversies."  The doctrine of standing "is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

A party invoking federal jurisdiction bears the burden of establishing three elements of standing: (i) injury in fact; (ii) causation and (iii) redressability. Plaintiffs lack standing because each fails to satisfy the requisite standing requirements.

9

  **i.**  **Plaintiffs Cannot Establish an Injury in Fact, Causation and Redressablility**

  The first element of standing is injury in fact. *Lujan, supra*. A plaintiff must demonstrate some "personal stake in the outcome" in order to "assure that concrete adverseness which sharpens the presentations of issues" necessary for the resolution of constitutional claims. *Baker v. Carr,* 369 U.S. 186, 204 (1962). Abstract harm is not enough. *Id.*  When a plaintiff seeks only injunctive and declaratory relief - as in the instant case - the court must assess whether the plaintiff has sufficiently shown a real and immediate threat of "future harm" in order to determine whether the plaintiff has satisfied the "injury in fact" requirement.  *City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983). Such injury must be "real and immediate," not "conjectural" or "hypothetical." *Id.* See also, *Armstrong v. Turner Industries,* 141 F. 3d 554, 563 n.23 (5th Cir 1998).  Furthermore, for an injury to suffice for prospective relief, it must be "imminent."  *Id.* Standing to seek injunctive relief requires plaintiffs to show that they suffer or will suffer an injury-in-fact, and therefore would benefit from the court's granting of equitable relief. *Perez v. Doctor's Hosp. at Renaissance, Ltd.,* 624 F. App'x 180, 183 (5th Cir. 2015).

  Moreover, "past wrongs do not in themselves amount to that real and immediate threat of injury necessary to make out a case or controversy." *Armstrong, supra at n. 23 (*citing *Lyons*, 461 U.S. at 103), *Henschen v. City of Houston,* 959 F.2d 584, 588 (5th Cir. 1992) (citing *O'Shea v. Littleton,* 414 U.S. 488, 496 (1974).  The *Lyons* case is instructive. In *Lyons*, the plaintiff sought to enjoin the police department of the City of Los Angeles from the use of control chokeholds "except in situations where the proposed victim of said control reasonably appears to be threatening the immediate use of deadly force." In its determination finding that the plaintiff lacked standing and dismissal of the case, the Court reaffirmed the earlier precedent of *O'Shea v. Littleton, supra.  In O'Shea,* the Supreme Court dismissed the case brought by a class of plaintiffs claiming

10

that they had been subjected to discriminatory enforcement of the criminal law on the finding that there was no case or controversy as "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief…*if unaccompanied by any continuing, present adverse effects*." *Id*. at 493 (emphasis added). The *Lyons* court likewise reaffirmed that "speculation is insufficient to establish the existence of a present, live controversy." (*Lyons*, 461 U.S. at 103 citing *Ashcroft v. Mattis*, 431 U.S. 171 (1977).  Applying this case law, the Supreme Court found that Lyons likewise lacked standing to seek an injunction that depended upon whether he was likely to suffer future injury from use of chokeholds by police officers stating that while:

> … Lyons may have been illegally choked by the police on October 6, 1976, while presumably affording Lyons standing to claim damages against the individual officers and perhaps against the City, does nothing to establish a real and immediate threat that he would again be stopped for a traffic violation, or for any other offense, by an officer or officers who would illegally choke him into unconsciousness without any provocation or resistance on his part. The additional allegation in the complaint that the police in Los Angeles routinely apply chokeholds in situations where they are not threatened by the use of deadly force falls far short of the allegations that would be necessary to establish a case or controversy between these parties. *Lyons* at p. 105

As in *Lyons*, even if prior misconduct was assumed to have occurred, which is denied, there is no serious risk of continuing injury – much less irreparable injury. Simply put, any alleged wrongful conduct or injury cannot be tied to any actions of Stewart. Similar to *Lyons*, the fact that prior specific individuals may have taken a prior action, there is nothing to establish that these Plaintiffs would again be summoned for jury duty and that a peremptory challenge would inappropriately be utilized by the State with respect to a particular Plaintiff.

 The lack of risk of continuing injury is further confirmed in the dated "objective evidence," attempted to be relied upon by Plaintiffs. In the Complaint, Plaintiffs allege a "custom of racially discriminatory jury selection" based upon a study of 330 criminal cases from January 28, 2003 through December 5, 2012, by Reprieve Australia, a nonprofit organization whose stated purpose

is to end the death penalty globally. (R. 18).[4]  Nothing in that study even purports to identify anything that has occurred in the Caddo Parish in the last nearly four years. Plaintiffs Rene Pipkins, Everitt Pipkins, Theron Jackson, LaWhitney Johnson, Adriana Thomas and Reginald Autrey ("Qualified Jurors") allege only that they are qualified to serve as jurors. The remaining Plaintiffs Darryl Carter, Diane Johnson, Kimberly Horton and Theresa Hawthorne ("Alleged Blocked Jurors") are all jurors, who allege that they were blocked from jury service by peremptory challenges by the State.  Each Alleged Blocked Juror was called for jury duty in February 2015 or April 2015 - months before the election of Stewart (R.18, para 83-103). None of the Alleged Blocked Jurors can demonstrate that they have suffered harm or may suffer harm in the future. Any potential misconduct or harm as alleged in the Complaint is directly attributable to prior conduct – not to any actions by Stewart.

There is nothing that prevents each of the Plaintiffs from serving on a jury in the future, and, indeed, under state law the Alleged Blocked Jurors can be called for jury service again. La. Sup. Ct. R. XXV.  The allegations of the Alleged Blocked Juror Plaintiff, Theresa Hawthorne, are particularly telling. Ms. Hawthorne was called for jury duty and assigned to the venire for the case of *State of Louisiana v. Tommorrea Shamichael Carter* No. 316, 082, tried in front of Judge Mosley, an African American judge, in Caddo Parish in April 2015.[5] In that case, Ms. Hawthorne was struck by peremptory challenge. The State did not exhaust its peremptory challenges, using only three.  The Defendant's counsel also used three peremptory challenges. One juror was struck

---

[4] It is interesting to note that the statistics cited in the Complaint regarding the Reprieve Australia "study" are mathematically incorrect and overstated. Moreover, any claims by any juror included in this purported "study" would be prescribed under the applicable statute of limitations.

[5] Under Fifth Circuit law, the Court may take judicial notice of court orders and public records. See, *Funk v. Stryker Corp.,* 631 F.3d 777, 783 (5ᵗʰ Cir. 2011).

for cause.  The minutes of the court/trial show the defendant's counsel did not assert a *Batson* challenge.  There is no evidence of a *prima facie* case of discrimination to allow for consideration of a *Batson* challenge even if one had been made.  Even more importantly**, the defendant was found not guilty on June 17, 2015**.  Assuming the defendant had made a *Batson* challenge, it would have been rendered moot by the not guilty verdict.  Now, Ms. Hawthorne is alleging that her race motivated the State's exercise of a peremptory challenge. The facts prove otherwise. Moreover, there is nothing that prevents Ms. Hawthorne from being called again in the future as a juror, and there is nothing to suggest that under Stewart's tenure she would be inappropriately struck by use of peremptory challenge.

Reliance on prior isolated acts, like the dated acts as asserted by the Qualified Jurors and the Alleged Blocked Jurors, do not meet the requirements for Plaintiffs to have standing before this Court.  Blanket unsupported challenges to the exercise of peremptory challenges, as attempted by Plaintiffs herein, are not what the *Batson* Court intended, envisioned, or ever imagined.

As demonstrated herein and based on the applicable case law, there has been no showing that any of the named Plaintiffs face imminent harm or have been injured and, consequently, none have a continuing interest in obtaining injunctive relief. Where there is no injury, there can be no causation or redressability. It is clear that all of the named Plaintiffs have failed to demonstrate a live, present controversy. Accordingly, Plaintiffs lack standing to bring their claims.

**B.    The Plaintiffs' Claims Should be Dismissed as There is No Justiciable Controversy Given That Plaintiffs' Claims Are Moot**

As shown above, federal courts sit to adjudicate actual cases or controversies. A moot matter is not a live case or controversy. A justiciable controversy must not be hypothetical, abstract, academic, moot, or calling for an advisory opinion; rather, it must be definite, concrete,

"real and substantial." *Aetna Life Ins. Co. of Hartford, Connecticut v. Haworth,* 300 U.S. 227, 57

S.Ct. 461 (1937). The difference between an abstract question and a real controversy is one of

degree. In the declaratory judgment context, the Supreme Court has stated that the basic question

is whether under all the circumstances the facts alleged show a controversy *of adverse legal

interests of sufficient immediacy and reality* to warrant the issuance of a declaratory judgment.

*Maryland Cas. Co. v. Pacific Coal & Oil Co.,* 312 U.S. 270, 273, 61 S.Ct. 510, 512 (1941)

(emphasis added). Stated another way, a declaratory judgment action must involve an actual,

justiciable controversy. If it does not, then the case can be deemed moot.   A justiciable controversy

is a real and substantial controversy which is ripe and appropriate for judicial determination, as

distinguished from a contingent, hypothetical or abstract dispute. *S. Bank & Trust Co. v. Harrison

Sales Co.,* 285 S.C. 50, 51–52, 328 S.E.2d 66, 67 (1985).

    "The requirement that subject matter jurisdiction be established as a threshold matter

springs from the nature and the limits of judicial power of the United States" and is "inflexible and

without exception." *Marathon Oil Co. v Ruhrgas,* 145 F.3d 211 (5th Cir. 1998) (en banc) quoting

*Mansfield C. & L.M.R. Co. v Swan,* 111 U.S. 379, 382, 4 S.Ct. 510, 511, 28 L.Ed. 426 (1984).

Additionally, the case-or-controversy requirement applies to all stages of a federal case. See *Lewis

v. Cont'l Bank Corp., 494 U.S. 472, 477–79, 110 S.Ct. 1249, 1253-54 (1990*). "[I]t is not enough

that a dispute was very much alive when [the] suit was filed," but the parties must continue to have

a "particularized, concrete stake" in the outcome of the case through all stages of litigation. *See

also, Arizonans for Official English v. Arizona,* 520 U.S. 43, 45 (1997) (holding that where there

is no longer any controversy, an Article III court lacks subject matter jurisdiction because a

controversy must exist at all stages of the litigation).

Given the clear language of Article III of the Constitution, federal courts have "no authority to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it." *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12, 113 S.Ct. 447, 449 (1992). In the Fifth Circuit, a change in factual circumstances can make a case moot. *Stauffer v. Gearhart,* 741 F.3d 574 (5th Cir. 2014). The same can happen when an event occurs that makes it impossible for the court to grant any effectual relief to the plaintiff, *United States v. Fischer,* 372 F. App'x 5343, 535-36 (5th Cir. 2010); *Tex. Midstream Gas Services, LLC v. City of Grand Prarie,* 608 F.3d 200, 204-5 (5th Cir. 2010) citing *Church of Scientology*, *supra*. The doctrine of mootness may apply when, by the time a suit is ready for adjudication, the challenged practice or policy may no longer affect the plaintiff. See, *Stauffer*, *supra* p.581.

In *Stauffer,* the Fifth Circuit recognized that the voluntary discontinuance of a challenged practice is usually enough to render a case moot. Indeed, *Stauffer* is particularly instructive here. The plaintiff in Stauffer raised a First and Fourteenth Amendment challenge to the Texas Department of Criminal Justice("TDCJ") application of a Sex Offender Treatment Program's written policy of confiscating certain publications. After the commencement of the litigation, TDCJ changed its policy, and the plaintiff was not at risk of being denied the requested publications. Based on the defendant's policy change, the court dismissed the plaintiff's claims for injunctive relief as moot noting that where the controversy has been "resolved to the point that they no longer qualify as 'adverse parties with sufficient legal interests to maintain the litigation,' we are without power to entertain the case." *Stauffer, supra* at p. *581 (citing Sossaman v. Lone Star State of Texas,* 560 F. 3d. 316, 324 (5th Cir. 2009).  The Fifth Circuit further recognized that government entities bear a "lighter burden" in proving that the conduct will not recur once the suit

is dismissed as moot. *Id.* at p. 581 (citing *Friends of the Earth Inc. v. Laidlaw Envtl. Servic Inc.* 528 U.S. 167, 120 S.Ct. 693 (2000)). As explained by the Court upon dismissing the plaintiff's claims as being too speculative to avoid mooting the case:

> "[G]overnment actors in their sovereign capacity and in the exercise of their official duties are accorded a presumption of good faith because they are public servants, not self- interested private parties. Without evidence to the contrary, we assume that formally announced changes to official governmental policy are not mere litigation posturing" *Id.* at 581 (citing *Friends of the Earth, supra*).

In the instant case, Stewart disputes that there was ever any custom or practice that allowed the discriminatory use of peremptory challenges. Indeed, all of the conclusory allegations made against District Attorney Dale Cox and his predecessors in office by the Reprieve Australia report, cited in the Complaint, occurred nearly four years before Stewart was sworn in. None of the named Plaintiffs were called for jury duty during the tenure of Stewart. There are no allegations in the Complaint that Stewart <u>presently</u> has a policy and practice of mandating the use of peremptory strikes in violation of the Constitution by members of that office or that prosecutors in such offices presently use peremptory strikes in violation of the Constitution at the direction of Stewart. There are no allegations of a current or ongoing practice and custom by Stewart, or anyone working for him, to intentionally violate or deliberately disregard the rights of African Americans in the use of peremptory strikes. See, *Connick v. Thompson,* 131 S.Ct. 1350, 1363 (2011) (discussing the difficulty of a failure to train theory as applied to attorneys because "a licensed attorney making legal judgments, in his capacity as a prosecutor….simply does not present the same 'highly unpredictable' constitutional danger as ..untrained [police] officer."). Nor can there be.

Simply put, Plaintiffs can make no showing that there exists a current case of controversy, and this case properly should be deemed moot. Accordingly, in addition to the other failures addressed herein, this Court should dismiss Plaintiffs' claims as moot.

### C.    Alternatively, This Court Should Abstain From Exercising Jurisdiction

The relief requested in the Third Amended Complaint would effectively require this Court to take over and administer the job of Caddo Parish District Attorney despite the fact that the office has been entrusted to the District Attorney, Stewart, by the electorate of Caddo Parish. As such, even if this Court were otherwise inclined to maintain Plaintiffs' action, Stewart requests that this Court abstain from exercising jurisdiction over this action pursuant to *Younger v. Harris,* 401 U.S. 371 (1971).

Federal courts have a "virtually unflagging obligation" to exercise jurisdiction granted to them. *Deakins v. Monaghan,* 484 U.S. 193, 203 (1988) (quoting *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 813, 817 (1976)). Certain doctrines, however, require abstention in "extraordinary circumstances." *Deakins,* 484 U.S. at 203. One such abstention doctrine originates from the Supreme Court's decision in *Younger v. Harris, supra.* In *Younger,* the Supreme Court reversed a district court decision enjoining a state district attorney (Younger) from prosecuting Harris under the California Criminal Syndicalism Act (which Harris claimed ran afoul of certain constitutional rights), because that injunction violated a "national policy forbidding federal courts to stay or enjoin pending state court proceedings except under special circumstances." *Younger v. Harris*, *supra.* As the Supreme Court has subsequently explained, *Younger* abstention

> "is reinforced by . . . an aspect of federalism which we have described as 'the notion of 'comity,' that is, a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways.' Central to *Younger* was the recognition that ours is a system in which 'the National Government, anxious though it may be to vindicate and protect federal rights and federal interests, always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the States."

17

*Huffman v. Pursue, Ltd*., 420 U.S. 592, 601 (1975) (quoting *Younger*, *supra* at 43-45).

The Fifth Circuit has noted that, "[a]lthough *Younger* abstention originally applied only to criminal prosecutions, it also applies when certain civil proceedings are pending, if the State's interests in the proceeding are so important that exercise of the federal judicial power would disregard the comity between the States and the National Government." *Health Net, Inc. v. Wooley*, 534 F.3d 487, 494 (5th Cir. 2008). Abstention under *Younger* "is generally deemed appropriate [when] assumption of jurisdiction by a federal court would interfere with pending state proceedings, whether of a criminal, civil, or even administrative character." *Louisiana Debating and Literary Ass'n v. City of New Orleans*, 42 F.3d 1483, 1490 (5th Cir. 1995). In determining whether *Younger* abstention is warranted, courts apply a three factor test derived from *Middlesex County Ethics Commission v. Garden State Bar Association*, 457 U.S. 423, 432 (1982). The *Middlesex* factors are: "(1) the dispute must involve an 'ongoing state judicial proceeding,' (2) an important state interest in the subject matter of the proceeding must be implicated, and (3) the state proceedings must afford an adequate opportunity to raise constitutional challenges." *Texas Ass'n of Business v. Earle*, 388 F.3d 515, 519 (5th Cir. 2004) (citing *Wightman v. Tex. Supreme Ct.*, 84 F.3d 188, 189 (5th Cir. 1996)); see *Middlesex*, *supra* at 432. "When these requirements are met, the federal district court has no choice but to dismiss the federal action; it may not abstain, nor may it stay the federal action pending resolution of the state proceedings." *Nall v. Stringer*, 4 F.3d 989, 1993 WL 360771, at *3 (5th Cir. 1993). "[A] district court's decision to abstain [is reviewed] for abuse of discretion, provided that the elements for *Younger* abstention are present." *Earle*, 388 F.3d at 518.

i.   **Application of the *Middlesex* Factors**

In this case all three of the *Middlesex* factors are satisfied, thus warranting *Younger* abstention.

(a)   **First *Middlesex* Factor: Ongoing State Judicial Proceeding**

The first consideration under *Middlesex* is whether the dispute involves an "ongoing state judicial proceeding." *Earle*, 388 F.3d at 519. "State judicial proceedings" generally include criminal, civil, and "administrative proceedings that are 'judicial' in nature." *Id.* at 520. The relief requested in paragraph 125 C, D, E, F and G of the Third Amended Complaint would all affect pending, currently ongoing, and future criminal prosecutions. (R. 18, para. 125). To the extent that Plaintiffs seek an injunction that would affect Stewart's ability to prosecute criminal cases, this factor should weigh in favor of *Younger* abstention. See also, *Samuels v. Mackell,* 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed. 2d 688 (1971) (a federal court should not enjoin a state criminal prosecution begun prior to the institution of the federal suit except in very unusual situations).

(b)   **Second *Middlesex* Factor: Important State Interest**

The second *Middlesex* factor requires that "an important state interest in the subject matter of the proceeding must be implicated." *Earle*, 388 F.3d at 519. State courts have an important state interest in controlling their own judicial proceedings. As it relates to the exercise of peremptory challenges, the State of Louisiana has adopted Uniform Rules to control the same. La. Sup. Ct. R. XXV. This Court should not intrude on that important state interest of judicial administration.

(c)   **Third *Middlesex* Factor: Adequate State Court Remedy**

The final *Middlesex* factor requires that "the state proceedings . . . afford an adequate opportunity to raise constitutional challenges." *Earle*, 388 F.3d at 519. This factor clearly favors abstention, as there is a framework in place to protect against discriminatory uses of peremptory

19

challenges under *Batson*. See *Miller-El v. Dretke, supra*. That state court mechanism is subject to federal review under federal habeas review. *Corwin v. Johnson*, 150 F.3d 456, 471 (5th Cir. 1998); See e.g. *Aaron Wilson v. Burl Cain, Report and Recommendation of Magistrate Judge Kay*, Docket No. 5:12-0310 United States District Court Western District of Louisiana (R. 57, February 4, 2016).

In light of a proper application of the *Middlesex* factors, the persuasive precedents discussed above, and all other considerations, the Court should grant Defendant's Motion to Dismiss based upon the *Younger a*bstention doctrine.

**3.**      **Plaintiffs Fail to State a Claim Under FRCP 12(b)(6)**

Dismissal under FRCP 12(b)(6) is proper when "it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." See, e.g. *Brown v. Nationsbank Corp*, 188 F.3d 579, 585-86 (5th Cir. 1999); FRCP 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009*); Bell Atlantic v. Twombly*, 550 U.S. 544, 553-55 (2007).

**A.      The Plaintiffs' Claims Are Barred by Res Judicata and Collateral Estoppel**

In *Powers v. Ohio*, 499 U.S. 400, 111 S. Ct. 1364, 113 L. Ed. 2d 411 (1991), the Supreme Court recognized that a member of the community may not be excluded from jury service on account of his or her race.  However, the Supreme Court also held that, through a *Batson* challenge, a litigant *may raise the rights of the juror who has been so excluded*. (emphasis added). According to the Supreme Court:

> Both the excluded juror and the criminal defendant have a common interest in eliminating racial discrimination from the courtroom . . . This congruence of interests makes it *necessary* and appropriate for the defendant to raise the rights of

the juror. And, there can be no doubt that petitioner will be a motivated, effective advocate for the excluded venire persons' rights. . . Thus, "'there seems little loss in terms of effective advocacy from allowing [the ascertain of this claim] by' the present *jus tertii* champion."

499 U.S. at 414, 111 S. Ct. at 1372 (citations omitted) (emphasis added). As further stated by the Supreme Court, "We conclude that a defendant in a criminal case can raise the third-party equal protection claims of jurors excluded by the prosecution because of their race." 499 U.S. at 415, 111 S. Ct. at 1373.

As discussed by one commentator:

Although prospective jurors are legally as well as practically precluded from vindicating their rights, a criminal defendant suffers "injury in fact" from every unlawful exclusion by a prosecutor. (At least the prosecutor believes that the exclusion will diminish the defendant's prospect of success at trial.) Unlike the prospective juror, the defendant usually is represented by counsel and can seek to prevent the wrong rather than merely correct it. Moreover, the high stakes of criminal prosecutions encourage defendants to present claims of discrimination with "the necessary adversary zeal" and sometimes more. Were a court to reject a defendant 's claim that unlawful discrimination by a prosecutor violated his or her rights, the defendant nevertheless should have standing to assert the rights of excluded jurors. A defendant injured in fact by a prosecutor's unconstitutional exclusion presents a classic case of appropriate third party standing.

Albert W. Alschuler, *The Supreme Court and the Jury: Voir Dire, Peremptory Challenges, and the Review of Jury Verdicts*, 56 U. CHI. L. REV. 153, 194-95 (1989).

As shown above, the Qualified Jurors have made no showing that they have standing or that any injury they allege is not speculative, hypothetical or moot. Similarly, the four Allegedly Blocked Jurors were all alleged to have been summoned for jury service in early 2015 – months before Stewart was elected. Even if these four newly added Plaintiffs are deemed by this Court to have standing (and Stewart disputes the same), said claims have already been litigated under the *Batson* mechanism and thus are now barred by the doctrine of res judicata and collateral estoppel.

21

**B.      Plaintiffs Have Failed to State a Claim under 18 U.S.C. Section 243**

As observed by the Supreme Court in *Powers v. Ohio*, "discrimination in the jury selection process is the subject of a federal criminal prohibition, and has been codified at 18 U.S.C. Section 243…" 499 U.S. at 408, 111 S.Ct. 1369 (emphasis added).  As further noted in *Powers*, a $5,000.00 fine may be imposed for its violation. However, this is a civil case brought pursuant to 42 U.S.C. Section 1983, and Plaintiffs do not request the imposition of the statutory imposed fine.  While the Alleged Block Jurors could potentially have a claim pursuant to 18 U.S.C. Section 243, Plaintiffs have no standing to prosecute an alleged, speculative and hypothetical 1983 action.

**C.      Plaintiffs' Federal and State Claims are Barred by Prosecutorial Immunity**

Plaintiffs' claims are barred by common law prosecutorial immunity. *Imbler v. Pachtman*, 424 U.S. 409, 96 S.Ct. 984. See also *Van de Kamp v. Goldstein*, 555 U.S. 335, 129 S.Ct. 855 (prosecutor entitled to absolute immunity for failure to train or supervise other prosecutors).

**D.      Plaintiffs' Federal Claims are Barred by Qualified Immunity.**

To the extent Stewart is sued for non-prosecutorial acts, he is entitled to qualified immunity. See *Mitchell v. Forsyth*, 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985) (holding United States Attorney General entitled to qualified immunity for alleged warrantless wiretaps arising from national security functions).

**E.      Plaintiffs' Federal Claims are Barred by the Eleventh Amendment**

A state prosecutor is entitled to sovereign immunity in his official capacity in a §1983 claim relating to the prosecutor's participation in a judicial proceeding. *Imbler, supra*. A district attorney in Louisiana is a state constitutional officer, and thus Stewart is entitled to sovereign immunity. The Louisiana Constitution provides specifically as follows:

**Section** 26. District Attorneys

22

 (B) Powers. Except as otherwise provided by this constitution, a district attorney, or his designated assistant, shall have charge of every criminal prosecution by the state in his district, be the representative of the state before the grand jury in his district, and be the legal advisor to the grand jury. He shall perform other duties.

As such, Stewart is entitled to the sovereign immunity of the State of Louisiana.

Accordingly, because the Plaintiffs fail to state a claim against Stewart for which relief can be granted, dismissal is appropriate.

## CONCLUSION

For all of the foregoing reasons, Defendant James E. Stewart, Sr. moves this Court for dismissal of Plaintiffs' Complaint with all costs to be paid by Plaintiffs.

Respectfully submitted by:

| | |
|---|---|
| */s/ Allison A. Jones* | */s/ Tommy Johnson* |
| Allison A. Jones, T.A. | Tommy Johnson |
| DOWNER, JONES, MARINO & WILHITE | CADDO PARISH DISTRICT |
| 401 Market Street, Suite 1250 | ATTORNEY'S OFFICE |
| Shreveport, Louisiana 71101 | 525 Marshall St. Fourth Floor |
| Tel: 318-213-4444 | Shreveport, LA 71101 |
| Fax: 318-213-4445 | Phone: (318) 429-7618, ext. 2 |
| Email: ajones@dhw-law.com | Fax: (318) 629-4300 |
| | Email: TJohnson@caddoda.com |

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document will be filed electronically via the Court's CM/ECF system, which will automatically provide notice to all parties, this 5th day of May, 2016.

*/s/ Allison A. Jones*