## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF LOUISIANA
## SHREVEPORT DIVISION

|  |  |
|---|---|
| RENEÉ PIPKINS, EVERITT PIPKINS, THERON JACKSON, LAWHITNEY JOHNSON, ADRIANA THOMAS, REGINALD AUTREY, DARRYL CARTER, DIANE JOHNSON, KIMBERLY HORTON, THERESA HAWTHORNE, AND ALL OTHERS SIMILARLY SITUATED. | ) ) ) ) ) ) ) ) |
| **Plaintiffs,** | ) **Civil Action No. 5:15-CV-02722** ) |
| ***v.*** | ) **Judge Dee D. Drell** ) |
| JAMES E. STEWART, SR., IN HIS OFFICIAL CAPACITY AS DISTRICT ATTORNEY OF CADDO PARISH (FIRST JUDICIAL DISTRICT OF LOUISIANA) | ) **Magistrate Mark L. Hornsby** ) ) ) ) |
| **Defendant.** | ) ) |

## PLAINTIFFS' COMBINED MEMORANDUM IN OPPOSITION TO
## DEFENDANT'S MOTION TO DISMISS
## UNDER FRCP 5.1, 19, 12(B)(1) AND 12(B)(6)

James W. Craig, Bar No. 33687
Emily M. Washington, Bar No. 34143

Roderick & Solange MacArthur Justice Center
4400 S. Carrollton Ave.
New Orleans, LA 70119
(504) 620-2259 (p)
(504) 208-3133 (f)
jim.craig@macarthurjustice.org
emily.washington@macarthurjustice.org

*Attorneys for Plaintiffs*

# TABLE OF CONTENTS

I.   Introduction ......................................................................................................... 6

II.   The Louisiana Attorney General is Not a Necessary Party Under Rule 19. ........................... 8

III.   This Court has jurisdiction over the Plaintiffs' claims, and thus the District Attorney's 12(b)(1) argument fails. ............................................................................................... 10

   **A.**   The Standard for Adjudicating Defendant's Jurisdictional Challenge........................... 10

   **B.**   The Plaintiffs Have Standing to Assert their Claims. .................................................... 11

      1.   Prospective jurors have the right to bring suit to challenge policies of racial exclusion. 11

      2.   Three categories of citizens, some of which are overlapping, join as Plaintiffs in the Third Amended Complaint. ...................................................................................... 13

      3.   The Injunction Plaintiffs Have Standing. ................................................................. 14

      4.   Reginald Autrey Had a Jury Summons in Hand at the Time of the First Amended Complaint ............................................................................................................... 21

      5.   The Damages Plaintiffs in the Third Amended Complaint Have Been Actually Harmed. 22

      6.   Class Certification, if Granted, Defeats Defendant's *Lyons* Argument. .................... 24

   **C.**   Plaintiffs' Claims are Not Moot. ................................................................................. 25

      1.   Voluntary Policy Change Would Not Moot the Claims............................................. 25

   **D.**   No Abstention Doctrine Applies to this Case. .............................................................. 27

      1.   Damages Plaintiffs -- *Younger* Abstention Does Not Apply to Damages Claims. .... 27

      2.   Injunction Plaintiffs – the *Younger/Middlesex* Factors Demonstrate that Abstention is Inappropriate. ......................................................................................................... 27

IV.   The Third Amended Complaint States Claims on Which Relief Can Be Granted............ 31

   **A.**   Plaintiffs' Claims Are Not Precluded by Res Judicata or Collateral Estoppel. ............. 32

   **B.**   The Third Amended Complaint Does Not Raise a Claim Under 18 U.S.C. Section 243. 35

   **C.**   In This Case Based on Municipal Liability, Immunity Is Not a Defense. ..................... 36

V.   Conclusion ......................................................................................................... 37

# TABLE OF AUTHORITIES

**Cases**

*Alexander v. Ieyoub*, 62 F.3d 709 (5th Cir. 1995) ........................................................ 27

*Amarand Contractors, Inc. v. Pena*, 515 U.S. 200 (1995) ..................................... 11, 30

*Ambraco, Inc. v. Bossclip B.V.*, 570 F.3d 233 (5th Cir.2009) .................................... 11

*Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009) .................................................................. 32

*Baker v. Carr*, 369 U.S. 186 (1962) .......................................................................... 21

*Batson v. Kentucky*, 476 U.S. 79 (1986) ............................................................. passim

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ............................................... 32

*Bell v. Health–Mor*, 549 F.2d 342 (5th Cir.1977) ..................................................... 11

*Benson and Ford, Inc. v. Wanda Petroleum Co.*, 833 F.2d 1172 (5th Cir. 1987) ................. 33, 34

*Blackburn v. Marshall*, 42 F.3d 925 (5th Cir.1995) ................................................... 32

*Bradberry v. Jefferson County*, 732 F.3d 540 (5th Cir. 2013) .................................... 34

*Brammer Engineering, Inc. v. Meridian Resources USA, Inc*., 2007 WL 3009148 (W.D. La. 2007) ............................................................................................................................ 32

*Brian A. ex rel. Brooks v. Sundquist*, 149 F.Supp.2d 941 (M.D. Tenn. 2000) ............................ 31

*Burge v. Parish of St. Tammany*, 187 F.3d 452 (5th Cir. 1999) .............................. 8, 37

*Burnette v. United States Bureau of Prisons*, 2009 WL 3415301  (W.D. La. 2009)................... 33

*Burnette v. United States Bureau of Prisons*, 2009 WL 3180223 (W.D. La. 2009)..................... 33

*Campbell v. Wells Fargo Bank*, 781 F.2d 440 (5th Cir. 1986)................................... 32

*Carter v. Jury Comm'n of Greene County*, 396 U.S. 320 (1970)......................... 12, 13

*Church v. City of Huntsville*, 30 F.3d 1332 (11th Cir.1994)…………………………………15

*City of Los Angeles v. Lyons*, 461 U.S. 95 (1983) ............................................... passim

*Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976)...................... 27

*Conor B. ex rel. Vigurs v. Patrick*, 771 F. Supp. 2d 142 (D. Mass 2011) ................. 31

*County of Riverside v. McLaughlin*, 500 U.S. 44 (1991).......................................... 22

*Deakins v. Monaghan*, 484 U.S. 193 (1988)............................................................ 27

*Edmonson v. Leesville Concrete Co*., 500 U.S. 614 (1991)......................................... 7

*Environmental Conservation Organization v. City of Dallas*, 529 F.3d 519 (5th Cir. 2008)....... 26

*Ex parte Young*, 209 U.S. 123, 157 (1908)................................................................ 9

*Fed. Election Comm'n v. Wis. Right to Life, Inc*., 551 U.S. 449 (2007)...................... 21

*Freeman v. Lester Coggins Trucking, Inc.*, 771 F.2d 860 (5th Cir. 1985) ...................... 33

*Friends of the Earth, Inc. v. Laidlaw Environmental Services, Inc*., 528 U.S. 167 (2000).......... 26

*Genesis Healthcare Corp. v. Symczyk*, ___ U.S. ___, 133 S. Ct. 1523 (2013)............................ 24

*Georgia v. McCollum*, 505 U.S. 42 (1992)................................................................. 7

*Gerstein v. Pugh*, 420 U.S. 103 (1975)..................................................................... 24

*Gilchrist Const. Co. LLC v. Davis*, 2010 WL 3456977 (W.D. La. 2010) .................... 11

*Ginter ex rel. Ballard v. Belcher, Prendergast & Laporte*, 536 F.3d 439 (5th Cir.2008)............. 11

*Gomez v. City of West Chicago*, 506 F. Supp. 1241 (N.D. Ill. 1981) .......................... 17

*Gonzales v. City of Peoria*, 722 F.2d 468 (9th Cir. 1983)…………………………………17

*Hamilton v. Foti*, 372 Fed.Appx. 480 (5th Cir. 2010) ................................................ 9

*Hardy v. Jones-Manville Sales Corp.*, 681 F.2d 334 (5th Cir. 1982) ........................................... 34

*Hernandez v. Cremer*, 913 F.2d 230 (5th Cir. 1990)…………………………………………16, 17

*Honig v. Doe*, 484 U.S. 305 (1988) ……………………………………………………………15

*Hudson v. City of New Orleans*, 174 F.3d 677 (5th Cir. 1999) ................................................... 37

*Johnson v. Louisiana*, 2010 WL 996475 (W.D. La. 2010)........................................................ 36

*Jones v. U-Haul Co. of Mass. and Ohio, Inc.*, 16 F.Supp.3d 922 (S.D. Ohio 2014)...................... 9

*Kaiser Aluminum & Chem. Sales v. Avondale Shipyards*, 677 F.2d 1045 (5th Cir.1982)........... 32

*Libertarian Party v. Dardenne*, 595 F.3d 215 (5th Cir. 2010)………………………………..……17

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ................................................................ 22

*Lynch v. Baxley*, 744 F.2d 1452 (11th Cir. 1984)       ……………………………………………15

*M.D. v. Perry*, 799 F. Supp. 2d 712, 721 (S.D. Tex. 2011)........................................................ 31

*Maryland State Conference of NAACP Branches v. Maryland Dept. of State Police*,
     72 F. Supp. 2d 560 (D. Md. 1999)  ……………………………………………………..……17

*Meza v. General Battery Corp.*, 908 F.2d 1262 (5th Cir. 1990).................................................. 34

*Middlesex County Ethics Comm'n v. Garden State Bar Ass'n*, 457 U.S. 423 (1982) ................. 27

*Mitchell v. Union Tank Car LLC*, 2011 WL 4499317 (W.D. La. 2011) ...................................... 32

*Monell v. Dep't of Soc. Serv. of the City of New York*, 436 U.S. 658 (1978) .......................... 8, 36

*Moore v. Hosemann*, 591 F.3d 741 (5th Cir. 2009)................................................................... 21

*Nicacio v. INS*, 768 F.2d 1133 (9th Cir. 1985) ........................................................................ 17

*Okpalobi v. Foster*, 244 F. 3d 405 (5th Cir. 2001) (en banc) ...................................................... 9

*Paterson v. Weinberger*, 644 F.2d 521 (5th Cir. 1981) ............................................................. 10

*Pearson v. Holder*, 624 F.3d 682 (5th Cir. 2010) .................................................................... 25

*Pollard v. Cockrell*, 578 F.2d 1002 (5th Cir. 1978)................................................................. 34

*Powers v. Ohio*, 499 U.S. 400 (1991) .......................................................................... 6, 7, 12

*Rodriguez v. Providence Community Corrections, Inc.*, 2016 WL 3351944 (M.D. Tenn. 2016) 36

*Roe v. Wade*, 410 U.S. 113 (1973)......................................................................................... 21

*Samuels v. Mackell*, 401 U.S. 66 (1971)................................................................................ 28

*Sandoz v. Cingular Wireless LLC*, 553 F.3d 913 (5th Cir. 2004)............................................. 24

*Scheuer v. Rhodes*, 416 U.S. 232 (1974) ............................................................................... 36

*Shawn A. by Moore v. Kelly*, 990 F.2d 1319 (D.C.Cir.1993) …………………………………31

*Sosna v. Iowa*, 419 U.S. 393 (1975) ...................................................................................... 24

*Snyder v. Louisiana*, 552 U.S. 472 (2008)       ………………………………………………30, 35

*Tagore v. United States*, 2014 WL 2880008 (S.D. Tex. 2014).................................................. 22

*Texas Ass'n of Business v. Earle*, 388 F.3d 515 (5th Cir. 2004) ............................................ 27

*Thomas v. County of Los Angeles*, 978 F.2d 504 (9th Cir. 1992)       ………………………………17

*United States Parole Comm'n v. Geraghty*, 445 U.S. 388 (1980)............................................. 24

*Ward v. Santa Fe Indep. Sch. Dist.*, 35 Fed.Appx. 386 (5th Cir. 2002) .................................... 23

*Weiss v. Regal Collections*, 385 F.3d 337 (3rd Cir. 2004)........................................................ 24

*Winslow v. W.L. Gore & Associates, Inc.*, 2011 WL 873562 (W.D. La. 2011) ........................... 32

*Wright v. El Paso County Jail*, 642 F.2d 134 (5th Cir. Unit A 1981) .......................................... 23

*Young v. Hosemann*, 598 F.3d 184 (5th Cir.2010) ...................................................................... 11

*Younger v. Harris*, 401 U.S. 371 (1971)………………………………………………………7, 27

## Rules

FED.R.CIV.P. 12(b)(1) ......................................................................................................... 7

FED.R.CIV.P. 12(b)(6) ......................................................................................................... 7

FED.R.CIV.P. 19 ................................................................................................................... 8

FED.R.CIV.P. 23 ................................................................................................................... 24

FED.R.CIV.P. 5.1 ................................................................................................................. 8

## Treatises

D. Baldus et al. *The Use of Peremptory Challenges in Capital Murder Trials: A Legal and Empirical Analysis*, 3 U. PA. J. CONST. L. 3 (2001) .................................................. 29

J. Bellin and J. Semitsu, *Widening Batson's Net to Ensnare More than the Unapologetically Bigoted or Painfully Inattentive Attorney*, 96 CORNELL L. REV. 1075, 1093 (July 2011).. 28, 29

B. Garrett, *Standing While Black: Distinguishing Lyons in Racial Profiling Cases*, 100 Colum. L. Rev. 1815 (2000)        ………………………………………………………………15

K. Melilli, *Batson in Practice: What We Have Learned About Batson and Peremptory Challenges*, 71 NOTRE DAME L. REV. 447 (1996) ................................................................... 29

M. Raphael & E. Ungvarsky, *Excuses, Excuses: Neutral Explanations Under Batson v. Kentucky*, 27 U. MICH. J. L. REFORM 229 ................................................................... 29

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| RENEÉ PIPKINS, EVERITT PIPKINS, THERON JACKSON, LAWHITNEY JOHNSON, ADRIANA THOMAS, REGINALD AUTREY, DARRYL CARTER, DIANE JOHNSON, KIMBERLY HORTON, THERESA HAWTHORNE, AND ALL OTHERS SIMILARLY SITUATED. | ) ) ) ) ) ) ) |
| Plaintiffs, | ) Civil Action No. 5:15-CV-02722 |
| *v.* | ) Judge Dee D. Drell |
| JAMES E. STEWART, SR., IN HIS OFFICIAL CAPACITY AS DISTRICT ATTORNEY OF CADDO PARISH (FIRST JUDICIAL DISTRICT OF LOUISIANA) | ) Magistrate Mark L. Hornsby ) ) ) |
| Defendant. | ) ) |

## PLAINTIFFS' COMBINED MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS UNDER FRCP 5.1, 19, 12(B)(1) AND 12(B)(6)

## I.  INTRODUCTION

"[W]ith the exception of voting, for most citizens the honor and privilege of jury duty is their most significant opportunity to participate in the democratic process."[1] In their Third Amended Complaint (Doc. 18), ten citizens of Caddo Parish, Louisiana challenge the longstanding custom, usage, and/or policy of the District Attorney's Office to exercise peremptory challenges against African-Americans because of their race, in order to empanel criminal trial juries that are

---

[1] *Powers v. Ohio*, 499 U.S. 400, 407 (1991).

6

predominantly white. All ten Plaintiffs seek declaratory and injunctive relief to prohibit this practice. Four of the Plaintiffs, who were actually barred from jury service by Assistant District Attorneys because of this racially discriminatory custom, also seek damages for the deprivation of their rights.

The District Attorney has moved to dismiss this case under FED.R.CIV.P. 12(b)(1) and FED.R.CIV.P. 12(b)(6). The motion raises multiple arguments, but cutting across all of them are two propositions. The first is that only criminal defendants, not prospective jurors, may challenge the District Attorney's racially discriminatory jury selection custom. The second is that the election of a new District Attorney, who has not changed (or for that matter, even acknowledged) his predecessors' custom and policy, automatically moots Plaintiffs' claims.

Both pillars of the D.A.'s argument stand on shaky ground. In the first place, *Batson*[2] and its progeny[3] allows litigants (including, but not limited to, criminal defendants) to assert the rights of potential jurors in individual cases; but this does not eviscerate the power of those citizens themselves to seek enforcement of their right to equal protection of the law. In the second place, replacement of one incumbent of the office of District Attorney by another does not moot a constitutional challenge to the D.A.'s racially discriminatory custom where the new officeholder does not even acknowledge, let alone change, that custom.

Moreover, neither *Younger* abstention[4] nor immunity (whether prosecutorial immunity or Eleventh Amendment immunity) preclude Plaintiffs' claims. *Younger* does not apply where there

---

[2] *Batson v. Kentucky*, 476 U.S. 79 (1986).
[3] In a series of decisions extending *Batson*'s reach, the Supreme Court emphasized that litigants of either race were entitled to assert the Equal Protection Clause rights of potential jurors. *See Powers v. Ohio*, 499 U.S. 400 (1991) (white criminal defendants have standing to challenge exclusion of minority jurors); *Georgia v. McCollum*, 505 U.S. 42 (1992) (prosecutors have standing to challenge race-based peremptory challenges exercised by defense attorneys); *Edmonson v. Leesville Concrete Co.*, 500 U.S. 614 (1991) (civil litigants have standing to challenge race-based peremptory challenges).
[4] *Younger v. Harris*, 401 U.S. 371 (1971).

is no pending criminal proceeding with which the Federal lawsuit might interfere; moreover, *Younger* has no application whatsoever to the damages claims asserted by Plaintiffs Carter, Johnson, Hawthorne, and Horton. Furthermore, the Third Amended Complaint predicates liability on the Office of the District Attorney under *Monell*[5] for a policy, custom, or usage that violates the constitutional rights of the Plaintiffs.[6] That office, which is a local government entity under Fifth Circuit precedent, is not protected from liability for the District Attorney's policy, custom, or usage by any doctrine of immunity.

For the reasons set forth below, the Third Amended Complaint survives the threshold challenges launched by the District Attorney at this early stage of the litigation.

## II. THE LOUISIANA ATTORNEY GENERAL IS NOT A NECESSARY PARTY UNDER RULE 19.

The District Attorney first asserts that FED.R.CIV.P. 5.1 and FED.R.CIV.P. 19 require that the Attorney General of Louisiana be joined as a party to the Third Amended Complaint. Doc. 20-1 at 7-9. This argument overstates the requirements of Rule 5.1.[7]

The second claim for relief pled in the Third Amended Complaint seeks a declaratory judgment that Article 795(C), (D), and (E) of the Louisiana Code of Criminal Procedure violate the Equal Protection Clause of the Fourteenth Amendment. Doc. 18 at 22-23, ¶¶ 113-20. Thus, Plaintiffs have filed a Notice of Constitutional Question (Doc. 32) and have served same upon the Attorney General of Louisiana.

---

[5] *Monell v. Dep't of Soc. Serv. of the City of New York*, 436 U.S. 658 (1978).
[6] *See Burge v. Parish of St. Tammany*, 187 F.3d 452, 469 (5th Cir. 1999) ("the entity liable for the torts of a district attorney's employees under state law is the office of the district attorney as an independent local government entity").
[7] The rule provides that "[a] party that files a pleading, written motion, or other paper drawing into question the constitutionality of a federal or state statute must promptly . . . (1) file a notice of constitutional question stating the question and identifying the paper that raises it, if: . . . (B) a state statute is questioned and the parties do not include the state, one of its agencies, or one of its officers or employees in an official capacity; and (2) serve the notice and paper . . . on the state attorney general if a state statute is questioned."

The Attorney General may choose to intervene in this action under Rule 5.1(c), but that rule does not require Plaintiffs to affirmatively add the Attorney General as a party defendant under Rule 19. Indeed, absent a request for intervention by the Louisiana Attorney General, that official would not be a proper party defendant in this action:

> In making an officer of the state a party defendant in a suit to enjoin the enforcement of an act alleged to be unconstitutional, it is plain that such officer must have some connection with the enforcement of the act, or else it is merely making him a party as a representative of the state, and thereby attempting to make the state a party.[8]

The Fifth Circuit has expressly held that the Louisiana Attorney General is not a proper party defendant in a Section 1983 lawsuit challenging a state statute, unless the attorney general either has some connection with the enforcement of the statute or is specifically charged with the duty to enforce the statute and is threatening to exercise that duty.[9] The state attorney general has no such role with respect to Article 795 of the Code of Criminal Procedure.

Fed.R.Civ.P. 5.1 specifies a limited remedy for failure or delay in filing the notice of constitutional question. The constitutional claim is not dismissed; rIather, under Rule 5.1(d) the Court must delay adjudication that a challenged statute is unconstitutional until the process for giving notice and an opportunity to intervene to the state attorney general has run its course.[10]

---

[8] *Ex parte Young*, 209 U.S. 123, 157 (1908).
[9] *Hamilton v. Foti*, 372 Fed.Appx. 480, 485-86 (5th Cir. 2010) (rejecting the proposition that "the Louisiana Attorney General's state constitutional duty to enforce all laws of the state is sufficient to satisfy the requirements of *Ex parte Young*") (*citing Okpalobi v. Foster*, 244 F. 3d 405, 419 (5th Cir. 2001) (en banc)).
[10] *See Jones v. U-Haul Co. of Mass. and Ohio, Inc*., 16 F.Supp.3d 922, 941 (S.D. Ohio 2014).

## III.      THIS COURT HAS JURISDICTION OVER THE PLAINTIFFS' CLAIMS, AND THUS THE DISTRICT ATTORNEY'S 12(B)(1) ARGUMENT FAILS.

The District Attorney's motion to dismiss for lack of jurisdiction is based on three separate arguments: first, that the Plaintiffs do not have standing to assert their claims; second, that the basis of the Plaintiffs' claims has been mooted; and third, that this Court should abstain from exercise of jurisdiction under *Younger*. The allegations of the Third Amended Complaint surmount all three of these obstacles.

### A.  The Standard for Adjudicating Defendant's Jurisdictional Challenge

Although the motion to dismiss references factual allegations beyond the four corners of the pleadings, the District Attorney does not rely on evidentiary materials in support of his jurisdictional argument. Thus, the motion before the Court is a "facial attack," not a "factual attack," on the Third Amended Complaint's assertion of jurisdiction:

> Our first consideration is the distinction between a "facial attack" and a "factual attack" upon the complaint under FED.R.CIV.PROC. 12(b)(1). . . . Simply stated, if the defense merely files a Rule 12(b)(1) motion, the trial court is required merely to look to the sufficiency of the allegations in the complaint because they are presumed to be true. If those jurisdictional allegations are sufficient, the complaint stands.
>
> If a defendant makes a "factual attack" upon the court's subject matter jurisdiction over the lawsuit, the defendant submits affidavits, testimony, or other evidentiary materials. In the latter case a plaintiff is also required to submit facts through some evidentiary method and has the burden of proving by a preponderance of the evidence that the trial court does have subject matter jurisdiction. Since here we have only a "facial attack" and not a "factual attack," our review is limited to whether the complaint is sufficient to allege the jurisdiction.[11]

---

[11] *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981)

In the context of this "facial attack" on jurisdiction, this Court trains its focus on the allegations of the Third Amended Complaint. The following principles are applicable to a motion to dismiss for lack of jurisdiction under Rule 12(b)(1):

> When considering a Rule 12(b)(1) motion, the Court must view all the facts in a light most favorable to the plaintiff. Generally, when the complaint states a cognizable federal claim, dismissal for want of jurisdiction is disfavored as a matter of policy, and is only proper in the case of a frivolous or insubstantial claim, i.e., a claim which has no plausible foundation or which is clearly foreclosed by a prior Supreme Court decision.[12]

## B.  The Plaintiffs Have Standing to Assert their Claims.

The District Attorney contends that the Plaintiffs cannot establish an injury in fact, causation, and redressability – the elements of the standing inquiry.[13] He is wrong.

### 1.  Prospective jurors have the right to bring suit to challenge policies of racial exclusion.

It is undeniable that "any person, of whatever race, has the right to demand that any governmental actor subject to the Constitution justify any racial classification subjecting that person to unequal treatment under the strictest judicial scrutiny."[14] More specifically, citizens have standing to challenge a custom, usage, and/or policy owhich intentionally restricts their opportunity for jury service on account of their race:

> Defendants in criminal proceedings do not have the only cognizable legal interest in nondiscriminatory jury selection. People excluded from juries because of their race are as much aggrieved as those indicted and tried by juries chosen under a system of racial exclusion.

---

[12] *Gilchrist Const. Co. LLC v. Davis*, 2010 WL 3456977 at *2 (W.D. La. 2010), *quoting Ambraco, Inc. v. Bossclip B.V.*, 570 F.3d 233, 237–38 (5th Cir.2009), *Ginter ex rel. Ballard v. Belcher, Prendergast & Laporte*, 536 F.3d 439, 441 (5th Cir.2008), *Young v. Hosemann*, 598 F.3d 184, 188 (5th Cir.2010) and *Bell v. Health–Mor*, 549 F.2d 342, 344 (5th Cir.1977).
[13] Doc. 20-1 at 9-13.
[14] *Amarand Contractors, Inc. v. Pena*, 515 U.S. 200, 224 (1995).

> Surely there is no jurisdictional or procedural bar to an attack upon systematic jury discrimination by way of a civil suit such as the one brought here.
>
> The federal claim is bottomed on the simple proposition that the State, acting through its agents, has refused to consider the appellants for jury service solely because of their race.
>
> Whether jury service be deemed a right, a privilege, or a duty, the State may no more extend it to some of its citizens and deny it to others on racial grounds than it may invidiously discriminate in the offering and withholding of the elective franchise.[15]

In *Batson* itself, the Supreme Court made clear that the equal protection rights of potential jurors was its paramount consideration; that "by denying a person participation in jury service on account of his race, the State unconstitutionally discriminated against the excluded juror. The harm from discriminatory jury selection extends beyond that inflicted on the defendant and the excluded juror to touch the entire community."[16] The Court explained further in *Powers*:

> We hold that the Equal Protection Clause prohibits a prosecutor from using the State's peremptory challenges to exclude otherwise qualified and unbiased persons from the petit jury solely by reason of their race, a practice that forecloses a significant opportunity to participate in civic life. An individual juror does not have a right to sit on any particular petit jury, but he or she does possess the right not to be excluded from one on account of race.[17]

In granting a criminal defendant standing to raise, as a third party, the rights of excluded jurors, the *Powers* Court did not eliminate the right for the jurors themselves to seek judicial remedies for discrimination: "We have held that individual jurors subjected to racial exclusion

---

[15] *Carter v. Jury Comm'n of Greene County*, 396 U.S. 320, 329 (1970).
[16] *Batson*, 476 U.S. at 87.
[17] *Powers*, 499 U.S. at 409.

12

have the legal right to bring suit on their own behalf. As a practical matter, however, these challenges are rare."[18]

### 2. Three categories of citizens, some of which are overlapping, join as Plaintiffs in the Third Amended Complaint.

A further analysis of the standing issue can be undertaken by examining the three separate categories of prospective jurors represented by the citizens who have joined as Plaintiffs in the Third Amended Complaint.

First, each of the Plaintiffs are adult resident citizens and registered voters of Caddo Parish, and are therefore each on the list of eligible jurors maintained by the Caddo Parish Jury Commission.[19] This category (the "injunction Plaintiffs," comprising all Plaintiffs) seeks declaratory and injunctive relief and an award of attorney's fees and expenses.[20]

The second category of Plaintiffs is a subset of the "injunction Plaintiffs." At the time of the filing of the First Amended Complaint, Reginald Autrey had been issued, and had received, a summons for jury service in the First Judicial District of Louisiana (Caddo Parish).[21] He belongs to a subset of Plaintiffs characterized by the immanence of his exposure to the District Attorney's racially discriminatory custom, usage, or policy.

The third category ("the damages Plaintiffs") is a subset comprised of Plaintiffs Darryl Carter, Diane Johnson, Kimberly Horton, and Theresa Hawthorne, who were each issued a summons for jury service within the last twelve months in the First Judicial District of Louisiana (Caddo Parish), and who were each blocked from criminal jury service by the exercise of peremptory challenges by the Assistant District Attorneys as a result of the District Attorney's

---

[18] *Id*. at 414, *citing Carter*, 396 U.S. at 329-330.
[19] Doc. 18 at ¶ 2.
[20] Doc. 18 at ¶¶ 110-12, 125(B) – (G), 125(I).
[21] Doc. 18 at ¶ 12.

custom, usage, and/or policy of racially discriminatory jury selection.[22] These Plaintiffs seek damages as well as declaratory and injunctive relief.[23]

With these categories in mind, the District Attorney's argument that Plaintiffs lack standing to bring this action is readily dispatched.

### 3.  The Injunction Plaintiffs Have Standing.

#### a.  City of Los Angeles v. Lyons: two factors to assess whether Plaintiff faces a real and immediate  threat of future harm.

In attacking the standing of the Plaintiffs to seek injunctive relief, the District Attorney relies heavily on *City of Los Angeles v. Lyons*[24] in which the Supreme Court held that the plaintiff in an injunction case must show a real and immediate threat of future harm in order to meet the "injury in fact" requirement.[25] But *Lyons* is easily distinguishable. In that case, plaintiff's claim was based on the alleged policy of the Los Angeles Police Department to use a "choke hold" on persons stopped for traffic violations or any other offense. The Supreme Court focused on the potential for repetition of both sides of the equation, the act of the plaintiff and the response by the police officers:

> In order to establish an actual controversy in this case, Lyons would have had not only to allege that he would have another encounter with the police but also to make the incredible assertion either, (1) that all police officers in Los Angeles always choke any citizen with whom they happen to have an encounter, whether for the purpose of arrest, issuing a citation or for questioning or, (2) that the City ordered or authorized police officers to act in such manner.[26]

The post-*Lyons* decisions likewise focus on both parts of this equation:

---

[22] Doc. 18 at ¶¶ 13-15.
[23] Doc. 18 at ¶¶ 124, 125(H).
[24] *City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983).
[25] *Lyons*, 461 U.S. at 101-02.
[26] *Lyons*, 461 U.S. at 105-06.

> [T]he question of whether an individual plaintiff seeking injunctive relief faces a "credible threat" of future injury is determined by focusing on two factors: (1) whether government conduct was authorized by a policy, practice, or custom of official misconduct; and (2) whether plaintiff was law-abiding or instead precipitated the encounter by engaging in avoidable behavior. If the challenged official conduct was authorized and plaintiff was lawabiding, a court will usually conclude that plaintiffs have standing.[27]

### b. <u>Lyons</u>' first factor: the type of conduct which exposes plaintiffs to the challenged policy.

Thus, in *Honig v. Doe*, the Supreme Court explained *Lyons* as expressing the following rule: "for purposes of assessing the likelihood that state authorities will re-inflict a given injury, we generally have been unwilling to assume that the party seeking relief will repeat the type of misconduct that would once again place him or her at risk of that injury."[28] But where the plaintiff student suffered from emotional disabilities that increased the likelihood that his school would respond in a manner contrary to the Education of the Handicapped Act, *Lyons* did not apply. [29]

In *Lyons*, then, LAPD's alleged "choke-hold" policy would only threaten plaintiff in the future if his voluntary actions justified an investigation or arrest for suspicion of criminal activity in the future. In *Honig*, by contrast, conduct beyond plaintiff's control – his disability – would reasonably be expected to increase the likelihood of his exposure to the defendant's unconstitutional policy.

---

[27] B. Garrett, *Standing While Black: Distinguishing Lyons in Racial Profiling Cases*, 100 Colum. L. Rev. 1815, 1817-18 (2000).

[28] *Honig v. Doe*, 484 U.S. 305, 320 (1988).

[29] Similarly, the Eleventh Circuit distinguished *Lyons* where a group of homeless individuals sought an injunction against harassment by municipal officials. Because the plaintiffs were homeless involuntarily and could not avoid future exposure to the challenged course of conduct by the City, they were more likely to have future encounters with the police than the plaintiff in *Lyons*. *Church v. City of Huntsville*, 30 F.3d 1332, 1338 (11th Cir.1994), *citing Lynch v. Baxley*, 744 F.2d 1452, 1456-57 & nn. 6-7 (11th Cir. 1984) (mentally ill plaintiff had standing, notwithstanding *Lyons*, against Alabama's practice of detaining individuals in county jails pending civil commitment hearings; plaintiff's mental problems were likely to recur and he was likely to be the subject of future commitment actions).

Where the exercise of plaintiff's constitutional rights exposed him to the challenged policy, custom, or usage, the Fifth Circuit applies *Honig*, not *Lyons*. Thus, in a case where an American citizen of Puerto Rican birth sued for injunctive relief against practices of the INS related to detention at the border between the United States and Mexico, the Court found "a critical factual distinction between *Lyons* and the instant case which dictate[s] a different result. Hernandez (unlike Lyons) was engaged in an activity protected by the Constitution." [30]

As in *Hernandez*, Plaintiffs in this case are exposed to the District Attorney's discriminatory policy, custom, or usage due to the exercise of their constitutional rights. In particular, Plaintiffs have alleged facts sufficient to demonstrate that they will face future racial discrimination when they are summoned for jury duty and seek to exercise their right to participate in jury service. The Caddo Parish Clerk of Court's Office compiles the jury venire list from the parish voter registration list supplied by the Louisiana Secretary of State. According to the Secretary of State, there are currently 163,414 registered voters in Caddo Parish; of these, 75,485 (46%) are African-Americans. Twice monthly, the Clerk of Court sends a jury summons and a questionnaire to prospective jurors; and approximately 13-14,000 summonses and questionnaires are sent annually. [31]

These allegations indicate that approximately 6,400 to 6,500 African-American citizens, or about 8.5% of the total, are summoned each year for jury service in Caddo Parish. That translates to an 11.5% chance that any particular African-American registered voter – including the Plaintiffs – would be summoned in any particular year for jury service in Shreveport. Simple mathematics indicates that over a three-year period, assuming random selection from the Caddo Parish voter

---

[30] *Hernandez v. Cremer*, 913 F.2d 230, 234 (5th Cir. 1990).
[31] Doc. 18 at ¶¶ 32-34.

registration list, the chance that any of the Plaintiffs will receive a summons for jury duty in the First Judicial District increases to 34.5%.

> c. **Lyons' second factor: the repetitive nature of the defendant's policy, particularly where that policy targets racial or ethnic minorities.**

Looking to the other side of the equation, in *Hernandez* the Fifth Circuit characterized *Lyons* as holding that "standing to challenge a statute was not established merely by the fact that the plaintiff had on a single previous occasion been harmed by the statute's application, absent a realistic likelihood that the statute would, in the future, be applied to his own detriment."[32] *Lyons'* standing hurdle has been breached by plaintiffs who demonstrate that the defendant has unlawfully acted in the past or that his actions reflect a policy or a consistent pattern of behavior.[33] And where that custom, usage, or policy is "purposefully aimed at minorities,"[34] the post-*Lyons* cases do not hesitate to find that the standing requirement has been met,[35] since "[t]he possibility of recurring injury ceases to be speculative when actual repeated incidents are documented."[36]

In this case, the history of the District Attorney's custom, usage, or policy increases the credible threat of future harm to these Plaintiffs. The Third Amended Complaint alleges a pervasive pattern of prosecutorial exercise of peremptory challenges against African-American

---

[32] *Hernandez*, 913 F.2d at 234.

[33] *Libertarian Party v. Dardenne*, 595 F.3d 215, 218 (5th Cir. 2010).

[34] *Thomas v. County of Los Angeles*, 978 F.2d 504, 508 (9th Cir. 1992) (emphasizing that plaintiffs alleged a racially discriminatory pattern of police brutality that "is purposefully aimed at minorities").

[35] *Gonzales v. City of Peoria*, 722 F.2d 468, 481 (9th Cir. 1983) (finding standing where "officers make a practice, based on city policy, of violating the constitutional rights of [city] residents of Mexican descent, and that this policy is consistently applied to drivers and passengers of vehicles stopped for traffic violations"); *Maryland State Conference of NAACP Branches v. Maryland Dept. of State Police*, 72 F. Supp. 2d 560, 565 (D. Md. 1999) ("[T]he plaintiffs' likelihood of injury depends only on their status as a member of a minority group and their need to travel on I-95."); *Gomez v. City of West Chicago*, 506 F. Supp. 1241, 1243 (N.D. Ill. 1981) (finding standing where "treatment has been directed against plaintiffs solely because of their race and national origin").

[36] *Nicacio v. INS*, 768 F.2d 1133, 1136 (9th Cir. 1985)

citizens because of their race, in order to empanel criminal trial juries that are predominantly white.[37] This custom of racially discriminatory jury selection is long-established.[38]

Although derided in the District Attorney's motion (though without factually specific support),[39] the record of 332 trials in a ten-year period pleads sufficient facts to "plausibly" (in *Iqbal* terms) demonstrate this racially discriminatory custom, usage, or policy:

> The table below illustrates the basic facts regarding the jurors accepted or struck by the District Attorney:

| Race | Accepted | Struck | TOTAL |
|------|---------:|-------:|------:|
| Black | 1570 | 1338 | 2908 |
| Not Black | 4580 | 830 | 5410 |
| | | | |
| TOTAL | 6150 | 2168 | 8318 |

> Thus, when presented with an otherwise qualified black juror, the District Attorney's Office exercised its discretion to peremptorily strike that juror 46% of the time. By comparison, when presented with an otherwise qualified juror who was not black, the Office exercised its discretion to peremptorily strike the juror only 15% of the time.

> Over a ten-year period, this pattern of peremptory strikes shows that the District Attorney struck African-American citizens of Caddo Parish from jury service at three times the rate he struck jurors who were not African-American. The effect was statistically significant ($p < .001$).[40]

A deeper analysis of the data, as alleged in the Third Amended Complaint, plausibly demonstrates that these results are not coincidental:

> Even after controlling for other case characteristics and factors that may influence the District Attorney in exercising peremptory strikes (including the number of defendants, nature of the offense, jury size,

---

[37] Doc. 18 at ¶ 42.
[38] Doc. 18 at ¶ 43.
[39] Doc. 20-1 at 11-12.
[40] Doc. 18 at ¶¶ 52-55.

18

gender of prospective juror, race and gender of defendant, race and gender of judge, race and gender of prosecuting attorney, proportion of effective jury pool that was black, and proportion of effective jury pool that was male), the disproportionate rate of challenge to qualified African-American jurors remains. In fact, it becomes even more extreme. With these controls added (in addition to controlling for the potential interdependence among decisions about jurors within the same case), prosecutors struck African-American citizens of Caddo Parish from jury service at five times the rate of jurors who were not African-American. The effect was statistically significant (p<.001).

Joint consideration of the race of the defendant and race of the juror showed that the disproportionate rate of challenge against African-American jurors was exacerbated when the defendant was black. When the defendant was white, the District Attorney was 2.6 times more likely to strike a black juror than he was to strike a white juror (p<.001). When the defendant was black, the District Attorney was 5.7 times more likely to strike a black juror than he was to strike a white juror (p<.001).

In addition, statistical analyses controlling for extraneous factors revealed that the District Attorney was three times more likely to exercise a "backstrike" (as discussed in paragraph 41 above) on a previously accepted black juror than on a previously accepted white juror (p<.001).[41]

Plaintiffs aver that "[b]ecause no other plausible explanation accounts for the disparity between the District Attorney's peremptory challenges against African-American jurors and those against white jurors, the only statistically significant factor explaining the disparity is the race of the juror."[42] Plaintiffs specifically allege, "[a]lthough the time period of the trial data used in the detailed statistical analysis was from 2003-2012, the District Attorney's custom of racially discriminatory jury selection began before that time and has continued through the present."[43] And

[41] Doc. 18 at ¶¶ 55-57.
[42] Doc. 18 at ¶ 58.
[43] Doc. 18 at ¶ 59.

19

four of the Plaintiffs specifically allege racial discrimination in the exercise of peremptory challenges in the last twelve months.[44]

> **d.  Conclusion: <u>Lyons</u> presents no bar to the standing of these Plaintiffs to seek injunctive relief against  the District Attorney's custom, usage, and/or policy of racial discrimination in the exercise of peremptory challenges.**

Given the population of the parish, the likelihood of being called for jury service, and the ubiquity of the District Attorney's custom, usage, and/or policy of using peremptory challenges to intentionally discriminate against African-Americans in jury selection, the Plaintiffs face a real and immediate threat of being unconstitutionally barred from criminal jury service in the future. As discussed above, given random selection, one would assume that over a three-year period, the injunction Plaintiffs would have a one-in-three chance of receiving a summons. As in *Hernandez*, Plaintiffs seek to participate in constitutionally protected conduct.

Also, unlike *Lyons*, the Court need not assume that Plaintiffs will act unlawfully before the District Attorney's custom, usage, or policy is applied to them. Rather Plaintiffs in this case are subject to the District Attorney's custom of racially discriminatory jury selection, not because of any lawless conduct on Plaintiffs' part, but instead by the entirely lawful decision to register to vote and participate in the process of self-government in Caddo Parish, Louisiana.

Finally, as in the post-*Lyons* cases, the ubiquity with which the District Attorney targets African-American citizens for removal from jury service is a weighty factor in finding a credible threat of future discrimination.

---

[44] Doc. 18 at ¶¶83-102.

For these reasons, *Lyons* imposes no obstacle to the standing of these Plaintiffs to challenge the District Attorney's custom, usage, and/or policy of racial discrimination in the exercise of peremptory challenges.

### 4.   Reginald Autrey Had a Jury Summons in Hand at the Time of the First Amended Complaint.

At the time of the filing of the First Amended Complaint, Reginald Autrey had been issued, and had received, a summons for jury service in the First Judicial District of Louisiana (Caddo Parish) for January 11, 2016.[45] He faced a real and immediate threat of exclusion from jury service by the District Attorney's racially discriminatory custom, usage, and/or policy regarding the use of peremptory challenges. That certainly translates to a sufficient ""personal stake in the outcome" in order to "assure that concrete adverseness which sharpens the presentation of issues" necessary for the resolution of constitutional claims."[46]

Although Mr. Autrey's attendance at jury selection in Caddo Parish took place in January 2016, his claim for injunctive relief to prevent his exclusion from criminal jury service by racial discrimination of prosecutors is "capable of repetition while evading review," a recognized exception to the standing requirement.[47] A single plaintiff may avail himself of this exception, if "(1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again."[48]

---

[45] Doc. 18 at ¶ 12.
[46] Doc. 20-1 at 10, *quoting Baker v. Carr*, 369 U.S. 186, 204 (1962).
[47] *Roe v. Wade*, 410 U.S. 113, 124-25 (1973).
[48] *Moore v. Hosemann*, 591 F.3d 741, 744 (5th Cir. 2009), *quoting Fed. Election Comm'n v. Wis. Right to Life, Inc.*, 551 U.S. 449, 462 (2007).

Looking to the first prong in the analysis, the First Amended Complaint was filed on December 30, 2015.[49] At that time, Mr. Autrey was summoned to attend jury selection on January 11, 2016.[50] That 12-day period did not allow sufficient time to adjudicate Mr. Autrey's claim for declaratory and injunctive relief.[51]

The second prong is likewise met. Mr. Autrey is a registered voter in Caddo Parish and is therefore on the list of eligible jurors compiled by the Caddo Parish Clerk of Court.[52] This element of the "capable of repetition" test mirrors the facts discussed with respect to the Injunction Plaintiffs as a whole.

## 5.  The Damages Plaintiffs in the Third Amended Complaint Have Been Actually Harmed.

First, the damages Plaintiffs allege concrete injury by having actually been struck from jury service in particular cases by the exercise of the District Attorney's custom, usage, and/or policy of racial discriminatory use of peremptory challenges. Their removal from the jury venire in particular cases is detailed in the Third Amended Complaint.[53] Each of the damages Plaintiffs was struck from jury panels within one year of the filing of the Third Amended Complaint.[54]

It is elemental that "whether or not a plaintiff's request for injunctive relief has become moot, a suit should not be dismissed in its entirety so long as the plaintiff has alleged a cognizable

---

[49] Doc. 6.

[50] Doc. 6 at ¶ 10.

[51] For this reason, also, the District Attorney's argument based on *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983), does not apply to Plaintiff Autrey. As the Supreme Court held in *County of Riverside v. McLaughlin*, 500 U.S. 44, 51 (1991), an essential part of the holding of *Lyons* is that "the constitutionally objectionable practice ceased altogether before the plaintiff filed his complaint." *See also Tagore v. United States*, 2014 WL 2880008 at *4 (S.D. Tex. 2014) ("in a suit challenging the legality of government action where the plaintiff is the object of the action at issue and is likely to be the object of that action in the future, there is ordinarily little question that the action has caused the plaintiff injury sufficient to satisfy the injury-in-fact prong of the requirements for constitutional standing"), *quoting Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561-62 (1992).

[52] Doc. 18 at ¶ 11.

[53] Doc. 18 at ¶¶ 83-87 (Carter), 88-92 (Johnson), 93-97 (Horton), 98-102 (Hawthorne).

[54] *Id*.

claim for nominal damages for the constitutional violation he suffered."[55] Thus, in *Lyons*, the plaintiff's damages claim survived the dismissal of his claims for injunctive relief.[56] The claims of the damages Plaintiffs far exceed that standard.

The District Attorney seeks to demonstrate that because the criminal defendant in the case in which Plaintiff Hawthorne sought to serve[57] was acquitted, she has not suffered any violation of her constitutional rights.[58] That displays a fundamental misconception of Plaintiffs' claims.[59] It is not dispositive of this case whether the defense attorney in *State v. Carter* made a *Batson* objection, or whether a *Batson* objection would have been granted had it been made. If in fact Ms. Hawthorne was struck by a peremptory challenge in furtherance of a racially discriminatory custom, usage, or policy, she has a claim for damages under the Fourteenth Amendment that can be vindicated by a Section 1983 lawsuit.

In short, the well-pleaded factual averments of the Third Amended Complaint allege that the District Attorney's unconstitutional custom, usage, and/or policy has caused an injury of fact to the damages Plaintiffs. That injury can be redressed by an award of damages. Any suggestion that the damages Plaintiffs lack standing to litigate the denial of their own constitutional rights cannot be taken seriously.

---

[55] *Ward v. Santa Fe Indep. Sch. Dist.*, 35 Fed.Appx. 386 at *1 (5th Cir. 2002) (citing cases); *Wright v. El Paso County Jail*, 642 F.2d 134, 135 n.2 (5th Cir. Unit A 1981).

[56] *Lyons*, 461 U.S. at 109 ("We agree that Lyons had a live controversy with the City. Indeed, he still has a claim for damages against the City that appears to meet at Art. III requirements")' *id*. at 111 ('[n]or will the injury that Lyons allegedly suffered in 1976 go unrecompensed; for that injury, he has an adequate remedy at law. . . The legality of the violence to which Lyons claims he was once subjected is at issue in his suit for damages and can be determined there").

[57] The case was *State of Louisiana v. Tommorrea Shamichael Carter*, No. 316,082. See Doc. 18 at ¶ 99.

[58] Doc. 20-1 at 12-13.

[59] The relationship between a criminal defendant's exercise of his *Batson* rights and the claims in this case are explored more fully below with respect to res judicata and collateral estoppel.

### 6.   Class Certification, if Granted, Defeats Defendant's *Lyons* Argument.

There is an additional factor that should not be overlooked in this Court's analysis of the District Attorney's *Lyons* argument. Plaintiffs filed this case as a putative class action.[60] They timely filed a motion for class certification under FED.R.CIV.P. 23.[61] This Court has dismissed the motion to certify class as premature.[62]

If the Court were to certify the requested class, Mr. Autrey would individually be a class representative with respect to an "inherently transitory" class-action claim. The Supreme Court suggested in *Sosna v. Iowa*[63] that where a named plaintiff's individual claim becomes moot before the district court has an opportunity to rule on the certification motion, and the issue would otherwise evade review, the certification might "relate back" to the filing of the complaint.[64] The Court later made clear that the relation-back doctrine applies in class-action cases where it is "certain that other persons similarly situated" will continue to be subject to the challenged conduct and the claims raised are "so inherently transitory that the trial court will not have enough time to rule on a motion for class certification before the proposed representative's individual interest expires."[65] For these reasons, if this Court is otherwise inclined to find that Mr. Autrey lacks standing to assert his claims for declaratory and injunctive relief, the Court should not dispose of the District Attorney's motion to dismiss without first adjudicating Plaintiffs' motion to certify class.

---

[60] Doc. 18 at ¶¶ 18-27.

[61] Doc. 7.

[62] Doc. 24.

[63] *Sosna v. Iowa*, 419 U.S. 393 (1975).

[64] *Sosna*, 419 U.S. at 402 n. 11.

[65] *County of Riverside v. McLaughlin*, 500 U.S. 44, 52 (1991), *quoting United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 399 (1980) and *citing Gerstein v. Pugh*, 420 U.S. 103, 110 n. 11 (1975). *See also Genesis Healthcare Corp. v. Symczyk*, ___ U.S. ___, 133 S. Ct. 1523, 1529-31 (2013) (discussing cases). *Cf. Sandoz v. Cingular Wireless LLC*, 553 F.3d 913, 920 (5th Cir. 2004) ("absent undue delay in filing a motion for class certification," standing in a class-action case should relate back to the filing of the original complaint), *citing Weiss v. Regal Collections*, 385 F.3d 337 (3rd Cir. 2004).

Likewise, the standing of the injunction Plaintiffs as a whole is conclusively satisfied in a class-action posture. Taking the allegations of the Third Amended Complaint as true, there is a 100 percent chance that the District Attorney's custom, usage, or policy of racial discrimination in jury selection will be applied to some members of the class in the future. *Lyons* is easily distinguished at that point.

### C.  Plaintiffs' Claims are Not Moot.

#### 1.  Voluntary Policy Change Would Not Moot the Claims.

The District Attorney makes much of his election as the successor to Charles Scott and Dale Cox, his predecessors in office. He contends that this change in officers moots the Plaintiffs' claims.[66] One reads the District Attorney's pleadings in vain, however, for any statement that acknowledges, much less repudiates the custom, usage, or policy alleged in the Third Amended Complaint.

Even if the current District Attorney were to repudiate, and voluntarily change, the long-standing custom, usage, or policy of race discrimination in the exercise of peremptory challenges, this would not moot the Third Amended Complaint. The Fifth Circuit's test for the ripeness of a controversy is whether a plaintiff "has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged official conduct and the injury or threat of injury is both real and immediate, not conjectural or hypothetical."[67] When adjudicating the issue of

---

[66] The District Attorney erroneously states, "There are no allegations in the Complaint that Stewart presently has a policy and practice of mandating the use of peremptory strikes in violation of the Constitution by members of that office or that prosecutors in such offices presently use peremptory strikes in violation of the Constitution at the direction of Stewart." Doc. 20-1 at 16. On the contrary, the Third Amended Complaint expressly alleges, "Although the time period of the trial data used in the detailed statistical analysis was from 2003-2012, the District Attorney's custom of racially discriminatory jury selection began before that time and has continued through the present." Doc. 18 at ¶ 59.
[67] *Pearson v. Holder*, 624 F.3d 682, 683 (5th Cir. 2010).

ripeness, this Court must "balance the fitness of the issues for judicial decision with the hardship to the parties of withholding court consideration."[68]

The standard for determining mootness based on changed conduct by the defendant is dependent on whether the cessation of the prior conduct is voluntary or not. If the basis of the claim of mootness is the defendant's voluntary cessation of its conduct, then the case may be dismissed only on a finding "that it is absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur."[69] The Supreme Court's exposition of this standard is worth full review:

> It is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice. If it did, the courts would be compelled to leave the defendant free to return to his old ways. In accordance with this principle, the standard we have announced for determining whether a case has been mooted by the defendant's voluntary conduct is stringent: A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur. The heavy burden of persuading the court that the challenged conduct cannot reasonably be expected to start up again lies with the party asserting mootness.[70]

Here, the District Attorney has not announced or pled any change in his office's policy regarding the exercise of peremptory challenges. He does not even acknowledge there has been an issue with respect to racial discrimination in jury selection by his predecessors. The District Attorney has utterly failed to meet the "heavy burden" required to secure dismissal of this case under the mootness doctrine.

---

[68] *Id.*
[69] *Environmental Conservation Organization v. City of Dallas*, 529 F.3d 519, 527 (5th Cir. 2008), *citing Friends of the Earth, Inc. v. Laidlaw Environmental Services, Inc.*, 528 U.S. 167 (2000).
[70] *Laidlaw*, 528 U.S. at 189 (internal quotes and citations omitted).

### D.  No Abstention Doctrine Applies to this Case.

The District Attorney acknowledges, "Federal courts have a 'virtually unflagging obligation' to exercise jurisdiction granted to them."[71] Notwithstanding this admission, however, the District Attorney contends that this Court should abstain from the exercise of its jurisdiction under *Younger v. Harris*.[72] He is mistaken.

### 1.  Damages Plaintiffs -- *Younger* Abstention Does Not Apply to Damages Claims.

In the first place, the Fifth Circuit has unambiguously held that "the *Younger* abstention doctrine does not apply to a suit seeking only damages."[73] Thus, the claims of the damages Plaintiffs are not subject to abstention.

### 2.  Injunction Plaintiffs – the *Younger/Middlesex* Factors Demonstrate that Abstention is Inappropriate.

With respect to the injunction Plaintiffs, the parties agree that the issue of abstention is governed by the three-prong test of *Middlesex County Ethics Comm'n v. Garden State Bar Ass'n*.[74]

> (1)The dispute must involve an 'ongoing state judicial proceeding,'
> (2) an important state interest in the subject matter of the proceeding must be implicated, and (3) the state proceedings must afford an adequate opportunity to raise constitutional challenges.[75]

Plaintiffs challenge the first and third of these prongs.

---

[71] Doc. 20-1 at 17, *citing Deakins v. Monaghan*, 484 U.S. 193, 203 (1988) and *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813, 817 (1976).
[72] *Younger v. Harris*, 401 U.S. 371 (1971)
[73] *Alexander v. Ieyoub*, 62 F.3d 709, 713 (5th Cir. 1995).
[74] *Middlesex County Ethics Comm'n v. Garden State Bar Ass'n,* 457 U.S. 423, 432 (1982). See Doc. 20-1 at 18.
[75] *Texas Ass'n of Business v. Earle*, 388 F.3d 515, 519 (5th Cir. 2004), citing *Middlesex*, 457 U.S. at 432.

### a.   There is No Pending Proceeding.

The District Attorney asserts that "[t]he relief requested in paragraph 125 C, D, E, F, and G of the Third Amended Complaint would all affect pending, currently ongoing, and future criminal prosecutions."[76] This is incorrect. The injunction Plaintiffs seek prospective relief only with respect to jury selection in cases that arise after a final judgment is entered in this case. Unlike *Samuels v. Mackell*,[77] Plaintiffs do not seek to "enjoin a state criminal prosecution begun prior to the institution of the federal suit."[78]

### b.   The Batson Procedure is Not an Adequate State Court Remedy for Prospective Jurors.

The District Attorney asserts that the mechanism of the Louisiana Code of Criminal Procedure that purports to implement *Batson* provides an adequate state court remedy to Plaintiffs and the class they seek to represent.[79] That the strategic decisions of litigants in criminal trials cannot adequately protect the rights of jurors is discussed in more detail with respect to the District Attorney's res judicata argument. But more fundamentally, *Batson* has proved to be ineffectual as a device to eradicate race-based peremptory challenges on the macro level. As Professors Bellin and Semitsu have observed, "the *Batson* response [to the reality of race-based peremptory challenges] is as ineffective as a lone chopstick."[80]

This assessment was not empty rhetoric. Studying all 269 Federal appellate decisions applying *Batson* from 2000-2009, Bellin and Semitsu noted that a trial court's finding that jury selection discrimination had not occurred was reversed in 18 cases (6.69%), and a trial court's

---

[76] Doc. 20-1 at 19.
[77] *Samuels v. Mackell*, 401 U.S. 66 (1971).
[78] Doc. 20-1 at 19.
[79] Doc. 20-1 at 19-20.
[80] J. Bellin and J. Semitsu, *Widening Batson's Net to Ensnare More than the Unapologetically Bigoted or Painfully Inattentive Attorney*, 96 CORNELL L. REV. 1075, 1093 (July 2011).

finding that such discrimination had occurred was affirmed in 12 cases (4.5%). In ten additional cases (3.7%), the appellate court remanded the *Batson* claim for further review. Thus, in the remaining 85.1% of the cases, the appellate court rejected the *Batson* claim in toto.[81] The conclusion drawn by Bellin and Semitsu's 2011 analysis followed earlier studies of the ineffectiveness of the *Batson* procedure.[82]

The Supreme Court's attempt to fashion a remedy for race discrimination in jury selection through *Batson* and its progeny has been all but eviscerated in Caddo Parish. In the 2003-2012 study, well under 5% of the District Attorney's peremptory challenges against African-American qualified jurors were objected to by the criminal defendant's attorneys. There are several likely reasons for this parsimony in *Batson* challenges.

First, both *Batson* and Article 795 of the Code of Criminal Procedure require a "prima facie" case be established before the district judge is allowed to require a "race-neutral reason" from the District Attorney. But as the ten-year study demonstrates, even in the absence of multiple racially-motivated challenges in any single case, the District Attorney's custom, usage, and/or policy effectively bars 46% of African-Americans from the jury box.[83] From the standpoint of Plaintiffs and putative class members, even one challenge exercised to strike a black juror because of her race is unconstitutionally odious.

---

[81] Bellin and Semitsu, supra, at 1092 & n. 82.

[82] See D. Baldus et al. *The Use of Peremptory Challenges in Capital Murder Trials: A Legal and Empirical Analysis*, 3 U. PA. J. CONST. L. 3, 10, 45, 127-30 (2001) (after "analysis of 317 capital murder cases tried by jury in Philadelphia between 1981 and 1997" that "discrimination in the use of peremptory challenges on the basis of race and gender by both prosecutors and defense counsel is widespread" and that "Supreme Court decisions banning those practices appear to have had only a marginal impact"); K. Melilli, *Batson in Practice: What We Have Learned About Batson and Peremptory Challenges*, 71 NOTRE DAME L. REV. 447, 448, 503 (1996) (survey of reported decisions of every Batson case from 1986-1993, concluding "Batson is almost surely a failure" because of the use of non-verifiable justifications for peremptory strikes); M. Raphael & E. Ungvarsky, *Excuses, Excuses: Neutral Explanations Under Batson v. Kentucky*, 27 U. MICH. J. L. REFORM 229 (reviewing Federal and State decisions from 1986-1992; same conclusion).

[83] See Bellin and Semitsu at 1104 (discussing the higher accuracy of studying racial discrimination in an aggregate number of cases rather than by use of a single-case "prima facie" test).

Second, Article 795(C)'s unconstitutionally high threshold states, "No peremptory challenge made by the state or the defendant shall be based **solely** upon the race or gender of the juror." Thus, where the District Attorney provides any "race-neutral" reason when challenged, Louisiana law requires the juror be dismissed, even if, despite the presence of some "race-neutral" factors, the substantial or motivating reason for the peremptory challenge was based on race. Louisiana law therefore tolerates peremptory challenges that violate the Fourteenth Amendment's Equal Protection guarantee as interpreted by the Supreme Court.[84]

Third, defense lawyers, acting on their duty to their client, may acquiesce in a racially-discriminatory jury strike for the defendant's own tactical gain. Article 795 (D) gives a safe harbor for racism in the exercise of peremptory challenges: "The provisions of Paragraph C and this Paragraph shall not apply when both the state and the defense have exercised a challenge against the same juror." But this does not justify the constitutional violation. There is no such thing under the Fourteenth Amendment as benign racial classification by government.[85]

Moreover, the excluded jurors have no opportunity to confront or rebut the pretexts offered by the District Attorney to justify their race-based dismissal. Article 795(C) also provides that the disclosure of the purported "race-neutral" reasons for peremptory challenges "shall be made outside of the hearing of any juror or prospective juror." Thus, Plaintiffs and putative class members are not even advised of the alleged reasons for the use of peremptory challenge. They are utterly powerless to respond or rebut the purported grounds for their dismissal.

---

[84] *Snyder v. Louisiana*, 552 U.S. 472, 485 (2008) ("a peremptory strike shown to have been motivated in substantial part by discriminatory intent" requires the prosecutor to show "that this factor was not determinative").
[85] *See Amarand Contractors, Inc. v. Pena*, 515 U.S. 200, 224 (1995).

### c. The Individual Case Approach of *Batson* Denies the Class an Aggregate Remedy.

Finally, the question of class certification is inextricably interwoven with the question of whether Plaintiffs have an adequate opportunity to raise their challenges in a pending state proceeding under *Younger*'s third prong. Piecemeal state prosecutions are utterly ill-suited to provide class-wide relief of the nature and scope sought in the Third Amended Complaint. Consequently, courts that have first granted class certification have subsequently declined to abstain under *Younger*.[86] Thus, a fair resolution of Defendants' abstention defense requires the Court to simultaneously consider Plaintiffs' class certification motion.

## IV.    THE THIRD AMENDED COMPLAINT STATES CLAIMS ON WHICH RELIEF CAN BE GRANTED.

In addition to his argument that this Court lacks jurisdiction, the District Attorney asserts that the Third Amended Complaint fails to state a cause of action upon which relief can be granted. He makes a series of truncated arguments regarding res judicata, prosecutorial immunity, qualified immunity, and the Eleventh Amendment.

A similar focus is brought to bear in consideration of a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted:

> A motion to dismiss under rule 12(b)(6) is viewed with disfavor and is rarely granted.. The complaint must be liberally construed in favor

---

[86] *See, e.g.,  M.D. v. Perry*, 799 F. Supp. 2d 712, 721 (S.D. Tex. 2011) (finding that state proceedings did not provide "adequate opportunity to raise the complex constitutional challenges and obtain broad-based injunctive and declaratory relief that Plaintiffs seek in this class action"), *citing LaShawn A. by Moore v. Kelly*, 990 F.2d 1319, 1320 (D.C.Cir.1993) ("[T]here was no pending judicial proceeding in the District of Columbia which could have served as an adequate forum for the class of children in the case to present its multifaceted request for broad-based injunctive relief."); *Conor B. ex. rel. Vigurs v. Patrick*, 771 F. Supp. 2d 142, 148 (D. Mass 2011) (abstention improper where state proceedings "cannot and do not afford Plaintiffs an adequate opportunity to seek relief for the systemic failures alleged in the [class action] complaint"); *Brian A. ex. rel. Brooks v. Sundquist*, 149 F.Supp.2d 941, 953 (M.D. Tenn. 2000) ("[T]he Court finds that the juvenile courts of Tennessee are not more appropriate vehicles for adjudicating the claims raised in this putative class action.") (internal quotations omitted)).

of the plaintiff, and all facts pleaded in the complaint must be taken as true. The district court may not dismiss a complaint under rule 12(b)(6) unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.

This strict standard of review under rule 12(b)(6) has been summarized as follows: The question therefore is whether in the light most favorable to the plaintiff and with every doubt resolved in his behalf, the complaint states any valid claim for relief.[87]

In the wake of the Supreme Court's recent retooling of the pleading standard under the Federal Rules of Civil Procedure,[88] "The key question now is not whether it appears beyond doubt that a plaintiff can prove no set of facts in support of her claim, but whether a claim made is plausible on its face."[89] As this Court has explained:

This "plausibility" requirement asks for more than a sheer possibility that a defendant has acted unlawfully. Simply put, if the plaintiff pleads factual content that allows the court to draw the inference that the defendant is liable for the misconduct alleged, the 12(b) (6) motion should be denied.[90]

### A. Plaintiffs' Claims Are Not Precluded by Res Judicata or Collateral Estoppel.

First, the District Attorney argues that because criminal defendants have standing to raise the equal protection rights of peremptorily challenged jurors, res judicata bars the Plaintiffs' claims.[91] It should be noted that this argument arises only as to the damages Plaintiffs, who are the only ones who were actually struck with peremptory challenges by the District Attorney.

---

[87] *Brammer Engineering, Inc. v. Meridian Resources USA, Inc.*, 2007 WL 3009148  at *1 (W.D. La. 2007), *citing Kaiser Aluminum & Chem. Sales v. Avondale Shipyards*, 677 F.2d 1045, 1050 (5th Cir.1982), *Campbell v. Wells Fargo Bank*, 781 F.2d 440, 442 (5th Cir.1986) *and Blackburn v. Marshall*, 42 F.3d 925, 931 (5th Cir.1995).
[88] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007); *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009).
[89] *Winslow v. W.L. Gore & Associates, Inc.*, 2011 WL 873562 at *1 (W.D. La. 2011).
[90] *Mitchell v. Union Tank Car LLC*, 2011 WL 4499317 at *1 (W.D. La. 2011) (*citing Twombly* and *Iqbal*).
[91] Doc. 20-1 at 20-21.

In the first place, "[g]enerally, a res judicata contention cannot be brought in a motion to dismiss; it must be pleaded as an affirmative defense."[92] Plaintiffs specifically object to this affirmative defense being raised by means of a motion to dismiss under 12(b)(6).

Second, the fact that a criminal defendant has the right to raise a claim of struck jurors under *Powers* does not provide the privity required by the "same parties" prong of res judicata. The Fifth Circuit has long held that:

> A nonparty will be considered in privity, or sufficiently close to a party in the prior suit[93] so as to justify preclusion, in three situations:
>
> First, a nonparty who has succeeded to a party's interest in property is bound by any prior judgments against that party.
>
> Second, a nonparty who controlled the original suit will be bound by the resulting judgment.
>
> Third, federal courts will bind a nonparty whose interests were represented adequately by a party in the original suit.[94]

The first two of these situations are clearly not applicable. As to the third, "[t]he adequate representation concept does not pertain to the competence of the previous litigation. Instead, it refers to the concept of virtual representation, by which a nonparty may be bound because the party in the first suit is so closely aligned with the nonparty's interests as to be his virtual representative."[95] And that too is a term of art:

> Virtual representation demands the existence of an express or implied legal relationship in which parties to the first suit are

---

[92] *Burnette v. Bureau of Prisons*, 2009 WL 3415301 at *1 (W.D. La. 2009), report and recommendation adopted, *Burnette v. United States Bureau of Prisons*, 2009 WL 3180223 (W.D. La. 2009). There is no distinction between res judicata or collateral estoppel in this regard.

[93] In the case before this Court, the "nonparties" are the current Plaintiffs and the "party" is the criminal defendant in the case in which they were struck.

[94] *Benson and Ford, Inc. v. Wanda Petroleum Co.*, 833 F.2d 1172, 1174 (5th Cir. 1987), *quoting Freeman v. Lester Coggins Trucking, Inc.*, 771 F.2d 860, 864 (5th Cir. 1985).

[95] *Benson and Ford*, 833 F.2d at 1175, *citing Freeman*, 771 F.2d at 864.

accountable to non-parties who file a subsequent suit raising identical issues.[96]

The question of virtual representation is to be kept within "strict confines."[97] Applying this "strict confines" test, the Fifth Circuit held that a union was not the "virtual representative" of a former union member for purposes of res judicata, because "'[n]othing in the record supports the conclusion that [plaintiff] consented to the Union's representation, or that the Union had a contractual duty to provide such representation. Nor did the UAW have a statutory obligation to represent [the plaintiff]."[98]

There is no possible scenario in which these Plaintiffs or any potential juror has "consented to" representation of their interests by a criminal defendant or defense attorney, much less one in which the criminal defendant and attorney have a contractual or statutory duty to represent the juror. If there could be any such fact pattern, it would have to be raised by affirmative defense and by means of summary judgment. Res judicata is a red herring in this case.

The District Attorney's collateral estoppel argument fares no better. Collateral estoppel only prevents litigation of an issue when "the identical issue was previously adjudicated."[99] The Third Amended Complaint makes clear that no state court adjudicated whether any of the four peremptory challenges used to strike the damages Plaintiffs were motivated by race.[100] There is therefore no adjudication that could be the basis of collateral estoppel.

Additionally, collateral estoppel only applies where "the identical issue" was litigated in the first action. That would not be the case here, even if the state court judge had found that the

---

[96] *Benson and Ford*, 833 F.2d at 1175, *quoting Pollard v. Cockrell*, 578 F.2d 1002, 1008 (5th Cir. 1978).
[97] *Benson and Ford*, 833 F.2d at 1175, *quoting Hardy v. Jones-Manville Sales Corp.*, 681 F.2d 334, 339 (5th Cir. 1982).
[98] *Meza v. General Battery Corp.*, 908 F.2d 1262, 1272 (5th Cir. 1990).
[99] *Bradberry v. Jefferson County*, 732 F.3d 540, 548 (5th Cir. 2013).
[100] Doc. 18 at ¶¶87 (Carter), 92 (Johnson), 97 (Horton), 102 (Hawthorne).

prosecutors' strikes of the damages Plaintiffs were not discriminatory, because the standard for overcoming a *Batson* objection under state law is lower than the Fourteenth Amendment standard established by the Supreme Court.

The Louisiana Code of Criminal Procedure provides that "[n]o peremptory challenge made by the state or the defendant shall be based solely upon the race or gender of the juror,"[101] and only permits the trial judge to disallow a peremptory strike under *Batson* if "no satisfactory racially neutral or gender neutral reason is apparent or given."[102] "Thus, where the District Attorney and his well-trained staff provide any "race-neutral" reason when challenged, Louisiana law requires the juror be dismissed, even if, despite the presence of some 'race-neutral' factors, the substantial or motivating reason for the peremptory challenge was based on race."[103] But the Fourteenth Amendment requires that a peremptory strike motivated even in substantial part by discriminatory intent be disallowed unless the trial court finds that the racial consideration was not determinative.[104]

## B. The Third Amended Complaint Does Not Raise a Claim Under 18 U.S.C. Section 243.

Curiously, the District Attorney points out that 18 U.S.C. § 243 does not provide a private right of action.[105] The Third Amended Complaint makes no claim based on this statute; therefore, the District Attorney's argument is literally irrelevant to this Court's inquiry under Rule 12(b)(6).

---

[101] La. C. Cr. P. art. (C).
[102] La. C. Cr. P. art. (E).
[103] Doc. 18 at ¶77.
[104] *Snyder v. Louisiana,* 552 U.S. 472, 485 (2008).
[105] Doc. 20-1 at 22.

**C.  In This Case Based on Municipal Liability, Immunity Is Not a Defense.**

The District Attorney briefly asserts that he is immune from damages claims by the doctrines of prosecutorial immunity, qualified immunity, and the Eleventh Amendment. In the first place, this defense only relates to the damages claims of the Third Amended Complaint.

More importantly, the Third Amended Complaint is specifically premised on municipal liability for the policy, custom, and usage of the Office of the District Attorney for the First Judicial District, as represented by the District Attorney in his official capacity. In *Johnson v. Louisiana*,[106] District Judge Hicks undertook a thorough analysis of the case law and determined that a damages claim against the District Attorney in his official capacity for constitutional violations caused by a custom, usage, or policy of the District Attorney is governed by *Monell*[107] and is therefore not subject to prosecutorial immunity nor qualified immunity. As another district court has recently explained, it would be perverse[108] to allow a municipal entity to cloak itself in the immunity granted to its officers when they are sued in their individual capacity:

> Plaintiffs assert claims against the County for damages as well as for equitable relief. The claims arise not via a theory of respondeat superior, but from the County's own conduct. Still, the County argues that because the Rutherford County General Sessions and Circuit Court judges would likely be immune if they were parties to the litigation, the County should also benefit from absolute immunity. The County does not address how or why absolute immunity, an individualized protection, would cover a governmental entity. Neither does the County confront the well-established tenet of Section 1983 litigation that a governmental entity may never assert the judicial immunity asserted by its officer. See.[109]

---

[106] *Johnson v. Louisiana*, 2010 WL 996475 at *10-13 (W.D. La. 2010)
[107] *Monell v. Dep't of Soc. Serv. of the City of New York*, 436 U.S. 658 (1978)
[108] *Rodriguez v. Providence Community Corrections, Inc.*, 2016 WL 3351944 at *3 (M.D. Tenn. 2016) ("Defendants' requests for immunity pervert the doctrine and undermine the public policy rationale in which it is rooted").
[109] *Id*. at *4, citing *Monell,* 436 U.S. at 701 ("[M]unicipal bodies sued under § 1983 cannot be entitled to an absolute immunity, lest our decision that such bodies are subject to suit under § 1983 'be drained of meaning,'" *quoting Scheuer v. Rhodes*, 416 U.S. 232, 248 (1974)).

Likewise, the Fifth Circuit has definitively held that the District Attorney, sued in his official capacity, is a local government entity, not an arm of the state government, and as such is not entitled to the immunity conferred by the Eleventh Amendment: "for purposes of Eleventh Amendment immunity, a district attorney, sued in his official capacity, is a local, not a state, government official and, therefore, is not entitled to such immunity.".[110]

Therefore, the District Attorney's assertions regarding prosecutorial immunity, qualified immunity and Eleventh Amendment immunity are without merit.

## V. CONCLUSION

Just last summer, the American Bar Association and the NAACP Legal Defense and Educational Fund released a statement addressing continued racial injustice in the criminal justice system:

> [W]e are now confronted by a troubling and destabilizing loss of public confidence in the American criminal justice system. The growing skepticism about the integrity of the criminal justice system is driven by real and perceived evidence of racial bias among some representatives of that system. This crisis of confidence must be addressed, and the time to act is now.[111]

A group of ten citizens of Caddo Parish have heeded this call and stepped forward to challenge racial discrimination in jury selection in criminal cases the First Judicial District of Louisiana. The allegations in their Third Amended Complaint far exceed the standard for demonstrating Federal jurisdiction over their lawsuit. This Court should deny the District Attorney's motion to dismiss, set a schedule for consideration of Plaintiffs' motion for class certification, and order the entry of a Plan or Work for merits discovery.

---

[110] *Burge v. Parish of St. Tammany*, 187 F.3d 452, 465-68 (5th Cir. 1999), *citing Hudson v. City of New Orleans*, 174 F.3d 677, 691 (5th Cir. 1999).
[111]  https://www.americanbar.org/content/dam/aba/images/abanews/aba-ldf_statement.pdf  (reviewed  August  11, 2016).

Respectfully submitted,

*/s/James W. Craig*
James W. Craig, Bar No. 33687
Emily M. Washington

Roderick & Solange MacArthur Justice Center
4400 S. Carrollton Ave.
New Orleans, LA 70119
(504) 620-2259 (p)
(504) 208-3133 (f)
jim.craig@macarthurjustice.org
emily.washington@macarthurjustice.org

*Attorneys for Plaintiffs*

# CERTIFICATE OF SERVICE

I hereby certify that I have this day caused the above and foregoing Memorandum in Opposition to Motion to Dismiss to be served upon counsel for Defendant by filing same via the Electronic Case Filing system in the United States District Court for the Western District of Louisiana.

This the 12th day of August, 2016.

*/s/James W. Craig*