UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

RENEE PIPKINS, EVERITT PIPKINS,     CIVIL ACTION NO. 5:15-CV-02722
THERON JACKSON, LAWHITNEY
JOHNSON, ADRIANA THOMAS,          JUDGE: DEE D DRELL
REGINALD AUTREY, DARRYL
CARTER, DIANE JOHNSON,            MAGISTRATE JUDGE: MARK L HORNSBY
KIMBERLY HORTON, THERESA
HAWTHORNE AND ALL OTHERS       JURY DEMAND
SIMILARLY SITUATED

*versus*

JAMES E. STEWART, SR., IN HIS
OFFICIAL CAPACITY AS DISTRICT
ATTORNEY OF CADDO PARISH
(FIRST JUDICIAL DISTRICT OF
LOUISIANA)


## DEFENDANT STEWART'S REPLY TO PLAINTIFFS' BRIEF IN OPPOSITION TO MOTION TO DISMISS


Respectfully submitted by:

Allison A. Jones, T.A.             Tommy Johnson
DOWNER, JONES, MARINO & WILHITE   CADDO PARISH DISTRICT
401 Market Street, Suite 1250       ATTORNEY'S OFFICE
Shreveport, Louisiana 71101        525 Marshall St. Fourth Floor
Tel: 318-213-4444               Shreveport, LA 71101
Fax: 318-213-4445              Phone: (318) 429-7618, ext. 2
Email: aadnj@aol.com           Fax: (318) 629-4300
                             Email: TJohnson@caddoda.com


Counsel for the Defendant

## TABLE OF CONTENTS

I.    FEDERAL RULE OF CIVIL PROCEDURE 12(b)(1): ...................................................... 6

    A.   Plaintiffs Lack Standing................................................................................................ 6

        1.   *Lyons* Is Not Distinguished ..................................................................................... 6

        2.   There Is No Injury In Fact That Is Imminent and/or Traceable to Defendant Stewart... 8

    B.   The Claims of Plaintiffs Are Moot ............................................................................ 11

    C.   The Court Should Abstain ......................................................................................... 12

        1.   Application of the *Middlesex* Factors .................................................................. 13

            (a)   First *Middlesex* Factor: Ongoing State Judicial Proceeding .................................. 13

            (b)   Third *Middlesex* Factor: Adequate State Court Remedy ....................................... 15

II.   FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6) ...................................................... 16

    A.   Plaintiffs Have Failed to Adequately Plead Under FRCP 8(c) ......................................... 16

    B.   Plaintiffs' Claims Should be Dismissed Under the Doctrine of Res Judicata and Collateral Estoppel .................................................................................................................... 16

    CONCLUSION ............................................................................................................ 23

# TABLE OF AUTHORITIES

## Cases

*Aaron Wilson v. Burl Cain, Report and Recommendation of Magistrate Judge Kay,* Docket No. 5:12-0310 United States District Court Western District of Louisiana (R. 57, February 4, 2016) ................................................................................................................................ 15

*Allen v. Mccurry*, 449 U.S. 90, 94, 101 S. Ct. 411, 414, 66 L.Ed. 2d 308 (1980) ...................... 17

*Arizonans for Official English v. Arizona*, 520 U.S. 43, 137 L.Ed. 2d 170, 11 S.Ct. 1055, 1068 (1997) .................................................................................................................................... 11

*Ashcroft v. Iqbal*, 556 U.S. 662, 677-78, 129 S.Ct. 1937, 173 L.Ed. 2d 868 (2009) ............... 9, 16

*Batson v. Kentucky*, 476 U.S. 79 (1986) ............................................................... 6, 18, 20, 21

*Bice v La. Pub. Defender Bd.*, 677 F.3d 712, 716-18 (5th Cir. 2012) ........................................ 14

*Carter v. Jury Comm'n*, 396 U.S. 320 (1970) ........................................................................... 6

*Clapper v. Amnesty International USA,* 133 S.Ct. 1138 (2013) ................................................... 10

*Coalition of Airline Pilots Associations v. Federal Aviation Administration,* 370 F.3d 1184, (D.C. Cir. 2004) .............................................................................................................................. 11

*Corwin v. Johnson,* 150 F.3d 456, 471 (5th Cir. 1998) .............................................................. 15

*County of Los Angeles v. Davis*, 440 U.S. 625, 631, 99 S.Ct. 1379, 1383, 59 L.Ed.2d 642 (1979) ................................................................................................................................................ 11

*DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332 at 339-43 (2006)................................................. 7

*Edmonson v. Leesville Concrete Co., Inc.*, 500 U.S. 614, 629, 111 S. Ct. 2077, 2087-88, 114 L. Ed. 2d 660 .............................................................................................................................. 18

*Elk Grove Unified School District v. Newdow* 542 U.S. 1, 12 (2004) ......................................... 10

*Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) ......................................................... 12

*Gibbs v. Bolden*, 65 F. App'x. 519 (6th Cir. 2003) ................................................................... 22

*Hart v. Yamaha- Parts Distributors, Inc.*, 787 F.2d 1468, 1470 (11th Cir. 1986) ........... 16, 17, 18

*Hernandez v. Cremer,* 913 F.2d 230, 234 (5th Cir. 1990) ......................................................... 6, 7

*Honing v. Doe*, 484 U.S. 3015, 320 (1988) ............................................................................. 6, 7

*In re Air Crash at Dall./Ft. Worth Airport*, 861 F.2d 814, 816 (5th Cir. 1988) .............. 15, 16, 20

*Joseph A. ex rel. Wolfe v. Ingram*, 275 F.3d 1253, 1272 (10th Cir. 2002) ................................. 15

*Lexmark Intern v. Static Control* 134 S.Ct. 1377 (2014)........................................................... 11

*Los Angeles v. Lyons*, 103 S.Ct. 1660, 1665 (1983) ....................................................... 6, 7, 8, 10

*Lovely v. Laliberte*, 498 F.2d 1261 (1st Cir.) *cert. denied,* 419 U.S. 1038, 95 S.Ct. 526, 42 L.Ed.2d 316 (1974) ............................................................................................................ 15, 20

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 576 (1992) ................................................... 6, 7, 9

*Middlesex County Ethics Commission v. Garden State Bar Association*, 457 U.S. 423, 432 (1982)............................................................................................................................... 13, 15

*Miller-El v. Dretke,* 545 U.S. 231 (2005) ................................................................................ 15

*O'Shea v. Littleton*, 414 U.S. 488, 495-496 (1972) ......................................................... 8, 10, 14

*Olmstead v. Amoco Oil Co*, 725 F.2d 627, 632 (11th Cir. 1984) ......................................... 15, 20

*Peterson v. Cain*, 302 F.3d 508, 512-13 (5th Cir. 2002) ........................................................... 19

*Planned Parenthood of Gulf Coast Inc. v. Gee,* 2016 U.S. App. Lexis 16844 (5th Cir)............. 10

*Powers v. Ohio,* 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed. 2d 411 (1991) ................ 18, 19, 20, 21

*Robertson v. Lofton*, Civil Action No. 5:15-CV-02678, (March 4, 2106, U.S. WDLA)............. 12

*Rose v. Mitchell*, 443 U.S. at 551........................................................................................... 19

*Samuels v. Mackell,* 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed. 2d 688 (1971).................................... 13

*Shaw v. Hahn*, 56 F.3d 1128, 1131-32 (9th Cir. 1995).................................................................... 20

*Sossaman v. Lone Star State of Texas*, 560 F. 3d 316 (5th 2006)................................................. 11

*Summers v. Earth Island Institute,* 555 U.S. 488, 129 S.Ct. 1142 (2009) ...................................... 9

*Terrell v. DeConna*, 877 F.2d 1267, 1270 (5th Cir. 1989) ............................................................ 16

*Texas Ass'n of Business v. Earle*, 388 F.3d 515, 519 (5th Cir. 2004) .................................. 13, 15

*United States v. Moore*, 303 F. App'x. 767 (11th Cir. 2008)........................................................ 22

*Whitmore v. Arkansas,* 495 U.S. 149, 159 (1990) ........................................................................ 10

*Whitmore*, *supra* at 158, *Lee v. Verizon Communications, Inc.* 2016 U.S. App. Lexis 16929 (5th Cir)............................................................................................................................................. 10

*Wightman v. Tex. Supreme Ct.*, 84 F.3d 188, 189 (5th Cir. 1996)............................................... 13

*Younger v. Harris,* 401 U.S. 371 (1971)...................................................................... 12, 13, 14

## Rules

Federal Rule of Civil Procedure 12(b)(1) ..................................................................... 6

Federal Rule of Civil Procedure 12(b)(6) ................................................................... 16

Federal Rule of Civil Procedure 8(c) ....................................................................... 9, 16

## Treatises

28 AM. JUR. 2D Estoppel and Waiver § 119............................................................... 16

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

RENEE PIPKINS, EVERITT PIPKINS, CIVIL ACTION NO. 5:15-CV-02722
THERON JACKSON, LAWHITNEY
JOHNSON, ADRIANA THOMAS, JUDGE: DEE D DRELL
REGINALD AUTREY, DARRYL
CARTER, DIANE JOHNSON, MAGISTRATE JUDGE: MARK L HORNSBY
KIMBERLY HORTON, THERESA
HAWTHORNE AND ALL OTHERS JURY DEMAND
SIMILARLY SITUATED

*versus*

JAMES E. STEWART, SR., IN HIS
OFFICIAL CAPACITY AS DISTRICT
ATTORNEY OF CADDO PARISH
(FIRST JUDICIAL DISTRICT OF
LOUISIANA)

### DEFENDANT STEWART'S REPLY TO PLAINTIFFS' BRIEF IN OPPOSITION TO MOTION TO DISMISS

COMES NOW the Defendant, James E. Stewart, Sr.  ("Defendant Stewart") and in reply to Plaintiffs' Brief in Opposition to the Motion to Dismiss the Plaintiffs' Complaint, states as follows:

### PRELIMINARY STATEMENT

Defendant Stewart's Motion to Dismiss should be granted. The Plaintiffs have filed an opposition memorandum thirty-eight pages in length, in which they assert numerous contentions and cite innumerable cases ("Plaintiffs' Memorandum"). However, the cases cited and contentions advanced by Plaintiffs are either irrelevant or distinguishable to the merits of Defendant Stewart's Motion to Dismiss, or have been soundly rejected by the Supreme Court. Therefore, without

waiving any defenses, Defendant Stewart stands on the grounds raised in his motion, and gives this limited rebuttal.

## ARGUMENTS AND LAW

**I.      FEDERAL RULE OF CIVIL PROCEDURE 12(b)(1):**

### A.      Plaintiffs Lack Standing

Contrary to the assertions in Plaintiffs' Memorandum, Defendant Stewart does not contend that a juror could never bring a lawsuit. In fact, *Batson v. Kentucky,* 476 U.S. 79 (1986), as cited to this Court by Defendant Stewart, contemplates the same. See also, *Carter v. Jury Comm'n*, 396 U.S. 320 (1970). Defendant Stewart does however assert that any juror bringing such claim must have claims that: (i) satisfy the standing requirements of *Los Angeles v. Lyons*, 103 S.Ct. 1660, 1665 (1983); and (ii) are ripe and/or otherwise viable for judicial review. In this case, Plaintiffs' claims fail.

### 1.      *Lyons* **Is Not Distinguished**

In an effort to distinguish the long-standing precedent of the Supreme Court, *Los Angeles v. Lyons, supra*, Plaintiffs rely upon *Honing v. Doe*, 484 U.S. 3015, 320 (1988)[1] and *Hernandez v. Cremer,* 913 F.2d 230, 234 (5th Cir. 1990) for the premise that when conduct is beyond a plaintiff's control or when a plaintiff raises a constitutional claim or a custom or practice claim, the holding of *Lyons* should not apply.   The Supreme Court soundly rejected Plaintiffs' assertion, in *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 576 (1992).  In *Lujan*, the Supreme Court reaffirmed that the

---

[1] *Honing v. Doe*, *supra*, is, in reality, not a standing case, but rather a mootness case where the court considered the situation of conduct capable of repetition yet evading review. While many courts sometimes overlap standing and mootness analysis, it is important to remember that the two concepts are, in fact, different.

plaintiff seeking standing must show that: (1) she has "suffered an injury in fact," which is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical"; (2) "there [is] a causal connection between the injury and the conduct complained of-the injury [is] fairly ... trace[able] to the challenged action of the defendant, and not... th[e] result [of] the independent action of some third party not before the court"; and (3) "it [is] likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id*.   The Supreme Court also reaffirmed that the burden of proving standing clearly rests on the plaintiff. ("A plaintiff has the burden of establishing all three prongs of the standing test."' See *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332 at 339-43 (2006)).

In addition to these affirmations, Justice Scalia, writing for the Supreme Court, concluded that it is irrelevant for Article III standing whether the underlying substantive issue was a constitutional matter or statutory matter, providing, "…[t]here is absolutely no basis for making the Article III inquiry turn on the source of the asserted right." *Lujan*, 504 U.S. 555, 576 (1992). Neither *Honing* nor *Hernandez* is subsequent to the *Lujan* decision. Thus, Plaintiffs attempts to distinguish *Lyons* on the basis of the source of claims asserted fail as it has been rejected by the Supreme Court.

A review of the judicial precedent upon which *Lyons* is based shows that Justice Scalia is correct.   In *Lyons*, a man was stopped by city police officers for allegedly driving with a faulty taillight and was choked. The Court held that the plaintiff, who was seeking an injunction against the police department, lacked standing, stating that plaintiffs must show sufficient likelihood of future injury to warrant injunctive relief.   In rejecting the *Lyons'* plaintiff's contentions, the Supreme Court relied upon its previous holding in *O'Shea v. Littleton*, 414 U.S. 488, 495-496

(1972). In *O'Shea*, the Supreme Court held that the claims of seventeen (17) black and two (2) white residents of Cairo, Illinois brought a Section 1983 claim against politicians, a magistrate and a circuit court judges, who allegedly, engaged under color of state law, in a continuing pattern and practice of conduct consisting of illegal bond setting, sentencing and jury free practices in criminal cases. The Supreme Court held that the plaintiffs lacked standing as there was no "case or controversy" given the speculative nature of the actual claims of plaintiffs.  As *O'Shea* involves a Section 1983 claim, and is the predicate case upon which the *Lyons'* holding relies, it is clear that nothing in *Lyons* limits its holding to only certain claims. Indeed, Justice Scalia, writing for the Supreme Court, made it clear that no matter the source of the claim asserted, a plaintiff must satisfy the standing requirements in federal court. In this case, the Plaintiffs have utterly failed to satisfy these requirements.

2.      **There Is No Injury In Fact That Is Imminent and/or Traceable to Defendant Stewart**

Plaintiffs have failed to establish that their alleged injury is anything other than speculative. Relying upon statistics stemming from a nearly four (4)  year old Reprieve Australia study, Plaintiffs allege that "given the population of the parish, the likelihood of being called for jury service and the ubiquity of the District Attorney's custom, usage and/or policy of using peremptory challenges to intentionally discriminate against African Americans in jury selection, the Plaintiffs face a real and immediate threat of being unconstitutionally barred from criminal jury service in the future." Plaintiffs' Memorandum at p. 20. This statement reeks of speculation.

While the simple mathematics may or may not show that an African American registered voter would be called for jury duty, ***those same mathematics fail to show that any juror called would face racial discrimination***. Indeed, not one juror used in the four (4) year old Reprieve

Australia study was struck under Defendant Stewart's tenure as District Attorney of Caddo Parish.[2] Moreover, this type of statistical "boot – strapping" standing was frowned upon by the Supreme Court in *Summers v. Earth Island Institute,* 555 U.S. 488, 129 S.Ct. 1142 (2009). Addressing organizational standing, Justice Scalia interpreted *Lyons* to hold that a plaintiff who has been injured by the government in the past does not have standing to obtain an injunction to prohibit future injury where there is only conjecture that the government might harm him in the future. The Supreme Court further rejected the statistical likelihood argument and found that statistics were not enough to establish injury in fact. Justice Scalia dismissed the use of such empirical data stating, "this novel approach to the law of organizational standing would make a mockery of our prior cases, which have required plaintiffs-organizations to make specific allegations establishing that at least one identified member had suffered or would suffer harm." *Summers*, 129 S.Ct. 1142, 1151. The same is true in non-organizational standing cases – statistics, and particularly dated statistics, are not enough. As stated by Justice Scalia, "[s]tanding is not an ingenious academic exercise in the conceivable… [but] requires … a factual showing of perceptible harm." *Lujan*, 504 U.S. at 566.

Such a factual showing is especially difficult when "conceivable" harm alleged is based only on alleged past wrongs.  The Supreme Court has repeatedly stated, "past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief…if

---

[2] Any allegations by Plaintiffs of future conduct should be dismissed by the Court under Federal Rule of Civil Procedure 8(c) which requires that a well pled Complaint have facial plausibility. That plausibility standard is not akin to a "probability requirement", but it also asks for more than a sheer possibility that a defendant has [or will] acted unlawfully.  *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78, 129 S.Ct. 1937, 173 L.Ed. 2d 868 (2009). See Section II.A below.

unaccompanied by continuing, present effects." *Lyons*, 461 U.S. at 102 (quoting *O'Shea v. Littleton*, 414 U.S. 488, 495-496 (1972).

Further, the Supreme Court has rejected theories of future injuries that are too speculative and has enforced the well-established requirement that such a future injury must be "certainly impending." *Whitmore v. Arkansas,* 495 U.S. 149, 159 (1990). The Supreme Court requires that "threatened injury must be *certainly impending* to constitute injury in fact" and that "allegations of *possible* factual injury" are not sufficient. See, *Clapper v. Amnesty International USA,* 133 S.Ct. 1138 (2013), *Whitmore*, *supra* at 158, *Lee v. Verizon Communications, Inc.* 2016 U.S. App. Lexis 16929 (5th Cir), *Planned Parenthood of Gulf Coast Inc. v. Gee,* 2016 U.S. App. Lexis 16844 (5th Cir). Finally, even if Plaintiffs could demonstrate that future injury is "certainly impending," which they cannot, they are still unable to establish that this injury is fairly traceable to the Defendant Stewart or any of his actions. Simply put, there is no causation for Plaintiffs' conjectured injury.

Thus, even accepting Plaintiffs' allegation of past exposure and illegal conduct as true, and the same are denied, Plaintiffs cannot show that there are continuing and present effects that show a certainly impending threatened future injury sufficient to satisfy constitutional standing requirements.  The Plaintiffs have failed to satisfy their burden of proof regarding standing in this case.[3]

---

[3] In addition to the constitutional requirement of standing, federal courts have also imposed three prudential limitations on their exercise of jurisdiction. These self-imposed restraints include: (i) the principle that federal courts should avoid deciding the generalized grievances that present abstract questions of wide public significance; (ii) the requirement that plaintiff's complaint be within the zone of interest protected by the statute or constitutional guarantee at issue; and (iii) the requirement that a plaintiff…assert his own legal rights and interests and not the rights of third parties. *Elk Grove Unified School District v. Newdow* 542 U.S. 1, 12 (2004) (discussing the nature and definition of prudential standing) cf. *Lexmark Intern v. Static Control* 134 S.Ct. 1377 (2014)

## B.    The Claims of Plaintiffs Are Moot[4]

"To qualify as a case fit for federal court adjudication, 'an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 137 L.Ed. 2d 170, 11 S.Ct. 1055, 1068 (1997). The Supreme Court has explained,

> voluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case, i.e., does not make the case moot" unless "(1) it can be said with assurance that there is no reasonable expectation ... that the alleged violation will recur, and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *County of Los Angeles v. Davis*, 440 U.S. 625, 631, 99 S.Ct. 1379, 1383, 59 L.Ed.2d 642 (1979) (citations and internal quotation marks omitted) (omission in original). Moreover, the "burden of demonstrating mootness is a heavy one." Id. (internal quotation marks omitted).

Where, however, a public official has asserted that an alleged practice is discontinued, courts look favorably on the same and the "heavy burden" is lightened.   See, eg. *Coalition of Airline Pilots Associations v. Federal Aviation Administration,* 370 F.3d 1184, (D.C. Cir. 2004), *Sossaman v. Lone Star State of Texas*, 560 F. 3d 316 (5th 2006) (courts are justified in treating a voluntary governmental cessation of possibly wrongful conduct with some solicitude, mooting cases that might have been allowed to proceed had the defendant not been a public entity).

---

(questioning the continued use of prudential standing). All of these weigh in favor of a prudential limit to this Court's exercise of jurisdiction.

[4] Defendant Stewart concedes that the doctrine of mootness does not apply to the claims of Plaintiffs who have asserted damage claims. 13C Charles A. Wright & Arthur R. Miller et al., Federal Practice and Procedure § 3533.3 (3d ed. 2013) ("Claims for damages or other monetary relief automatically avoid mootness, so long as the claim remains viable."). Nonetheless, Defendant Stewart contends that these damage Plaintiffs lack standing and/or that their claims are barred by the doctrines of res judicata and collateral estoppel such that they are not viable claims or, alternatively that this Court should abstain from entertaining the same.

Defendant Stewart has met his burden, and the Plaintiffs' claims seeking injunctive relief are mooted.

Defendant Stewart submits that he has clearly shown that there is no reasonable expectation that any alleged violations will occur and that interim relief have eradicated the same.  On November 22, 2015, Defendant Stewart was elected as the first African American District Attorney in Caddo Parish.  Defendant Stewart does not, and never has, condoned the use of peremptory challenges in a racially discriminatory manner, and, it is particularly telling that none of the allegations alleged in the Reprieve Australia study, or afterwards, arise after his election. Moreover, the Court can take judicial notice that of the 12 assistant prosecutors listed in the Reprieve Australia study, nine of them are no longer employed by District Attorney Stewart and of the three who remain employed, these three had the lowest percentage of strikes of black jurors and have been reassigned to non-litigation assignments. See, *Robertson v. Lofton*, Civil Action No. 5:15-CV-02678, (March 4, 2106, U.S. WDLA).[5]

Any burden Defendant Stewart bears that any of the alleged wrongful behavior with preemptory strikes could not be expected to recur has been met.

### C.    The Court Should Abstain

Defendant Stewart believes that even if this Court were otherwise inclined to maintain Plaintiffs' action, this Court should abstain from exercising jurisdiction over this action pursuant to *Younger v. Harris,* 401 U.S. 371 (1971). In determining whether *Younger* abstention is

---

[5] Under Fifth Circuit law, the Court may take judicial notice of court orders and public records. See *Funk v. Stryker Corp*., 631 F.3d 777, 783 (5th Cir. 2011). See listing of all currently employed Assistant District Attorneys as Exhibit "A" attached hereto and made a part hereof for the sole purpose of facilitating this Court. Under Fifth Circuit law, the Court may take judicial notice of court orders and public records. See *Funk v. Stryker Corp*., 631 F.3d 777, 783 (5th Cir. 2011).

warranted, courts apply a three factor test derived from *Middlesex County Ethics Commission v. Garden State Bar Association*, 457 U.S. 423, 432 (1982). The *Middlesex* factors are: "(1) the dispute must involve an 'ongoing state judicial proceeding, (2) an important state interest in the subject matter of the proceeding must be implicated, and (3) the state proceedings must afford an adequate opportunity to raise constitutional challenges." *Texas Ass'n of Business v. Earle*, 388 F.3d 515, 519 (5th Cir. 2004) (citing *Wightman v. Tex. Supreme Ct.*, 84 F.3d 188, 189 (5th Cir. 1996); see *Middlesex*, *supra* at 432.

### 1. Application of the *Middlesex* Factors

In this case all three of the *Middlesex* factors are satisfied, thus warranting *Younger* abstention. Only the first and third *Middlesex* factors are contested by Plaintiffs.

### (a) First *Middlesex* Factor: Ongoing State Judicial Proceeding

The first consideration under *Middlesex* is whether the dispute involves an "ongoing state judicial proceeding." *Earle*, 388 F.3d at 519. "State judicial proceedings" generally include criminal, civil, and "administrative proceedings that are 'judicial' in nature." *Id.* at 520. As stated in the original Memorandum in Support of the Motion to Dismiss, the relief requested in paragraph 125 C, D, E, F and G of the Third Amended Complaint would all affect pending, currently ongoing, and future criminal prosecutions. (R. 18, para. 125). To the extent that Plaintiffs seek an injunction that would affect Defendant Stewart's ability to prosecute criminal cases, this factor should weigh in favor of *Younger* abstention. See also, *Samuels v. Mackell*, 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed. 2d 688 (1971) (a federal court should not enjoin a state criminal prosecution begun prior to the institution of the federal suit except in very unusual situations).

This Court can take judicial notice of the fact that the case of *State of Louisiana v. Surcorey Odums,* #316181, First Judicial District Court, is currently on appeal at the Louisiana Court of Appeal for the Second Circuit.[6]  Additionally, it is simply disingenuous of the Plaintiffs to claim that they do not intend to disrupt ongoing judicial proceedings. The whole point of the lawsuit is to disrupt ongoing judicial proceedings. A cursory glance at the relief requested in the Complaint is telling. Plaintiffs pray for the "issuance of a permanent injunction forbidding the District Attorney of Caddo Parish (First Judicial District of Louisiana from exercising any peremptory challenges in criminal jury trials)." See. R. 18, para. C.  This "prospective" relief is exactly the type of relief that the Supreme Court rejected in *O'Shea, supra,* finding that the injunctive relief sought would constitute a major continuing intrusion of the equitable power of the federal courts into state criminal proceedings and would sharply conflict with the recognized principles of equitable restraint. As stated by the Supreme Court in *O'Shea,*

> what they seek is the an injunction aimed at controlling or preventing the occurrence of specific events that might take place in the court of future state criminal trials…..This seems to us nothing less than an ongoing federal audit of state criminal proceedings which would indirectly accomplish the kind of interference that *Younger v. Harris* and related cases sought to prevent. *O'Shea, supra* at 500.

The Fifth Circuit is in accord. In *Bice v La. Pub. Defender Bd.*, 677 F.3d 712, 716-18 (5th Cir. 2012), the Fifth Circuit explained that that indirect interference qualifies under *Younger* stating as follows:

> The interference with ongoing state proceedings need not be direct to invoke *Younger* abstention. The *Younger* doctrine prevents federal courts from exercising jurisdiction when the relief requested "would indirectly accomplish the kind of interference that *Younger v. Harris* and related cases sought to prevent." *O'Shea v.*

---

[6] *Id*. See also footnote 11.

*Littleton*, 414 U.S 488, 500, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974). Interference is established "whenever the requested relief would interfere with the state court's ability to conduct proceedings, regardless of whether the relief targets the conduct of a proceeding directly." *Joseph A. ex rel. Wolfe v. Ingram*, 275 F.3d 1253, 1272 (10th Cir. 2002).

This Court should conclude the same and abstain.

### (b)   Third Middlesex Factor: Adequate State Court Remedy

The third *Middlesex* factor requires that "the state proceedings . . . afford an adequate opportunity to raise constitutional challenges." *Earle*, 388 F.3d at 519. This factor clearly favors abstention, as there is a framework in place to protect against discriminatory uses of peremptory challenges under *Batson*. See *Miller-El v. Dretke*, 545 U.S. 231 (2005). That state court mechanism is subject to federal review under federal habeas review. *Corwin v. Johnson*, 150 F.3d 456, 471 (5th Cir. 1998); See e.g. *Aaron Wilson v. Burl Cain, Report and Recommendation of Magistrate Judge Kay*, Docket No. 5:12-0310 United States District Court Western District of Louisiana (R. 57, February 4, 2016).  The fact that the Plaintiffs' claims may be brought under different legal theories is of no relevance as they arise out of common nucleus of operative facts. See, e.g. *In re Air Crash at Dall./Ft. Worth Airport*, 861 F.2d 814, 816 (5th Cir. 1988)*;  Olmstead v. Amoco Oil Co,* 725 F.2d 627, 632 (11th Cir. 1984) (quoting *Lovely v. Laliberte,* 498 F.2d 1261 (1st Cir.) *cert. denied,* 419 U.S. 1038, 95 S.Ct. 526, 42 L.Ed.2d 316 (1974).

In light of a proper application of the *Middlesex* factors, the persuasive precedents discussed above, and all other considerations, the Court should grant Defendant's Motion to Dismiss based upon the *Younger a*bstention doctrine.

## II.     FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

### A.     Plaintiffs Have Failed to Adequately Plead Under FRCP 8(c)

Any allegations by Plaintiffs of future conduct should be dismissed by the Court under Federal Rule of Civil Procedure 8(c) which requires that a well pled Complaint have facial plausibility. That plausibility standard is not akin to a "probability requirement", but it also asks for more than a sheer possibility that a defendant has [or will] acted unlawfully. *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78, 129 S.Ct. 1937, 173 L.Ed. 2d 868 (2009). Plaintiffs have utterly failed to make such a showing.

### B.     Plaintiffs' Claims Should be Dismissed Under the Doctrine of Res Judicata and Collateral Estoppel[7]

Plaintiffs complain that this defense is not raised as an affirmative defense. However, the Fifth Circuit has been quite clear that the affirmative defense of res judicata may properly be raised on a motion to dismiss. *Terrell v. DeConna*, 877 F.2d 1267, 1270 (5th Cir. 1989).  Both doctrines of res judicata and collateral estoppel are governed by federal common law. *In re Air, supra,* 861 F.2d at 816; *Hart v. Yamaha- Parts Distributors, Inc*., 787 F.2d 1468, 1470 (11th Cir. 1986). If the Plaintiffs are found to have standing and this Court chooses to decline Defendant Stewart's request for abstention, then claims by the Plaintiffs claiming damages should still be dismissed under the doctrine of res judicata and collateral estoppel.

As discussed in *In re Air Crash at Dall/Ft Worth Airport,* res judicata under federal common law applies when the following elements are satisfied: 1) a final judgment on the merits; 2) rendered by a court of competent jurisdiction; 3) the parties, or those in privity with them, must

---

[7] This Section applies only to the Plaintiffs Daryl Carter, Diane Johnson, Kimberly Horton, and Theresa Hawthorne, who seek damages in this case.

be identical in both suits; and 4) the same cause of action must be involved in both cases. *In re Air Crash, supra,* 861 F.2d 814, 816.  Moreover, res judicata extends to "matters that should have been raised in the earlier suit" as well as those that were. *In re Air, supra* at 861. According to *Hart*:

> "Privity" describes a relationship between one who is a party of record and a nonparty that is sufficiently close so a judgment for or against the party should bind or protect the nonparty. This relationship . . . may be one of several types: where the nonparty has succeeded to the party 's interest in property, . . . where the nonparty 's interest were represented adequately by the party in the original suit, and where the party and nonparty have concurrent interests in the same property right.

*Hart, supra,* 787 F.2d. at 1472 (citations omitted).

> "Privies" are also defined in 28 AM. JUR. 2D Estoppel and Waiver § 119 as:

> [P]ersons connected together, or having a mutual interest in the same action or thing. …One person becomes "privy" of another, for the purposes of the law of estoppel, by succeeding to the position of the other as regards the subject of the estoppel or by holding in subordination to the other. "Privity " means a mutual successive relationship to the same rights of property and is generally defined as a relationship in which a person is so identified in interest with another that he or she is said to represent the same legal right . . ..

Collateral estoppel is even broader than res judicata because its application is not limited to the parties or their privies. *Hart*, *supra* 787 F.2d at 1473. Collateral estoppel, also known as issue preclusion, prevents the re-litigation of matters previously litigated and decided, and provides that "once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." *Id*. (quoting *Allen v. Mccurry*, 449 U.S. 90, 94, 101 S. Ct. 411, 414, 66 L.Ed. 2d 308 (1980)). For collateral estoppel to apply, the following elements must be satisfied: 1) the issue at stake must be identical to the one alleged in the prior litigation; 2) the issue must have been actually litigated in the prior litigation; and 3) determination of the issue in the prior litigation must have been a

critical and necessary part of the judgment in that earlier action. In addition, the party against whom the earlier decision is asserted must have had a full and fair opportunity to litigate the issue in the earlier proceeding. *Hart*, 787 F. 2d 1473.

The Plaintiffs' claims for damages are barred by res judicata or collateral estoppel, or both, because the defendants in the criminal litigation in which the Plaintiffs were struck by peremptory challenge possessed the Plaintiffs' rights to contest any alleged *Batson* violation.[8]

As made explicitly clear in the Supreme Court's opinions, a litigant has third-party standing to raise a *Batson* challenge on behalf of the juror that is peremptorily struck. As discussed by the Supreme Court in *Edmonson v. Leesville Concrete Co., Inc.*, 500 U.S. 614, 629, 111 S. Ct. 2077, 2087-88, 114 L. Ed. 2d 660:

> "In the ordinary course, a litigant must assert his or her own legal rights and interests, and cannot rest a claim to relief on the legal rights or interests of third parties." We also noted, however, that this fundamental restriction on judicial authority admits of "certain, limited exceptions," ibid., and that "a litigant may raise a claim on behalf of a third party if the litigant can demonstrate that he or she has suffered a concrete, redressable injury, that he or she has a close relation with the third party, and that there exists some hindrance to the third party's ability to protect his or her own interests". All three of these requirements for third-party standing

---

[8] *Powers v. Ohio*, 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed. 2d 411 (1991) provides as follows:

> [T]he excluded juror and the criminal defendant have a common interest in eliminating racial discrimination from the courtroom. . . . This congruence of interests makes it necessary and appropriate for the defendant to raise the rights of the juror. And, there can be no doubt that petitioner will be a motivated, effective advocate for the excluded venire persons' rights. . . . Thus, "'there seems little loss in terms of effective advocacy from allowing [the assertion of this claim] by ' the present jus tertii champion."

499 U.S. at 414, 111 S. Ct. at 1372 (citations omitted) (emphasis added).

The words "jus tertii" are literally defined as "the right of a third party." Black's Law Dictionary 864 (6th ed. 1991).

were held satisfied in the criminal context, and they are satisfied in the civil context as well.

Our conclusion in *Powers* that persons excluded from jury service will be unable to protect their own rights applies with equal force in a civil trial.  While individual jurors subjected to peremptory racial exclusion have the right to bring suit on their own behalf, "[t]he barriers to a suit by an excluded juror are daunting."  We have no reason to believe these barriers would be any less imposing simply because a person was excluded from jury service in a civil proceeding.  Likewise, we find the relation between the excluded venire person and the litigant challenging the exclusion to be just as close in the civil context as in a criminal trial. Whether in a civil or criminal proceeding, "[v]oir dire permits a party to establish a relation, if not a bond of trust, with the jurors," a relation that "continues throughout the entire trial." Exclusion of a juror on the basis of race severs that relation in an invidious way.

*Id.*

In *Powers* the Supreme Court held that the equal protection clause and the principles of third party standing, allow any criminal defendant to object to race based exclusions of jurors through [peremptory] challenges whether or not the defendant and the excluded jurors share the same race. Relying on the fact that any racial discrimination "offends the dignity of the persons and the integrity of the courts," the Supreme Court found that Powers had standing to raise the *Batson* issue on behalf of the excluded juror.

The Fifth Circuit Court of Appeals likewise recognizes that a *Batson* challenge is made by and through third-party standing. As discussed in *Peterson v. Cain*, 302 F.3d 508, 512-13 (5th Cir. 2002):

A venire person excluded on the basis of race suffers personal humiliation before the public and may lose confidence in the court and its verdicts, as may the defendant if his or her objections cannot be heard. Thus, the Court ruled, "this congruence of interests makes it necessary and appropriate for the defendant to raise the rights of the juror." Id. at 414 (emphasis added). Further, the defendant has much at stake in challenging the constitution of the jury on equal protection grounds - his or her conviction might be overturned. See *Id.* (citing, inter alia, *Rose v. Mitchell*, 443 U.S. at 551).

As to the third factor, the Court held that the third-party, excluded juror was hindered by a considerable practical barrier in bringing suit because of the "small financial stake involved and the economic burdens of litigation." *Powers*, 499 U.S. at 415 (citing, inter alia, Rose v. Mitchell, 443 U.S. at 558).

Accordingly, a litigant who raises a *Batson* challenge is in absolute privity with the juror who is subject of the peremptory strike. That is, the litigant has succeeded to or has concurrent interests with the targeted juror in preventing an illegal use of a peremptory strike. Simply put, where a party raises a *Batson* claim and the court rejects it, the juror is precluded from bringing a suit under 42 U.S.C 1983 as the "identity of interests" between the party at trial and the excluded juror are such that they are in "in privity." See, *Shaw v. Hahn*, 56 F.3d 1128, 1131-32 (9th Cir. 1995).

In Plaintiffs' Memorandum, Plaintiffs contend that the claims of jurors and the criminal defendant, with whom they are in privity, are different as the jurors in this case are asserting equal protection claims under Section 1983 which is governed by a different burden of proof. As such, Plaintiffs claim that their cause of action differs from the cause of action asserted by the defendant in a criminal case for which they were struck from the jury. The Fifth Circuit has long recognized that a legal theory or claim is part of the same cause of action as a prior claim if it arises from "the same operative nucleus of fact" *In re Air Crash, supra* at 816; *Olmstead v. Amoco Oil Co,* 725 F.2d 627, 632 (11th Cir. 1984) (quoting *Lovely v. Laliberte,* 498 F.2d 1261 (1st Cir.) *cert. denied,* 419 U.S. 1038, 95 S.Ct. 526, 42 L.Ed.2d 316 (1974).   In this case, there is obviously a common nucleus of operative fact.

A review of the criminal cases where each Plaintiff juror claiming damages was called is necessary.

Plaintiffs Darryl Carter and Diane Johnson were called for jury duty on April 20, 2015, and were considered in the jury pool in the case of *State of Louisiana v. Surcorey Odums,* #316181 First Judicial District Court, Caddo Parish, Louisiana. The minutes of the trial reflect that the judge presiding was an African American, Honorable Judge John Mosley, Jr. The minutes further reflect that the State used six (6) peremptory exceptions and the defense used ten (10) peremptory exceptions and two (2) jurors were excused for cause.  Even more interesting, the records of the court indicated that a *Batson* challenge was in fact made by Mr. Odums' defense counsel and was rejected by Judge Mosely. [9] The jury returned a unanimous verdict against Ms. Odums. No appeal was filed on the denial of the *Batson* challenge.[10] Accepting the Plaintiffs' allegations as true, then the rights of Darryl Carter and Diane Johnson were fully exercised and vindicated by, to quote from the Supreme Court in *Powers*, their "jus tertii champion." Further, it cannot be disputed that the predecessor of Defendant Stewart's office would have participated in and been the agents of Caddo Parish in these proceedings. Therefore, Plaintiffs' claims are now barred by res judicata or collateral estoppel, or both.

The claims by Plaintiffs Kimberly Horton and Theresa Hawthorne are likewise barred by res judicata or collateral estoppel. Both Plaintiffs were called for jury duty on June 15, 2015.  The

---

[9] See minutes of the trial of State of Louisiana v. Surcorey Odums attached hereto and made a part hereof as Exhibit "B" said minutes being attached only to facilitate this Court's taking of judicial notice of the same. Under Fifth Circuit law, the Court may take judicial notice of court orders and public records. See *Funk v. Stryker Corp*., 631 F.3d 777, 783 (5th Cir. 2011).

[10] See Docket No. 50, 969-KA, Second Circuit Court of Appeal of the State of Louisiana, Original Brief on Behalf of Defendant-Appellant Surcorey D. Odums, filed June 6, 2016, said Brief being attached as Exhibit "C" only to facilitate this Court's taking judicial notice of the same. Under Fifth Circuit law, the Court may take judicial notice of court orders and public records. See *Funk v. Stryker Corp*., 631 F.3d 777, 783 (5th Cir. 2011).

criminal case tried that week was *State v. Tommorea Shamichael Carter*, Docket #316082, First Judicial District Court, Caddo Parish, Louisiana. The State used three (3) peremptory exceptions and the defense used three (3) peremptory exceptions and one (1) juror was excused for cause. The case was tried and the defendant was found "not guilty." The records do not reflect that a *Batson* challenge was ever made.[11] Accordingly, any challenge is now waived. See *United States v. Moore*, 303 F. App'x. 767 (11th Cir. 2008) (recognizing that a Batson claim may be waived where no objection was made before the trial court); see also *Gibbs v. Bolden*, 65 F. App'x. 519 (6th Cir. 2003) (holding *Batson* challenge could not be considered for the first time on appeal in an inmate's civil rights case). Ms. Tommorea Shamichael Carter had the right, on behalf of Plaintiffs Horton and Hawthorne, to raise an asserted violation of their rights under *Batson*, and Defendant Stewart's predecessor in office would have participated in and been the agents of the State of Louisiana in this criminal case. The reasonable inference can be drawn that the court in this case, and indeed in all of the cases in which the named Plaintiffs were allegedly struck, had proper jurisdiction and the authority to adjudicate a *Batson* violation. As a matter of law, the Plaintiffs have the same interest in challenging a *Batson* violation as the criminal defendants in the cases referenced in the Complaint.

Therefore, whether the *Batson* violations were adjudicated or waived, all of the Plaintiffs now claiming damages are barred by res judicata or collateral estoppel, or both.

---

[11] See minutes of the trial of the *State of Louisiana v. Tommorea Shamichael Carter*, Docket No. 316082, First Judicial District Court, Caddo Parish, Louisiana. Said Minutes being attached as Exhibit "D" only to facilitate this Court's taking judicial notice of the same. Under Fifth Circuit law, the Court may take judicial notice of court orders and public records. See *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011).

## CONCLUSION

For all of the foregoing reasons, Defendant James E. Stewart, Sr. files this reply to the Plaintiffs' Memorandum and moves this Court for dismissal of the Plaintiffs' claims.

Respectfully submitted by:

| | |
|---|---|
| */s/ Allison A. Jones* | */s/ Tommy Johnson* |
| Allison A. Jones, T.A. | Tommy Johnson |
| DOWNER, JONES, MARINO & WILHITE | CADDO PARISH DISTRICT |
| 401 Market Street, Suite 1250 | ATTORNEY'S OFFICE |
| Shreveport, Louisiana 71101 | 525 Marshall St. Fourth Floor |
| Tel: 318-213-4444 | Shreveport, LA 71101 |
| Fax: 318-213-4445 | Phone: (318) 429-7618, ext. 2 |
| Email: ajones@dhw-law.com | Fax: (318) 629-4300 |
| | Email: TJohnson@caddoda.com |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document will be filed electronically via the Court's CM/ECF system, which will automatically provide notice to all parties, this 13th day of October, 2016.

_____*/s/ Allison A. Jones*_____