UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

RENEÉ PIPKINS, EVERITT PIPKINS,
THERON JACKSON, LA WHITNEY
JOHNSON, ADRIANA THOMAS,
REGIINALD AUTREY AND ALL
OTHERS SIMILARLY SITUATED

v.

JAMES E. STEWART, SR., IN HIS
OFFICIAL CAPACITY AS DISTRICT
ATTORNEY OF CADDO PARISH
(FIRST JUDICIAL DISTRICT OF
LOUISIANA)

STATE OF LOUISIANA ex rel. JEFF
LANDRY, LOUISIANA ATTORNEY
GENERAL, Intervenor.

CIVIL ACTION NO. 5:15-CV-02722

JUDGE: DEE D DRELL

MAGISTRATE JUDGE: MARK L HORNSBY

# PLAINTIFFS' RESPONSE IN OPPOSITION TO
# LOUISIANA ATTORNEY GENERAL'S MOTION TO DISMISS

James W. Craig, Bar No. 33687
Emily M. Washington, Bar No. 34143

Roderick & Solange MacArthur Justice Center
4400 S. Carrollton Ave.
New Orleans, LA 70119
(504) 620-2259 (p)
(504) 208-3133 (f)
jim.craig@macarthurjustice.org
emily.washington@macarthurjustice.org

*Attorneys for Plaintiffs*

1

# TABLE OF CONTENTS

Table of Contents ............................................................................................................. 2

Table of Authorities ......................................................................................................... 3

Introduction ...................................................................................................................... 5

Law and Argument ........................................................................................................... 6

   I.   The Third Amended Complaint Plausibly Alleges Facts Sufficient to Plead a Cognizable Challenge to the Constitutionality of Article 795. .................................................... 6

      A.   The Constitutional Infirmity of Article 795. .............................................. 6

         1.   Article 795 (C) and (E) permit discrimination where the peremptory challenges are motivated by both racial and non-racial reasons .............................................. 6

         2.   Article 795(D) allows the prosecution and defense to agree to racial discrimination in the exercise of peremptory challenges. ...................................................... 10

         3.   Plaintiffs have pled plausible, specific facts to support their attack on the constitutionality of Article 795. ...................................................................... 11

   II.   Plaintiffs Have Standing to Challenge the Constitutionality of Art. 795 on Equal Protection Grounds. .............................................................................................. 17

      A.   The standing of citizens to challenge the constitutionality of jury selection statutes and procedures is established by Supreme Court and Fifth Circuit precedent. .................... 17

      B.   The Robertson and Taylor opinions are inapposite as they involve claims advanced by a different category of plaintiffs in a significantly different procedural posture. ........... 20

   III.   The Principles Of *Younger v. Harris* Forbid Abstention. .............................................. 22

      A.   First Middlesex Condition: this civil action does not interfere with a pending criminal prosecution. ........................................................................................................ 23

         1.   The relief sought in the Third Amended Complaint does not interrupt or interfere with any current state criminal proceedings. ................................................ 23

         2.   The relief sought in this case is far less than the detailed injunctive relief, including an intrusive audit and appointment of a monitor, in cases such as O'Shea v. Littleton and Hall v. Valeska. ................................................................................................... 23

      B.   Third Middlesex Condition: there is no procedure in Louisiana state criminal prosecutions for prospective jurors to object to peremptory challenges exercised against them. 26

Conclusion ...................................................................................................................... 28

Certificate of Service ...................................................................................................... 29

# TABLE OF AUTHORITIES

## Cases

*Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970)........................................................ 14

*Baran v. Port of Beaumont Navigation District of Jefferson County*, 57 F.3d 436 (5th Cir. 1995 .............................................................................................................................. 23

*Batson v. Kentucky*, 476 U.S. 79 (1986)............................................................... 5, 11

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).................................................. 10

*Benson and Ford, Inc. v. Wanda Petroleum Co.*, 833 F.2d 1172 (5th Cir. 1987)......... 28

*Bice v. Louisiana Public Defender Board*, 677 F.3d 712 (5th Cir. 2012) ..................... 24

*Blackburn v. Marshall*, 42 F.3d 925 (5th Cir.1995) ....................................................... 16

*Brammer Engineering, Inc. v. Meridian Resources USA, Inc.*, 2007 WL 3009148 (W.D. La. 2007) ......................................................................................................................... 15, 16

*Cain v. City of New Orleans*, ___ F. Supp.2d ____, 2016 WL 1598606 (E.D. La. 2016) ........... 23

*Campbell v. Wells Fargo Bank*, 781 F.2d 440 (5th Cir. 1986)...................................... 16

*Carter v. Jury Commission*, 396 U.S. 320 (1970) ................................................... 18, 26

*City of Los Angeles v. Lyons*, 461 U.S. 95 (1993)......................................................... 21

*Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496 (5th Cir. 2000)........................ 15

*Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976)........ 23

*Cook v. LaMarque*, 593 F.3d 810 (9th Cir. 2010) ........................................................... 9

*County of Riverside v. McLaughlin*, 500 U.S. 44 (1991)............................................... 26

*Deakins v. Monaghan*, 484 U.S. 193 (1988)................................................................. 23

*Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003)............................................................ 9

*ew Orleans Public Service, Inc. v. Council of City of New Orleans*, 491 U.S. 35 (1989)........... 22

*Freeman v. Lester Coggins Trucking, Inc.*, 771 F.2d 860 (5th Cir. 1985) ................... 28

*Gattis v. Snyder*, 278 F.3d 222 (3d Cir. 2002) ............................................................... 9

*Georgia v. McCollum*, 505 U.S. 42 (1992).................................................................... 11

*Gerstein v. Pugh*, 420 U.S. 103 (1974)................................................................... 26, 28

*Gerstein v. Pugh*, 420 U.S. 103 (1975).......................................................................... 28

*Habich v. City of Dearborn*, 331 F.3d 524 (6th Cir. 2003) .......................................... 28

*Hall v. Valeska*, 849 F.Supp.2d 1332 (M.D. Ala. 2012), *aff'd*, 509 F.App'x 834 (11th Cir. 2012) ......................................................................................................................... 24, 27

*Heck v. Humphrey*, 512 U.S. 477 (1994)....................................................................... 21

*Howard v. Senkowski*, 986 F.2d 24 (2d Cir.1993) .......................................................... 9

*Hunter v. Underwood*, 471 U.S. 222 (1985)............................................................... 8, 9

*Jones v. Plaster*, 57 F.3d 417 (4th Cir.1995) ................................................................. 9

*Kaiser Aluminum & Chem. Sales v. Avondale Shipyards*, 677 F.2d 1045 (5th Cir.1982)........... 16

*Leger v. Offshore Staffing Services of Acadiana, LLC*, 2013 WL 504922 (W.D. La. 2013) ....... 16

*McCormick v. State*, 803 N.E. 2d 1108 (Ind. 2004)........................................................ 9

*Middlesex County Ethics Committee v. Garden State Bar Ass'n*, 457 U.S. 42 (1982)............... 22

*Mitchell v. Union Tank Car LLC*, 2011 WL 4499317 (W.D. La. 2011) ....................... 17

*Monell v. Dep't of Soc. Services of City of New York*, 436 U.S. 65 (1978)................... 14

*Payton v. Kearse*, 495 S.E.2d 205 (S.C. 1998).............................................................. 9

3

*Pollard v. Cockrell*, 578 F.2d 1002 (5th Cir. 1978)...................................................................28

*Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989) ....................................................................9

*Pugh v. Rainwater*, 483 F. 2d 778 (5th Cir. 1973)............................................................. 26, 28

*Rector v. State*, 444 S.E.2d 862 (Ga. 1994) ...............................................................................9

*Robertson v. Loftin*, 2016 WL 3919718 (W.D. La. 2016) ............................................ 12, 17, 21

*Robertson v. Loftin*, No. 5:15-cv-2688 (W.D. La.)....................................................................20

*Shaw v. Hahn*, 56 F.3d 1128 (9th Cir. 1995) ..............................................................................7

*Snyder v. Louisiana*, 552 U.S. 472 (2008)...................................................................................7

*Society of Separationists, Inc. v. Herman*, 959 F.2d 128 (5th Cir. 1992)..................................17

*Sossamon v. Lone Star State of Texas*, 560 F.3d 316 (5th Cir. 2009)..........................................16

*Sprint Communications, Inc. v. Jacobs et al*, 134 S. Ct. 584 (2013) ..........................................22

*State of Louisiana v. Roy Leon Robertson*, No. 335740, Louisiana First Judicial District Court (Minute Entry of 10/17/16)................................................................................................20

*State v. Crawford*, 2014-2153 (La. 11/16/16) at 35, ___ So. 3d ____, 2016 WL 6780518 ..........5

*State v. Knox*, 91-1906 (La. 11/30/92), 609 So. 2d 803..............................................................11

*State v. Lucas*, 18 P.3d 160 (Ariz. Ct. App. 2001).....................................................................9

*State v. McCoy*, 2014-1449 (La. 10/19/16), ____ So. 3d. ____, 2016 WL 6506004 ..................10

*State v. Stewart*, 93-9708 (La. Ct. App. 1st Cir. 4/23/03), 633 So. 2d 925 .................................10

*State v. Tucker*, 2013-1631 (La. 9/1/15), 181 So. 3d 590 ...........................................................11

*State v. Tyler*, 97-0338 (La. 9/9/98), 723 So. 2d 939..................................................................11

*Tarter v. Hury*, 646 F.2d 1010 (5th Cir. 1981) ................................................................... 26, 27

*Taylor v. Loftin*, 2016 WL 5819836 (W.D. La. 2016)........................................................ 12, 17

*Texas Ass'n of Business v. Earle*, 388 F.3d 515 (5th Cir. 2004) ................................................23

*Turner v. Fouche*, 396 U.S. 346 (1970) ....................................................................................19

*United States v. Darden*, 70 F.3d 1507 (8th Cir.1995)................................................................10

*Wallace v. Morrison*, 87 F.3d 1271 (11th Cir. 1996) ................................................................10

*Williams v. Louisiana*, 136 S.Ct. 2156 (2016)............................................................................5

*Winslow v. W.L. Gore & Associates, Inc*., 2011 WL 873562 (W.D. La. 2011) ..........................10

*Wisconsin v. King*, 572 N.W.2d 530 (Wis.Ct.App.1997) ............................................................9

*Younger v. Harris*, 401 U.S. 371 (1971)....................................................................................22

**Statutes**

La. C. Cr. P. Art.  795 (C), (D) and (E) ...............................................................................passim

# INTRODUCTION

Less than two weeks ago, speaking to the statutory scheme governing the exercise of peremptory challenges in criminal cases, the Louisiana Supreme Court made clear that "the procedure outlined in La. C. Cr. P. art. 795 (C) must yield to the demands of the Equal Protection Clause of the Constitution (as recognized in the evolving *Batson* jurisprudence)."[1] Invoking similar logic, Plaintiffs Reneé Pipkins et al., African-American residents, citizens, and registered voters of Caddo Parish, allege in their Third Amended Complaint that the statutory criteria for the evaluation of *Batson* objections found in La. C. Cr. P. art. 795 (C), (D), and (E) are less rigorous than the standards demanded by the Equal Protection Clause of the Fourteenth Amendment.[2]

The Attorney General intervened in this civil action for the limited purpose of defending the constitutionality of the state laws challenged by Plaintiffs.[3] The Attorney General then filed a Supplemental Memorandum in Support of the District Attorney's Motion to Dismiss. Doc. 49.

The Attorney General's pleadings betray a lack of understanding of the Plaintiffs' attack on Article 795. Thus, in order to respond, Plaintiffs first discuss the constitutional flaws in that Code provision, demonstrating that the Third Amended Complaint alleges sufficient facts to state a cognizable attack on the constitutionality of Article 795 (C), (D) and (E). Next, Plaintiffs explain their standing under long-standing precedent to challenge the statute. Finally, Plaintiffs show that

---

[1] *State v. Crawford*, 2014-2153 (La. 11/16/16) at 35, ___ So. 3d ____, 2016 WL 6780518 at *17 (reversing first degree murder conviction from Caddo Parish), *citing Batson v. Kentucky*, 476 U.S. 79 (1986). *See also Williams v. Louisiana*, 136 S.Ct. 2156 (2016) (granting certiorari, reversing the judgment of conviction, and remanding the case to the Louisiana Supreme Court to review challenge to art. 795 (C)). Plaintiffs challenge a different clause of art. 795 (C) than that reviewed in *Crawford* and *Williams*. These decisions, however, underscore the infirmity of the Louisiana statutory language when compared against the "evolving *Batson* jurisprudence" referred to by the Louisiana Supreme Court.
[2] Doc. 18, Third Amended Complaint at ¶¶ 4-7, 22-23, 74-79, 113-120, and 125 (G).
[3] Doc. 44, Attorney General's Motion to Intervene, at ¶¶ 3-4. The motion was granted without response from the Plaintiffs. Doc. 47.

there are no grounds which would justify this Court abstaining from the exercise of its jurisdiction. For these reasons, the Attorney General's motion should be denied.

# LAW AND ARGUMENT

## I. THE THIRD AMENDED COMPLAINT PLAUSIBLY ALLEGES FACTS SUFFICIENT TO PLEAD A COGNIZABLE CHALLENGE TO THE CONSTITUTIONALITY OF ARTICLE 795.

### A. The Constitutional Infirmity of Article 795.

The Third Amended Complaint targets two constitutional flaws in the Code provision: First, Article 795 (C) and (E) limit the power of state district judges to remedying peremptory challenges "based **solely** on race." Thus, even where a prosecutor is primarily motivated by race to strike an African-American from a Louisiana petit venire, the presence of a secondary reason that is "race neutral" insulates the strike from a *Batson* challenge. Second, Article 795 (D) permits the prosecutor and the defense attorney to join together to exercise a peremptory challenge against an African-American venire-member based on racial grounds. Both of these flaws are directly contrary to decisions of the Supreme Court, the lower Federal courts, and the appellate courts of other states which have addressed how the Equal Protection Clause is to be enforced during jury selection.[4]

### 1. Article 795 (C) and (E) permit discrimination where the peremptory challenges are motivated by both racial and non-racial reasons.

The first of these problems arises where a peremptory challenge is exercised for more than one reason: both that the prospective juror is African-American, and some other reason that is not a function of the juror's race. In this situation, under La. C. Cr. P. art. 795 (C) and (E), the district

---

[4] As will be discussed in the next section, Plaintiffs have standing to challenge both of these flaws.

judge has no authority to disallow the strike. Article 795 (C) provides, in pertinent part (emphasis added):

> No peremptory challenge made by the state or the defendant shall be based **solely** upon the race or gender of the juror. If an objection is made that the state or defense has excluded a juror **solely** on the basis of race or gender, and a prima facie case supporting that objection is made by the objecting party, the court may demand a satisfactory race or gender neutral reason for the exercise of the challenge, unless the court is satisfied that such reason is apparent from the *voir dire* examination of the juror.

Article 795 (E) complements this, by restricting the district judge's power to remedy race discrimination to those strikes that are totally devoid of race-neutral grounds: "Those jurors who have been peremptorily challenged and for whom **no** satisfactory racially neutral or gender neutral reason is apparent or given may be ordered returned to the panel, or the court may take such other corrective action as it deems appropriate under the circumstances" (emphasis added).

Thus, where an Assistant District Attorney provides **any** credible "race-neutral" reason when challenged, Louisiana law requires the juror be dismissed, even if, despite the presence of this "race-neutral" factor, the substantial or motivating reason for the peremptory challenge was based on race.

The Code's prohibition of judicial interference with peremptory challenges motivated in part (but not solely) by race cannot be squared with Federal precedent. In *Snyder v. Louisiana*, 552 U.S. 472 (2008), the Court focused on a single peremptory challenge exercised against an African-American male. In response to defense counsel's *Batson* objection, the prosecutor gave two purportedly race-neutral reasons for the strike: that the juror looked nervous during voir dire, and that he had expressed concern about the length of the trial in light of the requirements to complete his student-teaching semester and graduate from SUNO.[5] The district judge denied the *Batson*

---

[5] *Snyder*, 552 U.S. at 478.

objection without articulating which (or both) of these reasons it found to negate a finding of purposeful discrimination.[6]

On certiorari review, the Supreme Court held that it could not presume the trial judge credited the "nervousness" rationale for the peremptory challenge because "[i]t is possible that the judge did not have any impression one way or the other concerning Mr. Brooks' demeanor. Mr. Brooks was not challenged until the day after he was questioned, and by that time dozens of other jurors had been questioned. Thus, the trial judge may not have recalled Mr. Brooks' demeanor. Or, the trial judge may have found it unnecessary to consider Mr. Brooks' demeanor, instead basing his ruling completely on the second proffered justification for the strike."[7] Then, supported by an extensive reading of the voir dire record,[8] the Court concluded that the "second reason proffered for the strike of Mr. Brooks—his student-teaching obligation—fails even under the highly deferential standard of review that is applicable here."[9]

At that point in its analysis, the Supreme Court could have remanded the case for consideration of the first rationale (the juror's "nervousness"). But it did not, because this second purported reason was so clearly insubstantial that it could not be sufficient to preclude a finding that the prosecutor's primary motivation for striking Mr. Brooks was his African-American race. The Court's discussion of this point is critical for Plaintiffs' attack on Article 795 in this case:

> In other circumstances, we have held that, once it is shown that a discriminatory intent was a substantial or motivating factor in an action taken by a state actor, the burden shifts to the party defending the action to show that this factor was not determinative. *See Hunter v. Underwood*, 471 U.S. 222, 228 (1985). We have not previously applied this rule in a *Batson* case, and we need not decide here whether that standard governs in this context. For present purposes, it is enough to recognize that **a peremptory strike shown to have**

---

[6] *Id*. at 479.
[7] *Id*.
[8] *See id*. at 479-84.
[9] *Id*. at 479.

**been motivated in substantial part by discriminatory intent could not be sustained** based on any lesser showing by the prosecution.[10]

The question referred to in *Snyder* is whether proof of race as a motivating factor in the exercise of a peremptory challenge "taints" the strike and requires that a *Batson* objection be granted,[11] or whether the proponent of the strike is allowed (using the "dual motivation" or "mixed motive" doctrine exemplified by *Hunter v. Underwood*),[12] to show that even if he had not taken the race of the venire-member into account, he would have struck that prospective juror for other (race-neutral) reasons.[13]

---

[10] *Id*. at 485 (emphasis added).

[11] *Cook v. LaMarque*, 593 F.3d 810, 814-17 (9th Cir. 2010) (citing *Snyder*) ("we reject the district court's mixed-motives analysis, and limit our inquiry to whether the prosecutor was "motivated in substantial part by discriminatory intent"); *State v. Lucas*, 18 P.3d 160, 163 (Ariz. Ct. App. 2001) ("Regardless of how many other nondiscriminatory factors are considered, any consideration of a discriminatory factor directly conflicts with the purpose of Batson and taints the entire jury selection process" requiring reversal); *Rector v. State*, 444 S.E.2d 862, 865 (Ga. 1994); *Robertson v. United States*, 878 A.2d 1273, 1284 (D.C. App. 2005) ("To prove a *Batson* violation, a defendant need not show that a prosecutor's strikes were motivated solely by racial or gender bias, to the exclusion of all other considerations. Such a requirement would render Batson a virtual nullity and divorce it from the real world of jury selection, for the motivations behind peremptory strikes are seldom so crystallized and singular. Mixed motives are the norm. However, even if the prosecutor acted from mixed motives, some of which were non-discriminatory, his actions deny equal protection and violate Batson if race or gender influenced his decision"); *McCormick v. State*, 803 N.E.2d 1108, 1112 (Ind. 2004); *Payton v. Kearse*, 495 S.E.2d 205, 210 (S.C. 1998) ("Once a discriminatory reason has been uncovered - either inherent or pretextual - this reason taints the entire jury selection procedure. By adopting dual motivation, this Court would be approving a party's consideration of discriminatory factors so long as sufficient nondiscriminatory factors were also part of the decision to strike a juror and the discriminatory factor was not the substantial or motivating factor. However, any consideration of discriminatory factors in this decision is in direct contravention of the purpose of Batson which is to ensure peremptory strikes are executed in a nondiscriminatory manner"); *Wisconsin v. King*, 572 N.W.2d 530, 535 (Wis.Ct.App.1997) ("[W]here the challenged party admits reliance on a prohibited discriminatory characteristic, we do not see how a response that other factors were also used is sufficient rebuttal under the second prong of *Batson*.").

[12] Reviewing an Alabama statute under the Equal Protection Clause, the *Hunter* Court stated, "[o]nce racial discrimination is shown to have been a 'substantial' or 'motivating' factor behind enactment of the law, the burden shifts to the law's defenders to demonstrate that the law would have been enacted without this factor." *Hunter v. Underwood*, 471 U.S. 222, 228 (1985). Prior to a statutory amendment, Title VII precedent also allowed the use of the "dual motivation" or "mixed motive" theory as a defense to a charge of employment discrimination: "To say that an employer may not take gender into account is not, however, the end of the matter . . . an employer shall not be liable if it can prove that, even if it had not taken gender into account, it would have come to the same decision regarding a particular person." *Price Waterhouse v. Hopkins*, 490 U.S. 228, 242 (1989), *partial abrogation by statute recognized in Desert Palace, Inc. v. Costa*, 539 U.S. 90, 93 (2003).

[13] *Howard v. Senkowski*, 986 F.2d 24, 30 (2d Cir.1993) ("once the prosecutor's partially improper motivation had been established, Howard was entitled to prevail unless, under dual motivation analysis, the prosecutor could sustain his burden of showing that he would have exercised his challenges solely for race-neutral reasons"); *Gattis v. Snyder*, 278 F.3d 222, 234-35 (3d Cir. 2002); *Jones v. Plaster*, 57 F.3d 417, 421 (4th Cir. 1995) ("If the court concludes, or the party admits, that the strike has been exercised in part for a discriminatory purpose, the court must consider whether

9

But under even the "dual motivation" doctrine, a state rule which permits a peremptory challenge to be exercised unless race was the **sole** motivation of the strike – and thereby refusing to determine if race was the "substantial or motivating factor" in a "mixed motives" case – would be unconstitutional. That is exactly the case with respect to La. C. Cr. P. art. 795 (C) and (E). Those Code provisions, which insulate a racially-motivated peremptory challenge against *Batson* objections where there is any additional "race-neutral" reason credited by the trial judge as genuine, are contrary to the "evolving *Batson* jurisprudence" and must be invalidated as contrary to the Fourteenth Amendment.

Thus, the allegations of the Third Amended Complaint that are directed to the unconstitutionality of La. C. Cr. P. art. 795 (C) and (E)[14] state a claim on which relief can be granted.[15]

## 2.   Article 795(D) allows the prosecution and defense to agree to racial discrimination in the exercise of peremptory challenges.

La. C. Cr. P. art. 795 (D) states, in pertinent part, "The provisions of Paragraph C and this Paragraph shall not apply when both the state and the defense have exercised a challenge against the same juror." Thus, if both the prosecutor and the defense attorney agree to exclude African-American venire-members, Louisiana law requires that the citizen be excluded from jury service – even if the joint strike is motivated in whole or in part by the race of the juror.[16]

---

the party whose conduct is being challenged has demonstrated by a preponderance of the evidence that the strike would have nevertheless been exercised even if an improper factor had not motivated in part the decision to strike. If so, the strike stands"); *United States v. Darden*, 70 F.3d 1507, 1531 (8th Cir. 1995), *Wallace v. Morrison*, 87 F.3d 1271, 1274-75 (11th Cir. 1996); *Guzman v. State*, 85 S.W.3d 242, 246-51 (Tex. Crim. App. 2002) (en banc).

[14] Doc. 18, Third Amended Complaint at ¶¶ 4, 7, 22-23, 74-78, 113-117, and 125 (G).

[15] *See Winslow v. W.L. Gore & Associates, Inc.*, 2011 WL 873562 at *1 (W.D. La. 2011) (complaint which states a claim which is "plausible on its face" survives 12(b)(6) review under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009)).

[16] *State v. McCoy*, 2014-1449 (La. 10/19/16), ____ So. 3d. ____, 2016 WL 6506004 at **79; *State v. Stewart*, 93-9708 (La. Ct. App. 1st Cir. 4/23/03), 633 So. 2d 925, 936 (joint strike of black prospective juror not challengeable on appeal).

This provision would appear to incorporate notions of waiver; under Louisiana law, a criminal defendant may not assert a *Batson* claim in a motion for new trial or on appeal where no contemporaneous objection was made prior to the jury being sworn.[17] It follows, from the standpoint of the parties, that where the prosecution and the defense agree to challenge a prospective juror, each has acquiesced in the action of the other and have waived their objections.

This, however, does not take into account the rights of persons like the Plaintiffs, African-American citizens of Caddo Parish who are qualified for jury service. Racial discrimination in their exclusion from a criminal petit jury by the exercise of a prosecutor's peremptory challenge in violation of the Equal Protection Clause[18] is not immunized by the defense attorney's agreement to discriminate.[19]

Therefore, the safe harbor for violation of Plaintiffs' Equal Protection Clause rights granted by Article 795 (D) must be struck as violative of that same constitutional guarantee. The Third Amended Complaint's allegations targeting Article 795 (D)[20] state a claim plausible on its face; they survive Rule 12(b)(6) review.

### 3.   Plaintiffs have pled plausible, specific facts to support their attack on the constitutionality of Article 795.

The Attorney General contends that "changes in the membership of the Caddo District Attorney's Office call into question whether the Plaintiffs' claims based on present or future conduct are even plausible pursuant to *Twombly* and *Iqbal*."[21] He references the argument made by the District Attorney in this case[22] and the opinions of the District Court in a series of *pro se*

---

[17] *State v. Tucker*, 2013-1631 (La. 9/1/15), 181 So. 3d 590, 625-26.
[18] *Batson v. Kentucky*, 476 U.S. 79 (1986).
[19] *See Georgia v. McCollum*, 505 U.S. 42 (1992) (racial discrimination by criminal defense counsel in exercise of peremptory challenge violates Equal Protection Clause); *State v. Tyler*, 97-0338 (La. 9/9/98), 723 So. 2d 939, 942-43(same); *State v. Knox*, 91-1906 (La. 11/30/92), 609 So. 2d 803 (same).
[20] Doc. 18, Third Amended Complaint at ¶¶ 5, 7, 22-23, 79, 118-19, and 125 (G).
[21] Doc. 49, Attorney General's Memorandum, at 11.
[22] Doc. 49 at 9.

prisoner lawsuits, which, according to the Attorney General, "recently considered essentially the same issue."[23] The Attorney General also attacks the Third Amended Complaint's use of trial data from 2003 through 2012 to make a fact-specific case for the existence of a custom and practice of racial discrimination over the course of three separate administrations of the District Attorney's Office.[24] These arguments fail to undermine the plausibility of the claims of the Third Amended Complaint.

> **a.  Because the Third Amended Complaint attacks the custom and practice of the District Attorney's Office rather than that of any specific District Attorney or prosecutor, changes in the personnel of that Office do not vitiate Plaintiffs' allegations.**

In the first place, the attempt to use the new administration and personnel changes to insulate the unconstitutionality of the District Attorney's Office's long-standing custom and practice of racial discrimination in the exercise of peremptory strikes profoundly misses the point. The District Attorney is sued in his official capacity; thus the defendant here is the **Office** of the District Attorney, not James Stewart or his assistants individually.

The Third Amended Complaint provides expert statistical analysis of the raw data of 332 trials from 2003 through 2012 collected by Reprieve Australia, which plausibly demonstrates that these results are not coincidental:

> Even after controlling for other case characteristics and factors that may influence the District Attorney in exercising peremptory strikes (including the number of defendants, nature of the offense, jury size, gender of prospective juror, race and gender of defendant, race and gender of judge, race and gender of prosecuting attorney, proportion of effective jury pool that was black, and proportion of effective jury pool that was male), the disproportionate rate of challenge to qualified African-American jurors remains. In fact, it becomes even more extreme. With these controls added (in addition to controlling for the potential interdependence among decisions about jurors

---

[23] *Id.*, *citing Robertson v. Loftin*, 2016 WL 3919718 at *5 (W.D. La. 2016), *report and recommendation adopted*, 2016 WL 3920425 (W.D. La. 2016); *Taylor v. Loftin*, 2016 WL 5819836 at *2 (W.D. La. 2016).
[24] Doc. 18, Third Amended Complaint, at ¶¶ 42-58.

within the same case), prosecutors struck African-American citizens of Caddo Parish from jury service at five times the rate of jurors who were not African-American. The effect was statistically significant (p<.001).

Joint consideration of the race of the defendant and race of the juror showed that the disproportionate rate of challenge against African-American jurors was exacerbated when the defendant was black. When the defendant was white, the District Attorney was 2.6 times more likely to strike a black juror than he was to strike a white juror (p<.001). When the defendant was black, the District Attorney was 5.7 times more likely to strike a black juror than he was to strike a white juror (p<.001).

In addition, statistical analyses controlling for extraneous factors revealed that the District Attorney was three times more likely to exercise a "backstrike" (as discussed in paragraph 41 above) on a previously accepted black juror than on a previously accepted white juror (p<.001).[25]

Plaintiffs aver that "[b]ecause no other plausible explanation accounts for the disparity between the District Attorney's peremptory challenges against African-American jurors and those against white jurors, the only statistically significant factor explaining the disparity is the race of the juror."[26] Plaintiffs specifically allege, "[a]lthough the time period of the trial data used in the detailed statistical analysis was from 2003-2012, the District Attorney's custom of racially discriminatory jury selection began before that time and has continued through the present."[27] And four of the Plaintiffs specifically allege racial discrimination in the exercise of peremptory challenges in the last twelve months.[28]

These paragraphs, based on substantial, comprehensive data from trials conducted by the Defendant under **three** previous administrations (District Attorneys Paul Carmouche, Charles Scott, and Dale Cox), plausibly allege a custom, pattern, or practice of racial discrimination in jury

---

[25] Doc. 18 at ¶¶ 55-57.
[26] Doc. 18 at ¶ 58.
[27] Doc. 18 at ¶ 59.
[28] Doc. 18 at ¶¶ 83-102.

selection.[29] Such customs and practices are actionable against local government entities such as the Office of the District Attorney:

> Congress included customs and usages in Section 1983 because of the persistent and widespread discriminatory practices of state officials. Even where not authorized by written law, such practices could be so permanent and well-settled as to constitute a custom or usage with the force of law.[30]

Importantly, both the Attorney General and the District Attorney erroneously refer to the analysis of this data as the "Reprieve Australia study." As specifically alleged in paragraph 45 of the Third Amended Complaint, Reprieve Australia collected the raw data discussed in paragraphs 44-52. But the Third Amended Complaint does not cite to or rely on the report published separately by Reprieve Australia. The analysis of the data alleged by Plaintiffs at ¶¶ 54-60 is not the Reprieve Australia study or report, but is instead independent analysis conducted by the Plaintiffs. Unlike the Reprieve study or report, Plaintiffs make no allegations about specific prosecutors.

Because the Plaintiffs allege an unconstitutional custom and practice of the Office of the District Attorney, changes of personnel – including the incumbent District Attorney – do not undermine the plausibility of Plaintiffs' claims.[31]

---

[29] The Attorney General argues that "[p]erhaps the numbers in the Reprieve Australia study are caused by other factors." Doc. 49 at 12. He ignores the fact that the statistical analysis alleged in the aforementioned paragraphs of the Third Amended Complaint (and the statistical analysis that supports the allegations of those paragraphs) refutes any such suggestion. The entire point of demonstrating that "the only statistically significant factor explaining the disparity is the race of the juror," Doc. 18 at ¶ 58, is to control for "other factors" which might explain the correlation. At a minimum, the Attorney General's speculations about "other factors" accounting for racial disparities in the prosecution's practice of peremptory challenges over a 332-trial, 10-year sample, cannot be used as grounds to dismiss Plaintiffs' case in the current Rule 12(b)(6) posture.

[30] *Monell v. Dep't of Soc. Services of City of New York*, 436 U.S. 658, 691 (1978), *quoting Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167 (1970).  Because the Third Amended Complaint predicates liability on the Office of the District Attorney, not on Mr. Stewart in his individual capacity, the notion that the Plaintiffs have not alleged a constitutional violation "fairly traceable to Stewart" (Doc. 46 at 10) has no relevance to this case. The allegations of the Third Amended Complaint do, in fact, assert past and future injury "fairly traceable" to the Office.

[31] A further misunderstanding of Plaintiffs' claims is revealed by the Attorney General's argument that "even a strong showing of correlation does not prove causation." Doc. 49 at 11-12. He cites examples from a law review article about global warming and a products liability case. *Id*. at 12. But as discussed above, the statistics from the 2003-2012 trials are alleged to show the existence of a custom, usage, and practice under *Monell*. The Third Amended Complaint alleges that this custom, usage, and practice is still in effect. This is nothing like the use of statistics to prove that violent video games have an adverse effect upon children who play them.

      **b.  At most, the effect of any personnel changes at the Office of the District Attorney inject contested factual issues that cannot be resolved in the context of a motion to dismiss.**

Moreover, the Defendant and Intervenor'  attempt to inject non-record factual allegations, such as the alleged change in personnel in the Office of the District Attorney, must fail in a Rule 12(b)(6) context. For example, the District Attorney has submitted for this Court's review an unsworn "roster" of attorneys[32] and asserts that "of the 12 assistant prosecutors listed in the Reprieve Australia study, nine of them are no longer employed by District Attorney Stewart and of the three who remain employed, these three had the lowest percentage of strikes of black jurors and have been reassigned to non-litigation assignments."[33]

This argument violates the most elemental principles of Rule 12(b)(6). A motion to dismiss is confined to "the pleadings and any attachments thereto."[34] Attachments to a motion to dismiss may only be considered where "they are referred to in the plaintiff's complaint and are central to her claim" because "[i]n so attaching, the defendant merely assists the plaintiff in establishing the basis of the suit, and the court in making the elementary determination of whether a claim has been stated."[35] The District Attorney's unsworn "roster" does not meet this description.

Rule 12(b)(6)'s limited scope of review is dictated by fundamental fairness. In this case, Plaintiffs have had no opportunity to take discovery with respect to whether the District Attorney's Office has changed the long-standing practice of race discrimination in jury selection that is detailed in the Third Amended Complaint.[36] Similarly, no discovery has been taken on the exercise

---

[32] Doc. 46-1.

[33] Doc. 46 at 12, *citing Robertson v. Loftin, supra.*

[34] Fed.R.Civ.P. 12(b)(6); *Brammer Engineering, Inc. v. Meridian Resources USA, Inc.*, 2007 WL 3009148  at *1 (W.D. La. 2007).

[35] *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000), *cited in Brammer Engineering, supra.*

[36] Doc. 18, Third Amended Complaint, at ¶¶ 42-73, 80-103, 104-112. If the District Attorney or the Attorney General were to file an early motion for summary judgment attaching such materials, Plaintiffs would be entitled to discovery before responding. Fed. R. Civ. P. 56(d); *see, e.g., Leger v. Offshore Staffing Services of Acadiana, LLC*, 2013 WL

of peremptory challenges by the District Attorney's Office in the months since the new incumbent has taken office.

Indeed, neither the District Attorney nor the Attorney General even allege that the District Attorney has, by policy, training, or supervision, taken steps to root out this practice. The District Attorney's lawyer states that "Defendant Stewart does not, and never has, condoned the use of peremptory challenges in a racially discriminatory manner,"[37] but cites no policy, sworn statement, or other evidentiary support to substantiate this conclusory averment.[38]

This is exactly why, contrary to the Attorney General's analysis, this Court's focus remains squarely on the allegations of the Third Amended Complaint in its adjudication of the motions to dismiss:

> A motion to dismiss under rule 12(b)(6) is viewed with disfavor and is rarely granted. The complaint must be liberally construed in favor of the plaintiff, and all facts pleaded in the complaint must be taken as true. The district court may not dismiss a complaint under rule 12(b)(6) unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.

> This strict standard of review under rule 12(b)(6) has been summarized as follows: The question therefore is whether in the light most favorable to the plaintiff and with every doubt resolved in his behalf, the complaint states any valid claim for relief.[39]

---

504922 at *2 (W.D. La. 2013) ("Summary judgment is not appropriate until after the non-movant has had a fair opportunity for discovery of information essential to its opposition to movant's motion").

[37] *Id.*

[38] By contrast, where the Superintendent of the Texas Department of Criminal Justice filed an affidavit acknowledging the department's policy of preventing general-population prisoners on cell restriction from attending religious services, and that the policy had been terminated, the Fifth Circuit found a prisoner's claim based on the former policy to be moot. *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 326 (5th Cir. 2009). District Attorney Stewart, by contrast, has neither acknowledged the District Attorney's Office's custom, usage, and practice of racial discrimination in the exercise of peremptory challenge, nor has he made any sworn or binding statement that the custom or practice has been eradicated and replaced with policies and procedures designed to root out the Office's long-established culture of racially discriminatory jury selection.

[39] *Brammer Engineering, Inc. v. Meridian Resources USA, Inc*., 2007 WL 3009148  at *1 (W.D. La. 2007), *citing Kaiser Aluminum & Chem. Sales v. Avondale Shipyards*, 677 F.2d 1045, 1050 (5th Cir.1982), *Campbell v. Wells Fargo Bank*, 781 F.2d 440, 442 (5th Cir.1986) *and Blackburn v. Marshall*, 42 F.3d 925, 931 (5th Cir.1995).

As this Court has explained post-*Twombly/Iqbal*:

> Simply put, if the plaintiff pleads factual content that allows the court to draw the inference that the defendant is liable for the misconduct alleged, the 12(b) (6) motion should be denied.[40]

Given that the defendant here is the Office of the District Attorney, not James Stewart individually, the Third Amended Complaint far exceeds this standard.

## II.   PLAINTIFFS HAVE STANDING TO CHALLENGE THE CONSTITUTIONALITY OF ART. 795 ON EQUAL PROTECTION GROUNDS.

Like the District Attorney's Office, the Attorney General asserts that Plaintiffs lack standing to bring their challenge. With respect to the invalidity of Article 795 (C), (D), and (E), this contention is contradicted by long-established principles of the standing of African-American citizens to attack the constitutionality of statutes which are used to block them from service on grand or petit juries. And while the Attorney General relies on the opinions of the District Court in a series of *pro se* prisoner lawsuits, which he asserts "recently considered essentially the same issue,"[41] those cases are readily distinguished.

### A.  The standing of citizens to challenge the constitutionality of jury selection statutes and procedures is established by Supreme Court and Fifth Circuit precedent.

As the Fifth Circuit has succinctly held, "members of racial minorities have standing to obtain prospective relief from jury selection systems that are consistently administered so as to exclude them from jury service."[42]

---

[40] *Mitchell v. Union Tank Car LLC*, 2011 WL 4499317 at *1 (W.D. La. 2011) (*citing Twombly* and *Iqbal*).
[41] *Id.*, citing *Robertson v. Loftin*, 2016 WL 3919718 at *5 (W.D. La. 2016), *report and recommendation adopted*, 2016 WL 3920425 (W.D. La. 2016); *Taylor v. Loftin*, 2016 WL 5819836 at *2 (W.D. La. 2016).
[42] *Society of Separationists, Inc. v. Herman*, 959 F.2d 1283, 1287 (5th Cir. 1992)

The lead case in this regard is the Supreme Court's decision in *Carter v. Jury Commission*, 396 U.S. 320 (1970). *Carter* was a Section 1983 class action brought by African-American citizens of Greene County, Alabama against officials (both county and state) charged with the administration of the state's jury selection laws. Plaintiffs sought, among other things, a declaratory judgment that qualified African-Americans were systematically excluded from Greene County grand and petit juries, that the Alabama statutes governing jury selection were unconstitutional on their face and as applied, and a permanent injunction forbidding the systematic exclusion of African-Americans from Greene County juries pursuant to the challenged statutes.[43]

As here, defendants moved to dismiss *Carter* on grounds that Plaintiffs lacked standing to attack the racially discriminatory statute and practices. The Supreme Court made short shrift of this argument:

> This is the first case to reach the Court in which an attack upon alleged racial discrimination in choosing juries has been made by plaintiffs seeking affirmative relief, rather than by defendants challenging judgments of criminal conviction on the ground of systematic exclusion of Negroes from the grand juries that indicted them, the trial juries that found them guilty, or both. The District Court found no barrier to such a suit, and neither do we.

> Defendants in criminal proceedings do not have the only cognizable legal interest in nondiscriminatory jury selection. People excluded from juries because of their race are as much aggrieved as those indicted and tried by juries chosen under a system of racial exclusion. Surely there is no jurisdictional or procedural bar to an attack upon systematic jury discrimination by way of a civil suit such as the one brought here.[44]

In the companion case to *Carter*, the Supreme Court rejected the notion, proposed by the Attorney General in this case, that statistical proof of racially disparate treatment of citizens seeking to serve on juries is "speculative":

---

[43] *Carter*, 396 U.S. at 321-22.
[44] *Id*. at 329-30.

> [W]e think that even under long-established tests for racial discrimination in the composition of juries, the District Court erred in its determination that the new list before it had been properly compiled. The undisputed fact was that Negroes composed only 37% of the Taliaferro County citizens on the 304-member list from which the new grand jury was drawn. That figure contrasts sharply with the representation that their percentage (60%) of the general Taliaferro County population would have led them to obtain in a random selection.

> In the absence of a countervailing explanation by the appellees, we cannot say that the underrepresentation reflected in these figures is so insubstantial as to warrant no corrective action by a federal court charged with the responsibility of enforcing constitutional guarantees.[45]

The *Turner* Court concluded:

> In sum, the appellants demonstrated a substantial disparity between the percentages of Negro residents in the county as a whole and of Negroes on the newly constituted jury list. They further demonstrated that the disparity originated, at least in part, at the one point in the selection process where the jury commissioners invoked their subjective judgment rather than objective criteria. The appellants thereby made out a prima facie case of jury discrimination, and the burden fell on the appellees to overcome it.[46]

*Carter* has not been overruled (expressly or impliedly) by the Supreme Court. Moreover, in *Society of Separationists*, the Fifth Circuit applied *Carter* **after** the decision in *Lyons*[47] – the only authority cited by the Attorney General in his standing argument.[48] The reason is obvious. The plaintiff in *Lyons* had to establish that the alleged practice would be repeated and that he would be subject to its repetitive use. *Lyons* did not involve a challenge to a statute enacted to enforce the Fourteenth Amendment in petit jury selection brought by African-American citizens who are eligible for jury service.

---

[45] *Turner v. Fouche*, 396 U.S. 346, 359 (1970).
[46] *Id.* at 361.
[47] *City of Los Angeles v. Lyons*, 461 U.S. 95 (1993).
[48] Doc. 49 at 6-8.

*O'Shea v. Littleton*, 414 U.S. 488 (1974), is not to the contrary. In that case, which challenged bail practices, among other things, the Court stated "here the prospect of future injury rests on the likelihood that respondents will again be arrested for and charge with violations of the criminal law and will again be subjected to bond proceedings, trial or sentencing before petitioners. **Important to this assessment is the absence of allegations that any relevant criminal statute of the State of Illinois is unconstitutional on its face or as applied** . . . ."[49]

Here, as in *Carter* and *Turner*, the "prospect for future injury" from the unconstitutionality of Article 795 is based on the likelihood that the Plaintiffs will be summoned for jury service in the future[50] and the certainty that the presiding judge in any such case will follow the Code article. In this context, Plaintiffs have well-established standing to challenge the constitutionality of Article 795.

  B. **The Robertson and Taylor opinions are inapposite as they involve claims advanced by a different category of plaintiffs in a significantly different procedural posture.**

The rulings of the District Court in the *Robertson* and *Taylor* cases likewise have no application to this Court's standing analysis. The Plaintiffs in those cases were prisoners in the custody of the Louisiana Department of Corrections after having been convicted in the First Judicial District of Louisiana. They sought injunctive relief against the Clerk of Court and the District Attorney for the retention of records related to peremptory challenges[51] and "to require

---

[49] *O'Shea*, 414 U.S. at 496

[50] The likelihood that Plaintiffs will receive a summons for jury service in the near future is alleged in the Third Amended Complaint at ¶¶ 32-34. *See also* Doc. 33-1 (Plaintiffs' Response to District Attorney's Motion to Dismiss) at 16-17 (11.5% chance that any particular African-American registered voter would be summoned in any particular year for jury service in Shreveport, and 34.5% chance of summons over a three-year period). Indeed, Everitt Pipkins, one of the named Plaintiffs, has been summoned for criminal jury service in Caddo Parish since the filing of this civil action. Mr. Pipkins was summoned to appear on October 17, 2016. He was originally accepted as a juror in the criminal prosecution of Roy Leon Robertson, and then was peremptorily challenged by the exercise of a "backstrike" by the Assistant District Attorney. *See* Minutes, October 17, 2016, *State of Louisiana v. Roy Leon Robertson*, No. 335740, Louisiana First Judicial District Court, attached hereto as Exhibit A.

[51] *See* Doc. 1 in *Robertson v. Loftin*, No. 5:15-cv-2688 (W.D. La.) at 11-12.

the defendants immediately to stop purposefully excluding black prospective jurors on the basis of race."[52]

The Magistrate Judge had difficulty penetrating the allegations of this pleading in deciding whether to recommend dismissal *sua sponte*, saying "It is **possible** that Plaintiff is attempting to assert a federal claim for a constitutional violation under 42 U.S.C. § 1983. Plaintiff's motion refers to constitutional rights such as those protected by the Equal Protection Clause."[53] The Court then turned to the significant problem for the plaintiffs that as prisoners under state convictions, any claim under Section 1983 related to their cases was barred by *Heck v. Humphrey*, 512 U.S. 477 (1994).[54]

The Court also considered the plaintiffs' standing problems in seeking injunctive relief, given the lack of likelihood that the plaintiffs themselves would again be arrested and charged with crimes and again be subjected to criminal proceedings before the same officers.[55] Given that the named plaintiff is serving a sentence of imprisonment for his natural life plus fifty years at the Louisiana State Penitentiary, the Court found the possibility of such repetition to be remote.[56] Only then did the Court mention, briefly and without citation as to its legal significance, the fact that Mr. Stewart has succeeded Mr. Cox as District Attorney and that some of the staff had changed.[57]

This careful review demonstrates that this dicta in the *Robertson* and *Taylor* cases provides no authority for the proposition that the Third Amended Complaint fails to state a claim on which relief can be granted. Plaintiffs in this case are jurors, not prisoners. They are at liberty and are in

---

[52] *Id*. at 14.
[53] *Robertson v. Loftin*, 2016 WL 3919718 at *4 (W.D. La. 2016), *report and recommendation adopted*, 2016 WL 3920425 (W.D. La. 2016).
[54] *Id*. *Heck*, of course, does not apply to this case, since none of the Plaintiffs have pending criminal charges, let alone convictions, which would be placed in jeopardy by the adjudication of their § 1983 claims.
[55] *Id*. at 5, *citing City of Los Angeles v. Lyons*, 461 U.S. 95 (1993), and *O'Shea v. Littleton*, 414 U.S. 488 (1974).
[56] *Id*.
[57] *Id*.

a compact group of African-American citizens who continue to be eligible for jury service in Caddo Parish.[58] The claims of Plaintiffs in this case are not controlled by the dismissal of a *pro se* pleading which the district court struggled to interpret.

The Attorney General's motion to dismiss Plaintiffs' claims against Article 795 for lack of standing is without merit and should be denied.

## III. THE PRINCIPLES OF *YOUNGER V. HARRIS* FORBID ABSTENTION.

Finally, the Attorney General joins the District Attorney in seeking abstention under *Younger v. Harris*, 401 U.S. 371 (1971). With respect to the claims for declaratory and injunctive relief targeting Article 795, the Supreme Court has repeatedly emphasized that federal courts should only abstain from exercising jurisdiction under "exceptional circumstances."[59] It has narrowly constrained *Younger* abstention to situations where all three of the following conditions are met: (1) there is an ongoing state judicial proceeding; (2) the federal proceeding implicates important state interests; and (3) there is an adequate opportunity in the state proceeding for the Federal plaintiffs to raise the constitutional challenges.[60]

Because this federal action does not interfere with an ongoing state proceeding, and because the filing of a separate state civil action is not required by *Younger* or *Middlesex*, neither the first nor third Middlesex conditions are met.[61] Thus, this Court should not abstain. Abstention is also impermissible because La. C. Cr. P. art. 795's provisions requiring a higher threshold of

---

[58] See Doc. 18, Third Amended Complaint, at ¶¶ 32-34; Doc. 37-1, Plaintiffs' Opposition to District Attorney's Motion to Dismiss at 16-17. *See also* discussion in Part II.A. supra.
[59] *See Sprint Communications, Inc. v. Jacobs et al*, 134 S. Ct. 584, 588 (2013); *see also New Orleans Public Service, Inc. v. Council of City of New Orleans*, 491 U.S. 350, 368 (1989).
[60] *Middlesex County Ethics Committee v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982).
[61] The second condition, that "the federal proceeding implicates important state interests," is clearly met.

proof of racial discrimination in the exercise of peremptory challenges is patently unconstitutional and threatens irreparable harm to Plaintiffs and the proposed class members.[62]

It cannot be disputed that "Federal courts have a 'virtually unflagging obligation' to exercise jurisdiction granted to them."[63] Protection against invidious discrimination is the quintessential function of the federal courts, which exist to ensure that the rights protected by the Constitution and federal laws are enforced.

### A. First Middlesex Condition: this civil action does not interfere with a pending criminal prosecution.

#### 1. The relief sought in the Third Amended Complaint does not interrupt or interfere with any current state criminal proceedings.

"When no state proceedings are pending, a federal action does not interfere with state processes, and the policies on which the *Younger* abstention doctrine is premised are unavailing."[64] Neither the District Attorney nor the Attorney General can seriously contest this point. As discussed in Plaintiffs' opposition to the District Attorney's motion to dismiss, there is no current proceeding pending with which this Court can interfere: Plaintiffs seek prospective relief only with respect to jury selection in cases that arise after a final judgment is entered in this case.[65]

#### 2. The relief sought in this case is far less than the detailed injunctive relief, including an intrusive audit and appointment of a monitor, in cases such as O'Shea v. Littleton and Hall v. Valeska.

The Attorney General, like the Defendant, relies heavily on *O'Shea v. Littleton*, 414 U.S. 488, 500 (1974), for the proposition that a federal injunction that constitutes "an ongoing federal

---

[62] *Texas Ass'n of Business v. Earle*, 388 F.3d 515, 519 (5th Cir. 2004), *quoting Younger*, 401 U.S. at 49.
[63] *See Deakins v. Monaghan*, 484 U.S. 193, 203 (1988), and *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813, 817 (1976)
[64] *Baran v. Port of Beaumont Navigation District of Jefferson County*, 57 F.3d 436, 441 (5th Cir. 1995); *see also Cain v. City of New Orleans*, ___ F. Supp.2d ____, 2016 WL 1598606 at *8-10 (E.D. La. 2016) (*Younger* and *Bice* not applicable to challenge to method for collecting post-judgment court costs from indigent former criminal defendants).
[65] Doc. 33-1 at 28.

audit of state criminal proceedings which would indirectly accomplish the kind of interference that *Younger v. Harris* and related cases sought to prevent."[66]

The Plaintiffs in *O'Shea* sought ongoing injunctive relief which would require "periodic reports of various types of aggregate data on actions on bail and sentencing," continuing supervision of the state courts in individual cases (including "the necessity of defending their motivations in each instance when the fixing of bail or sentence was challenged by a Negro defendant as inconsistent with the equitable relief granted"), and "the possibility of a contempt citation for failure to comply with the relief awarded."[67]

Similarly, in the lead Fifth Circuit case relying on *O'Shea*, the Court of Appeals explained the interference which would result from issuance of the injunction requested:

> The ongoing state proceeding here is Bice's criminal prosecution in municipal court. A successful challenge to the statutory scheme for funding public defenders, the Board argues, would require the state to postpone Bice's prosecution until adequate funding is located. The Board contends that imperiling the framework that funds public defenders therefore constitutes "interference" with a state court proceeding.[68]

A similar problem infected the complaint in *Hall v. Valeska*, 849 F.Supp.2d 1332 (M.D. Ala. 2012), *aff'd*, 509 F.App'x 834 (11th Cir. 2012), the Eleventh Circuit case relied upon by both the Attorney General and the District Attorney. Plaintiffs in that case sought, among other things, "the appointment by this court of a monitor to ensure that the Defendants comply with record collections requirements for four years," and an order granting "the Plaintiffs have meaningful

---

[66] Doc. 49 at 16.

[67] *O'Shea*, 414 U.S. at 493 n.1. Also, *O'Shea's* discussion of abstention was *dicta*, since the case was decided on the Article III "case or controversy" issue.

[68] *Bice v. Louisiana Public Defender Board*, 677 F.3d 712, 717 (5th Cir. 2012). It is also significant that in *Bice*, (1) there was an ongoing criminal proceeding, and (2) Bice was a defendant in that proceeding and could raise his Federal constitutional claims therein.

access to and monitoring of jury selection with notice of empaneling of juries and opportunity for oversight and intervention if Defendants' discrimination continues."[69]

Further, the *Hall* Complaint requested that "beneficiaries of the injunction" be granted leave "to seek federal review of state court rulings" – under which, according to the district court, "a beneficiary of the injunction could well seek to enforce a federal injunction against a state judge denying a *Batson* challenge in a criminal case."[70] The district court in *Hall* was concerned that "[a] ruling by this court, even after the completion of the criminal case, which was contrary to the state court judge's ruling on a *Batson* challenge could also have implications for the state court criminal conviction."[71]

Unlike the complaints in *O'Shea*, *Bice*, and *Hall*, the declaratory and injunctive relief sought by the Plaintiffs in this case does not require the kind of systemic, continued interjection of the Federal judiciary into state criminal proceedings. Rather, it seeks implementation of a simple, nondiscretionary procedural safeguard – the elimination of racial discrimination in the exercise of peremptory challenges in Louisiana's First Judicial District by "issuance of a permanent injunction forbidding the District Attorney of Caddo Parish (First Judicial District of Louisiana) to employ a custom, usage, and/or policy to exercise peremptory challenges against African-American citizens because of their race, in order to empanel criminal trial juries that are predominantly white."[72]

The Attorney General's abstention argument, like the District Attorney's, would forbid a Federal court from ever adjudicating a Section 1983 claim for declaratory or injunctive relief related to state criminal processes. That is contrary to decades of Supreme Court precedent

---

[69] *Hall*, 849 F.Supp.2d at 1335.
[70] *Hall*, 849 F.Supp.2d at 1339.
[71] *Id*.
[72] Doc. 18, Third Amended Complaint, at ¶125.

considering criminal matters and identifying the constitutional boundaries within which state and local systems must function.[73]

At the risk of repetition, this is the very function of the Constitution and the Federal judicial system. The plaintiffs in *Gerstein*, for example, challenged "the legality of [pre-indictment] detention," without adequate procedural safeguards.[74] The Supreme Court held that this form of relief is not subject to abstention, since it is not directed at the prosecution "as such."[75] Similarly, the Fifth Circuit expressly distinguished *O'Shea* where a Federal civil rights plaintiff sought injunctive relief to require "a simple, nondiscretionary procedural safeguard to the criminal justice system."[76]

That is exactly the case here. Thus, the first *Middlesex* condition is not met.

**B. Third Middlesex Condition: there is no procedure in Louisiana state criminal prosecutions for prospective jurors to object to peremptory challenges exercised against them.**

Like the District Attorney, the Attorney General argues that Plaintiffs' claims can be raised in the criminal trials in which peremptory challenges are exercised.[77] However, the mechanism of the Louisiana Code of Criminal Procedure that purports to implement *Batson* does not provide an adequate state court remedy to Plaintiffs and the class they seek to represent.[78] Plaintiffs addressed this argument extensively in opposition to the District Attorney's motion to dismiss[79] and merely supplement their response here.

---

[73] *See, e.g., Gerstein v. Pugh*, 420 U.S. 103 (1974); *County of Riverside v. McLaughlin*, 500 U.S. 44 (1991); *Carter, supra*.

[74] *Gerstein v. Pugh*, 420 U.S. at 108, n.9

[75] *Id*.

[76] *Tarter v. Hury*, 646 F.2d 1010, 1013 (5th Cir. 1981), *citing Pugh v. Rainwater*, 483 F. 2d 778, 782 (5th Cir. 1973).

[77] Doc. 49 at 16-17, *citing Hall, supra*, 509 F. App'x at 836 ("Plaintiffs, on the other hand, challenge the discretionary use of peremptory strikes during judicial proceedings – strikes which may be objected to, ruled on contemporaneously, and subjected to appellate review").

[78] Doc. 49 at 16-17.

[79] Doc. 33-1 at 27-31.

In the first place, Plaintiffs and other excluded jurors have no opportunity to participate in the process of jury selection in the criminal cases for which they receive a jury summons. Article 795 (C) provides that the disclosure of the purported "race-neutral" reasons for peremptory challenges "shall be made outside of the hearing of any juror or prospective juror." Thus, Plaintiffs and putative class members are not even advised of the alleged reasons for the use of peremptory challenges. They are utterly powerless to respond or rebut the purported grounds for their dismissal.

Moreover, Plaintiffs are not adequately represented by any of the parties to the criminal proceeding. As discussed in Plaintiffs' opposition to the District Attorney's motion to dismiss, Fifth Circuit precedent squarely forecloses any notion that a criminal defendant is in "privity" with Plaintiffs or other prospective jurors.[80] Simply put, the "third party" test for standing in constitutional cases does not involve the close relationship between the injured party and the litigant required under the Fifth Circuit's *res judicata* precedent: "the existence of an express or implied legal relationship in which parties to the first suit are accountable to non-parties who file a subsequent suit raising identical issues."[81]

Contrary to the Attorney General's argument, *Younger* does not require Plaintiffs to file a separate civil action in the Louisiana state courts, because by definition, such a civil action would not be "part of the pending criminal proceedings."[82] The court of appeals in *Habich v. City of*

---

[80] Doc. 33-1 at 32-34. It is noteworthy that in *Shaw v. Hahn*, 56 F.3d 1128, 1132 (9th Cir. 1995), relied upon by the District Attorney (Doc. 46 at 20), the Ninth Circuit required the prospective juror-plaintiff to show that the original Batson objector "had a conflict of interest with her or were in any other way hindered from protecting her equal protection interests during the jury selection process." Needless to say, this is a much less rigorous test for privity than that required by Fifth Circuit precedent.

[81] *Benson and Ford, Inc. v. Wanda Petroleum Co.*, 833 F.2d 1172, 1174 (5th Cir. 1987), *quoting Pollard v. Cockrell*, 578 F.2d 1002, 1008 (5th Cir. 1978); *see also Freeman v. Lester Coggins Trucking, Inc.*, 771 F.2d 860, 864 (5th Cir. 1985). *See generally* Doc. 33-1 at 32-34.

[82] *Pugh v. Rainwater*, 483 F. 2d 778, 782 (5th Cir. 1973) ("Younger has never been applied by our circuit to force a federal court to relinquish jurisdiction over a federal claim which could not be adjudicated in a single pending or future state proceeding, and we decline to so apply it now.")

*Dearborn*, 331 F.3d 524 (6th Cir. 2003), in discussing this very issue, reasoned that "[u]nless the issue in the plaintiff's federal suit would be resolved by the case-in-chief or as an affirmative defense to the state court proceedings that exist, it cannot be said that the state proceedings afford the federal plaintiff an adequate opportunity to have his or her claim heard for *Younger* purposes."[83] The Sixth Circuit noted that although the plaintiffs in *Gerstein v. Pugh*, 420 U.S. 103 (1975), could have filed their civil rights suit in state court, the Supreme Court "was apparently unmoved that such a possibility provided a sufficient opportunity."[84] To hold otherwise would require *Younger* abstention in nearly every case "because there are few situations in which a federal plaintiff would not be able to file the federal suit in state court."[85]

Because abstention is not appropriate under *Younger* and *Middlesex*, this Court must exercise its Federal question jurisdiction over this case.

## CONCLUSION

WHEREFORE, PREMISES CONSIDERED, Plaintiffs request that the Court deny the Attorney General's Motion to Dismiss.

Respectfully submitted,

*/s/ James W. Craig*
James W. Craig, Bar No. 33687
Emily M. Washington, Bar No. 34143

Roderick & Solange MacArthur Justice Center
4400 S. Carrollton Ave.
New Orleans, LA 70119
(504) 620-2259 (p)
(504) 208-3133 (f)
jim.craig@macarthurjustice.org
emily.washington@macarthurjustice.org

*Attorneys for Plaintiffs*

---

[83] *Habich v. City of Dearborn*, 331 F.3d 524, 532 (6th Cir. 2003)
[84] *Habich*, 331 F.3d at 532
[85] *Id*.

## CERTIFICATE OF SERVICE

I hereby certify that I have served all counsel of record in this case by filing this motion through this Court's ECF system.

This the _____ day of December, 2016.

/s/ James W. Craig