RECEIVED

APR - 1 2019

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA, LOUISIANA

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

RENEÉ PIPKINS, et al.                          CIVIL ACT. NO. 5:15-cv-2722

-vs-                                                          JUDGE DEE D. DRELL

JAMES E. STEWART, SR., IN HIS
OFFICIAL CAPACITY AS DISTRICT
ATTORNEY OF CADDO PARISH
(FIRST JUDICIAL DISTRICT OF
LOUISIANA)

STATE OF LOUISIANA ex rel. JEFF
LANDRY, LOUISIANA ATTORNEY
GENERAL, Intervenor                          MAG. JUDGE MARK L. HORNSBY

---

### MEMORANDUM RULING

Before the Court is a Motion to Dismiss (Doc. 20) filed by defendant James E. Stewart, Sr., in his official capacity as District Attorney of Caddo Parish, First Judicial District of Louisiana ("District Attorney"), an Opposition (Doc. 37) filed by Plaintiffs,[1] a Reply (Doc. 46) filed by the District Attorney, a Supplemental Memorandum in Support of the Motion to Dismiss (Doc. 49) filed by Jeff Landry, Attorney General for the State of Louisiana ("Attorney General"),[2] and an Opposition to the Attorney General's Supplemental Memorandum (Doc. 56) filed by Plaintiffs. For the following reasons, the Motion to Dismiss will be **GRANTED IN PART** and **DENIED IN PART**.

---

[1] Reneé Pipkins, Everitt Pipkins, Theron Jackson, LaWhitney Johnson, Adriana Thomas, Reginald Autrey, Darryl Carter, Diane Johnson, Kimberly Horton, and Theresa Hawthorne, on behalf of themselves and all others similarly situated.

[2] The Attorney General was allowed to intervene and adopt the District Attorney's motion (Doc. 20). See Order (Doc. 47); Order (Doc. 48).

1

# I.    FACTS & PROCEDURAL HISTORY

This suit alleges that the District Attorney systematically exercises (and therefore still exercises) peremptory strikes against African-American prospective jurors on the basis of their race for the purpose of empaneling criminal trial juries that are predominately white.

Each Plaintiff is an adult resident citizen of Caddo Parish, Louisiana, and each is qualified to serve a juror in criminal cases under Article 401 of the Louisiana Code of Criminal Procedure.[3] Each is a registered voter and is (or has been) on the list of eligible jurors maintained by the Caddo Parish Jury Commission.[4] Plaintiffs Carter, Johnson, Horton, and Hawthorne were all excluded from jury service by the District Attorney's use of peremptory strikes within twelve months prior to the commencement of this suit.[5]

The centerpiece of this case is a statistical analysis conducted by Reprieve Australia ("Reprieve"), a non-profit organization not affiliated with Plaintiffs or their counsel. Reprieve acquired the records of 332 non-sealed criminal trials[6] from January 28, 2003, through December

---

[3] Third Am. Compl. (Doc. 18) at ¶ 2.
[4] Id.
[5] Id. at ¶ 3.
[6] Id. at ¶ 45. The District Attorney argues in a footnote that the statistics provided by Reprieve are "mathematically incorrect and overstated." Mot. to Dismiss (Doc. 20-1) at 12 n.4. During oral argument, counsel for the District Attorney suggested that the Court take judicial notice of Louisiana Supreme Court annual reports indicating that during the time period analyzed by Reprieve there were 487, not 332, jury trials. Oral Argument Tr. (Doc. 61) at 13. Such a discrepancy, if true, would call into question the validity of the evidence serving as the foundation for this case. Nonetheless, the Court declines to make any findings as to the validity of Reprieve's statistics at this stage of litigation.

5, 2012,[7] pursuant to the Louisiana Public Records Act.[8] According to Reprieve's data, forty-five different Assistant District Attorneys were involved as counsel for the prosecution of these 332 cases.[9] Thirty of those Assistant District Attorneys were white and fifteen were African-American.[10]

In these 332 trials, 8,318 potential jurors were tendered to the District Attorney for peremptory challenge or acceptance as trial jurors.[11] These potential jurors survived the initial process of eliminating non-qualified jurors through the Parish Jury Coordinator's review of jury questionnaires and any challenges for cause.[12] Of the 8,318 qualified jurors, 2,908 were identified as African-Americans.[13] The District Attorney exercised peremptory challenges against 1,338, or approximately 46%, of the qualified African-American jurors.[14] By contrast, the District Attorney only used peremptory challenges against 830, or approximately 15%, of the 5,410 qualified jurors who were identified as non-African-Americans.[15] The table below illustrates Reprieve's findings:[16]

---

[7]

| Year | Cases |
|------|-------|
| 2003 | 25 |
| 2004 | 27 |
| 2005 | 35 |
| 2006 | 43 |
| 2007 | 41 |
| 2008 | 25 |
| 2009 | 38 |
| 2010 | 30 |
| 2011 | 40 |
| 2012 | 28 |

Id. at ¶¶ 44-46.
[8] Id. at ¶¶ 44-45.
[9] Id. at ¶ 47.
[10] Id.
[11] Id. at ¶ 49.
[12] Id.
[13] Id. at ¶ 50.
[14] Id. at ¶ 50.
[15] Id. at ¶ 51.
[16] Id. at ¶ 52.

| Race | Accepted | Struck | Total |
|---|---|---|---|
| Black | 1570 | 1338 | 2908 |
| Not Black | 4580 | 830 | 5410 |
| Total | 6150 | 2168 | 8318 |

Reprieve's statistical analysis of this ten-year history of peremptory strikes argues that, mainly through the various trial assistants,[17] the District Attorney struck African-American potential jurors at three (3) times the rate he struck non-African-American prospective jurors.[18] The statistics further show that, after controlling for various factors, the District Attorney struck African-American venirepersons from jury service at five (5) times the rate he struck potential jurors who were not African-American.[19] According to Reprieve's analysis, when a defendant was white the District Attorney was 2.6 times more likely to strike an African-American juror than a non-African-American juror.[20] When a defendant was African-American, however, Reprieve's calculations indicate that the District Attorney was 5.7 times more likely to strike an African-American juror than a non-African-American juror.[21] Interpreting these statistics, Plaintiffs conclude that the only plausible explanation for this disparity between the District Attorney's peremptory challenges against African-American jurors and those against non-African-American jurors is the race of the juror.[22] They further allege that this systemic use of peremptory strikes by

---

[17] For simplicity's sake, the Court will simply refer to any given Assistant District Attorney or the office of the District Attorney as the District Attorney going forward.
[18] Id. at ¶ 54.
[19] Id. at ¶ 55.
[20] Id. at ¶ 56.
[21] Id.
[22] Id. at ¶ 58.

the District Attorney has been "admitted by former members of the District Attorney's office," though they do not specifically identify any such former members.[23]

Plaintiffs filed their initial complaint on November 19, 2015.[24] The case was originally assigned to Judge Elizabeth Foote but she recused herself on December 4, 2015.[25] An order reassigning the case to the Court was filed on December 9, 2015.[26] Plaintiffs filed an amended complaint on December 30, 2015,[27] and a second amended complaint on April 14, 2016.[28] A third and final amended complaint was filed with the consent of the District Attorney on April 21, 2016.[29]

A motion to certify class[30] was filed on January 8, 2016, and dismissed as premature on June 2, 2016.[31] The District Attorney filed the instant motion to dismiss on May 5, 2016.[32] On October 10, 2016, the Attorney General filed a motion to intervene[33] and a motion to adopt the District Attorney's motion to dismiss and to file a supplemental memorandum,[34] both of which were granted.[35] Oral argument was held on February 16, 2017.[36]

In their third amended complaint, Plaintiffs seek the certification of a class of all African-American citizens of Caddo Parish who are eligible to serve as jurors in criminal trials.[37] They also plead for the entry of declaratory judgments stating that: (1) the District Attorney has, and

---

[23] Id. at ¶ 43.
[24] Compl. (Doc. 1).
[25] Order of Recusal (Doc. 3).
[26] Order Reassigning Case (Doc. 4).
[27] Amended Complaint (Doc. 6).
[28] Second Am. Compl. (Doc. 16).
[29] Third Am. Compl. (Doc. 18).
[30] Mot. to Certify Class (Doc. 7).
[31] Order (Doc. 24).
[32] Mot. to Dismiss (Doc. 20).
[33] Mot. to Intervene (Doc. 44).
[34] Mot. to Dismiss (Doc. 45). For brevity's sake, the Court will reference only the District Attorney when addressing the arguments raised in the original motion to dismiss.
[35] Order (Doc. 47); Order (Doc. 48).
[36] Mins. (Doc. 60).
[37] Third Am. Compl. (Doc. 18) at ¶ 125.

continues to, systematically exercise peremptory strikes in a discriminatory fashion; and (2) several provisions of the Louisiana law providing for the use of peremptory strikes are unconstitutional.[38] Plaintiffs further request a variety of kinds of injunctive relief aimed at enjoining any discriminatory use, and likely eliminating any use, of peremptory strikes by the District Attorney.[39] Finally, Plaintiffs Carter, Johnson, Horton, and Hawthorne seek an award of nominal and compensatory damages for violations of their constitutional rights.[40]

## II.     LAW & ANALYSIS

The District Attorney counters that: (1) Plaintiffs lack standing; (2) Plaintiffs' claims are moot; (3) the Court should abstain from exercising jurisdiction; (4) Plaintiffs' claims are barred by res judicata and collateral estoppel; (5) Plaintiffs have failed to state a claim under 18 U.S.C. § 243; (6) Plaintiffs' claims are barred by prosecutorial immunity; (7) Plaintiffs' claims are barred by qualified immunity; and (8) Plaintiffs' claims are barred by the Eleventh Amendment.[41] Additionally, the Attorney General argues that Plaintiffs have failed to state a claim under FED. R. CIV. P. 8(a)(2). The Court will address each of these arguments in turn. However, a brief overview of the case law regarding the rights of prospective jurors will provide much needed context.

A. PROSPECTIVE JUROR RIGHTS

1. Introduction

The Fourteenth Amendment provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV. "[W]ith the exception of voting, for most citizens the honor and privilege of jury duty is their most significant opportunity

---

[38] Id.
[39] Id.
[40] Id.
[41] The District Attorney initially asserted that Plaintiffs failed to comply with FED. R. CIV. P. 5.1 and FED. R. CIV. P. 19. Mot. to Dismiss (Doc. 20-1) at 7-9. Plaintiffs filed a notice of constitutional question (Doc. 32) on August 9, 2016, and the Attorney General was allowed to intervene on October 13, 2016. Order (Doc. 47).

to participate in the democratic process." Powers v. Ohio, 499 U.S. 400, 407 (1991). The Supreme Court has found that "the Equal Protection Clause prohibits a prosecutor from using the State's peremptory challenges to exclude otherwise qualified and unbiased person from the petit jury solely by reason of their race, a practice that forecloses a significant opportunity to participate in civic life." Id. at 409.

"An individual juror does not have a right to sit on any particular petit jury, but he or she does possess the right not to be excluded from one on account of race." Id. However, as the Supreme Court explained in a previous case, "[d]efendants in criminal proceedings do not have the only cognizable legal interest in nondiscriminatory jury selection." Carter v. Jury Comm'n of Greene Cnty., 396 U.S. 320, 329 (1970). "People excluded from juries because of their race are as much aggrieved as those indicted and tried by juries chosen under a system of racial exclusion." Id. Accordingly, the Powers Court found that "individual jurors subjected to racial exclusion have the legal right to bring suit on their own behalf." Powers, 499 U.S. 400 at 414 (citing Carter, 396 U.S. at 329-30).

To begin, we refer to an observation by Justice Scalia, who stated that "the existence of such a right [by a challenged juror] would call into question the continuing existence of [peremptory strikes,] a centuries-old system that has important beneficial effects." Powers, 499 U.S. at 426 (Scalia, J., dissenting). Truthfully, we have only begun to consider the possible, likely or probable consequences of a right which allows a challenged juror to claim damages. A few we can see clearly, however. Exactly how is such a claim or suit to be managed? Here, Plaintiffs want a class action in favor of all similarly situated persons. If a class were to be certified, how in the world would one determine the real reason why a particular juror was challenged on a particular day in a trial that is past? The question is especially poignant where the trial record does not reflect

even a discussion of <u>Batson v. Kentucky</u>, 476 U.S. 79 (1986), or <u>Powers</u> as to a particular juror. Does it mean that the prosecutor, defense counsel or judge could be deposed in such a suit? Could they be required to disclose internal memos, trial notes or the like to determine (maybe) if there is some extra notation about a particular juror?

Even if a system could be devised to allow for discovery and litigation of the claim, what is next? If, in the odd case, a plaintiff is able to make out such a claim, would it mean that a whole new method for collateral attack on a final conviction would be created thereby? At stake is the principle, at least given credence sometimes, that the public has a right to see that, at some point, a defendant in a criminal trial is fully and fairly convicted. <u>See</u> <u>United States v. Frady</u>, 456 U.S. 152, 175 (1982). And, what would be the remedy? A 28 U.S.C. § 2254 petition for inadequacy of counsel, or some other habeas corpus relief yet undeveloped or unheard of? In our view this is the most serious potential consequence, as it can mean that years later an otherwise sustainable prosecution may have to be completely redone because one juror convinced one jury, or judge in the event of a bench trial, that he/she was discriminated against.

Moreover, we suggest that the simple answer to the concerns expressed has already been determined by the existence of the <u>Batson</u> remedy itself. While we certainly cannot be said to have the collective wisdom of the Supreme Court, we certainly could have read <u>Powers</u> as providing a mere extension to <u>Batson</u> without creating the legal fiction of third-party representation and without the language suggesting that the challenged venireperson has a separate right for damages.

As we will discuss below, however, because of the Supreme Court's created rights language we believe we are bound by precedent to adjudicate part of the claims made in this suit, at least for the four Plaintiffs who claim to have been racially discriminated against.

2. Batson, Powers, and the Equal Protection Clause

In Batson v. Kentucky, the Supreme Court held that a State's privilege to strike individual jurors through peremptory challenges is subject to the Equal Protection Clause. 476 U.S. at 89. Thus, the Supreme Court explained, in a trial with a black criminal defendant the Equal Protection Clause forbids prosecutors from challenging "potential jurors solely on account of their race or on the assumption that black jurors as a group will be unable impartially to consider the State's case against a black defendant." Id. Batson left unresolved, however, whether a defendant could challenge the use of peremptory strikes exercised against venirepersons of another race.

In Holland v. Illinois, a white defendant argued that the prosecutor's exercise of peremptory challenges to exclude black venirepersons from his petit jury violated his Sixth Amendment right to trial by an impartial jury. 493 U.S. 474, 475-76 (1990). The Supreme Court found that "[a] prohibition upon the exclusion of cognizable groups through peremptory challenges has no conceivable basis in the text of the Sixth Amendment, is without support in our prior decisions, and would undermine rather than further the constitutional guarantee of an impartial jury." Id. at 478. Nonetheless, several Justices made clear that such a claim may have merit under the Equal Protection Clause. Id. at 488.

The Supreme Court took up that very issue the next term in Powers. In that case, a defendant on trial for serious offenses in a state court raised an equal protection challenge to the State's use of peremptory strikes to remove a number of black jurors. Id. at 402-03. The majority was obviously troubled by the proposition that otherwise qualified venirepersons could be struck on the basis of race as long as they were a different race than the criminal defendant. Nonetheless, they had just foreclosed the Sixth Amendment as a bar to such conduct in Holland, and there was

a manifest difficulty in allowing a white defendant to directly assert an equal protection claim challenging peremptory strikes against black venirepersons.

Writing for the majority, Justice Kennedy articulated a legal framework through which it could prohibit the discriminatory use of peremptory strikes regardless of the race of the criminal defendant: allow the criminal defendant himself to raise the equal protection rights of a juror excluded from service in violation of these principles. Id. at 410. The Powers Court determined that it was appropriate to allow the criminal defendant to raise the prospective juror's legal rights because "[b]oth the excluded juror and the criminal defendant have a common interest in eliminating racial discrimination from the courtroom." Id. at 413. Thus, the Supreme Court held that "the Equal Protection Clause prohibits a prosecutor from using the State's peremptory challenges to exclude otherwise qualified and unbiased persons from the petit jury solely by reason of their race, a practice that forecloses a significant opportunity to participate in civic life." Id. at 409.

A fundamental component of this analysis, of course, was the premise that "individual jurors subjected to racial exclusion have the legal right to bring suit on their own behalf." Id. at 414 (citation omitted). Again though, as Justice Scalia pointedly noted in his dissent, "we have *never* held, or even said, that a juror has an equal protection right not to be excluded from a particular case through peremptory challenge; and the existence of such a right would call into question the continuing existence of a centuries-old system that has important beneficial effects." Id. at 426 (Scalia, J., dissenting). Indeed, even the majority was quick to emphasize that "[a]s a practical matter, however, these challenges are rare." Id. at 414. Justice Kennedy cautioned that:

> The barriers to a suit by an excluded juror are daunting. Potential jurors are not parties to the jury selection process and have no opportunity to be heard at the time of their exclusion. Nor can excluded jurors easily obtain declaratory or injunctive relief when discrimination occurs through an individual prosecutor's exercise of

peremptory challenges. Unlike a challenge to systematic practices of the jury clerk and commissioners such as we considered in *Carter*, it would be difficult for an individual juror to show a likelihood that discrimination against him at the *voir dire* stage will recur. See *Los Angeles v. Lyons*, 461 U.S. 95, 105-110, 103 S.Ct. 1660, 1666-1670, 75 L.Ed.2d 675 (1983). And, there exist considerable practical barriers to suit by the excluded juror because of the small financial stake involved and the economic burdens of litigation. See *Vasquez, supra*, 474 U.S., at 262, n. 5, 106 S.Ct., at 623, n. 5; *Rose v. Mitchell, supra*, 443 U.S., at 558, 99 S.Ct., at 3001. The reality is that a juror dismissed because of race probably will leave the courtroom possessing little incentive to set in motion the arduous process needed to vindicate his own rights. See *Barrows v. Jackson*, 346 U.S. 249, 257, 73 S.Ct. 1031, 1035, 97 L.Ed. 1586 (1953).

Id. at 414–15.

We question whether the Powers Court seriously intended to allow suits such as this one to proceed. Nonetheless, because we are bound by precedent, we must now adjudicate some of these "rare" and "daunting" claims. We remain wary, however, of exactly what consequences, intended or otherwise, will flow from the adjudication of these novel claims.

B.  12(B)(1) MOTION TO DISMISS

The District Attorney argues that the Court lacks jurisdiction for the following reasons: (1) Plaintiffs lack standing; (2) their claims are moot; and (3) the Younger doctrine mandates that the Court abstain from adjudication of these claims. We begin with an analysis of whether the Court should abstain from exercising jurisdiction in this case. See O'Hair v. White, 675 F.2d 680, 684 n.5 (5th Cir. 1982) ("Although as a general matter courts should decide standing issues first, . . . if an issue is clearly nonjusticiable for reasons other than lack of standing a court may make its decision without reaching the standing question.").

Pursuant to FED. R. CIV. P. 12(b)(1), a party may obtain dismissal of a claim for lack of subject-matter jurisdiction. In deciding a 12(b)(1) motion, the court may consider evidence outside of the pleadings and the attachments thereto. Ambraco, Inc. v. Bossclip B.V., 570 F.3d 233, 238 (5th Cir. 2009). More specifically, "under Rule 12(b)(1), the court may find a plausible set of facts

11

by considering any of the following: (1) the complaint alone; (2) the complaint supplemented by the undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." Lane v. Halliburton, 529 F.3d 548, 557 (5th Cir. 2008) (internal quotations marks omitted) (citation omitted). However, "no presumptive truthfulness attaches to the plaintiff's allegations, and the court can decide disputed issues of material fact in order to determine whether or not it has jurisdiction to hear the case." Montez v. Dep't of Navy, 392 F.3d 147, 149 (5th Cir. 2004).

　　1.　Abstention

　　The District Attorney argues that the Court should abstain from exercising jurisdiction over this action pursuant to Younger v. Harris, 401 U.S. 37 (1971). Plaintiffs dispute that the Younger doctrine applies to this case and assert that the Court is required to exercise jurisdiction. At this juncture, it is necessary to expressly delineate what injunctive and declaratory relief Plaintiffs seek as it will affect the analysis of whether, and to what degree, abstention is appropriate in this case.

　　　　a. *Requested Injunctive and Declaratory Relief*

　　In addition to any damages claims, Plaintiffs seek the following declaratory relief: (1) a declaratory judgment that the District Attorney has employed, and continues to employ, a custom, usage, and/or policy to exercise peremptory challenges against African-American citizens because of their race, in order to empanel criminal trial juries that are predominantly white; and (2) a declaratory judgment that Article 795 (C), (D), and (E) of the Louisiana Code of Criminal Procedure violate the rights of qualified African-Americans to be free from discrimination on the basis of race in jury selection in criminal trials, to the extent that those sections: (i) allow a peremptory challenge to be exercised against a qualified African-American juror, even if race is part of the motivation for the jury strike, so long as some "race-neutral" reason is given for the

challenge; and (ii) allow a peremptory challenge to be exercised against a qualified African-American juror on account of race, if both the District Attorney and the defendant's attorney strike the same juror.

Plaintiffs seek the following injunctive relief as well: (1) a permanent injunction forbidding the District Attorney from exercising any peremptory challenges in criminal jury trials; (2) in the alternative, a preliminary injunction forbidding the District Attorney from exercising any peremptory challenges to strike otherwise qualified African-American jurors from jury service in criminal jury trials; (3) in the alternative, a permanent injunction forbidding the District Attorney to employ a custom, usage, and/or policy to exercise peremptory challenges against African-American citizens because of their race, in order to empanel criminal trial juries that are predominantly white; and finally, (4) a permanent injunction requiring the District Attorney to provide training to all attorneys and investigators of the office to prevent the use of peremptory challenges to discriminate against qualified African-American jurors in future criminal jury trials.

### b. *Younger Abstention*

"In the main, federal courts are obliged to decide cases within the scope of federal jurisdiction." Sprint Commc'ns, Inc. v. Jacobs, 571 U.S. 69, 72 (2013). An exception to this general principle was articulated in Younger, in which Supreme Court enshrined a longstanding federal policy against a federal court enjoining pending state criminal proceedings absent extraordinary circumstances. 401 U.S. 37. The Supreme Court "has extended *Younger* abstention to particular state civil proceedings that are akin to criminal prosecutions, see *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975), or that implicate a State's interest in enforcing the orders and judgments of its courts, *see Pennzoil Co. v. Texaco Inc.*, 481 U.S. 1, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987)." Id. at 72-73. "Circumstances fitting within the *Younger* doctrine, we have

stressed, are 'exceptional'; they include, as catalogued in [*New Orleans Public Service, Inc. v. Council of City of New Orleans*, 491 U.S. 350 (1989)], 'state criminal prosecutions,' 'civil enforcement proceedings,' and 'civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions.'" Id. at 73.

Both parties agree that abstention pursuant to Younger is only appropriate if three conditions are met: "(1) the federal proceeding would interfere with an 'ongoing state judicial proceeding'; (2) the state has an important interest in regulating the subject matter of the claim; and (3) the plaintiff has 'an adequate opportunity in the state proceedings to raise constitutional challenges.'" Bice v. Louisiana Pub. Def. Bd., 677 F.3d 712, 716 (5th Cir. 2012) (quoting Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 432 (1982)). Plaintiffs argue that neither the first element nor the third element has been satisfied in this case.

The Court is aware of no ongoing state judicial proceedings in which any Plaintiff is a party. The District Attorney notes that the case in which Plaintiffs Carter and Johnson were discharged by his use of peremptory strikes was on appeal sometime during the pendency of this suit.[42] Even if that case remains on appeal, no Plaintiff is a party to that case.

The District Attorney argues that the first element requiring a pending state judicial proceeding is nevertheless satisfied because the injunctive relief "would affect Defendant Stewart's ability to prosecute criminal cases."[43] In support of this position he cites Bice v. Louisiana Public Defender Board, 677 F.3d 712 (5th Cir. 2012), a case in which the Fifth Circuit affirmed the district court's decision to abstain under the Younger doctrine from a suit filed by a plaintiff challenging fees assessed to fund the Louisiana Public Defenders while he was being

---

[42] Reply (Doc. 46) at 14.
[43] Id. at 13.

defended by a public defender in a municipal court proceeding. 677 F.3d at 715-16. The panel in Bice stated that:

> The interference with ongoing state proceedings need not be direct to invoke *Younger* abstention. The *Younger* doctrine prevents federal courts from exercising jurisdiction when the relief requested "would indirectly accomplish the kind of interference that *Younger v. Harris* and related cases sought to prevent." *O'Shea v. Littleton,* 414 U.S. 488, 500, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974) (internal citation omitted). Interference is established "whenever the requested relief would interfere with the state court's ability to conduct proceedings, regardless of whether the relief targets the conduct of a proceeding directly." *Joseph A. ex rel. Wolfe v. Ingram,* 275 F.3d 1253, 1272 (10th Cir.2002).

Id. at 717. The District Attorney further asserts that any such prospective relief "would constitute a major continuing intrusion of the equitable power of the federal courts into state criminal proceedings and would sharply conflict with the recognized principles of equitable restraint"[44] articulated by the Supreme Court in O'Shea v. Littleton, 414 U.S. 488 (1974).

Arguments as to indirect interference do not change the simple fact that there is no evidence before the Court that any Plaintiff is a party to an ongoing state judicial proceeding, or that any Plaintiff anticipates being a party in a future state judicial proceeding for that matter. By way of contrast, the respondent in Younger was facing state criminal charges. In Middlesex County, the case that formulated the three-part Younger abstention test cited by both parties, the respondent was the subject of pending state disciplinary proceedings. In Bice, notwithstanding any discussion of indirect interference, there was no dispute that the petitioner was a party to an ongoing municipal court proceeding. These cases do not envision a federal court declining to exercise its jurisdiction on the basis of an ongoing state judicial proceeding to which the plaintiff seeking relief in federal court is not even a party. Finally, no Batson challenges were ever raised in regard to the dismissal of Plaintiffs Carter, Johnson, Horton, and Hawthorne, and because they were never parties in the

---

[44] Id. at 14.

state criminal proceedings from which they were struck as jurors they never had an opportunity to challenge the District Attorney's peremptory strikes. Accordingly, Plaintiffs are correct that neither the first nor third elements are met.

Even though Younger is inapplicable to these facts, the District Attorney raises valid concerns regarding the principles articulated in O'Shea which demand further analysis.

### c. O'Shea Abstention

Younger and O'Shea are often conflated, for very understandable reasons. O'Shea extensively cites Younger, and both decisions are deeply concerned with issues such as federalism, comity, and equitable restraint. Not surprisingly, there is often significant overlap in the relevance of these landmark cases. In some circumstances, however, it may be necessary to treat them as closely related but distinct sources for abstention.

In O'Shea, the respondents sought to enjoin prospective criminal prosecutions brought under seemingly valid state laws on the basis of allegedly discriminatory enforcement. 414 U.S. at 500. The Supreme Court framed the requested injunctive relief as "nothing less than an ongoing federal audit of state criminal proceedings which would indirectly accomplish the kind of interference that Younger v. Harris, supra, and related cases sought to prevent." Id. "A federal court should not intervene to establish the basis for future intervention that would be so intrusive and unworkable." Id. The O'Shea Court explained that even a "periodic reporting" system would "constitute a form of monitoring of the operation of state court functions that is antipathetic to established principles of comity." Id. at 501. It further opined that such a scheme would offend principles of federalism and equitable restraint. Id. at 500-01. The availability of non-injunctive relief to respondents also weighed in favor of denying equitable relief. Id. at 504.

Other courts have distinguished abstention under Younger and O'Shea. "[A]lthough Younger does not apply in the absence of pending proceedings, . . . the considerations underlying Younger [may still be] very much at play." Disability Rights New York v. New York, No. 17-2812-CV, 2019 WL 637972, at *3 (2d Cir. Feb. 15, 2019) (citations omitted). "O'Shea is an extension of the principles set forth in *Younger*." Id. Accordingly, several circuit courts have abstained under O'Shea in certain civil contexts involving the operations of state courts. Id. at *4 (collecting cases).

Although the Fifth Circuit has never explicitly endorsed abstention solely under O'Shea, its analysis and application of O'Shea indicate that such an abstention is permissible. For example, in Ballard v. Wilson the Fifth Circuit found that the Younger doctrine required that the district court abstain from adjudicating claims for injunctive and declaratory relief in regard to a municipal overtime parking ordinance. 856 F.2d 1568, 1569 (5th Cir. 1988). That panel was nonetheless careful to note that:

> a federal court ruling on the practices and procedures of the municipal court system, as is requested by [the plaintiff], would require supervisory enforcement of the ruling by the federal courts. This type of monitoring of state court procedures also offends principles of federalism and was condemned by the Supreme Court in *O'Shea v. Littleton*, 414 U.S. 488, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974). *See also Parker v. Turner*, 626 F.2d 1, 9 (6th Cir.1980), holding that where the complaint alleges failure of some state judges properly to follow the law, a federal court will not enjoin the alleged [unconstitutional] practices even in the absence of a pending state proceeding, since the relief sought would require monitoring of the judges' conduct.

Id. at 1570; see also Tarter v. Hury, 646 F.2d 1010, 1013 (5th Cir. 1981) (finding that O'Shea was "conclusive" as to the plaintiff's claim for equitable relief regarding allegedly excessive bail); Gardner v. Luckey, 500 F.2d 712, 715 (5th Cir. 1974) ("It is clear from the face of their complaint that our appellants contemplate exactly the sort of intrusive and unworkable supervision of state judicial processes condemned in O'Shea. We hold that the District Court properly dismissed their

17

suit."). Accordingly, the Court believes it is appropriate to determine whether O'Shea mandates abstention even though the Younger doctrine is inapplicable.

In Hall v. Valeska, a case particularly apposite to this suit, a group of African-Americans who had been excluded from jury service by the use of a District Attorney's peremptory strikes alleged a practice of discrimination in peremptory challenges and brought suit against the District Attorney. 849 F. Supp. 2d 1332, 1334-35 (M.D. Ala.), aff'd, 509 F. App'x 834 (11th Cir. 2012). The plaintiffs sought a declaratory judgment that such practices were unconstitutional and violated state and federal law. Id. at 1335. They also sought injunctive relief, which included the following: (1) a permanent injunction against the defendants from engaging in the allegedly discriminatory practices; (2) appointment of a court monitor to ensure that the defendants complied with certain record collections requirements; and (3) an order mandating that the plaintiffs have meaningful access to and monitoring of jury selection. Id. at 1335-36.

After discussing O'Shea at length, the Hall district court concluded that "the Plaintiffs seek a declaration and injunction which fall within the reasoning of O'Shea." Id. at 1337-38. The district court explained that "[a]lthough the Plaintiffs, like those in O'Shea, state that they do not seek to enjoin any current or future criminal proceedings, the requested 'intervention,' which allows beneficiaries of the injunction to interfere with state criminal proceedings if there is discrimination in jury selection, is like the prohibited injunctive relief in O'Shea." Id. at 1338. It went on to state that the "relief sought by the Plaintiffs could also allow any member of the class subjected to a peremptory strike to promptly seek a contempt citation in federal court, so that resort to the federal courts by beneficiaries of the injunction to enforce the injunction would interrupt that process." Id. The district court also admonished that even though "counsel for the Plaintiffs stated that it was the Plaintiffs' prediction that an injunction by this court would be followed, under O'Shea this

court must consider the 'hypothesized recalcitrance,' and must 'focus on the likely result of an attempt to enforce an order of the nature sought here.'" Id. at 1339.

The Court will now determine whether it is necessary to abstain from consideration of Plaintiffs' requests for injunctive and declaratory relief under O'Shea.[45]

### i.    Injunctive Relief

Plaintiffs' first proposal for injunctive relief, a permanent injunction forbidding the District Attorney from exercising any peremptory challenges in criminal jury trials, is draconian. It goes far beyond the type of relief requested in O'Shea or Hall. To unilaterally disarm the District Attorney of the use of peremptory strikes, a right rooted in both statute and common law, while allowing opposing defense counsel to exercise peremptory strikes offends notions of federalism, comity, and equitable restraint even more than the ongoing federal audit of state criminal proceedings decried by the O'Shea Court. Plaintiffs offer no case law in support of such an unprecedented measure. O'Shea a fortiori prohibits the Court from issuing such an injunction.

Plaintiffs' second and third in-the-alternative requests for injunctive relief are more reminiscent of the type of relief sought in other cases. Again, they seek either a preliminary injunction forbidding the District Attorney from exercising any peremptory challenges to strike otherwise qualified African-American jurors from jury service in criminal jury trials, or a permanent injunction forbidding the District Attorney to employ a custom, usage, and/or policy to exercise peremptory challenges against African-American citizens because of their race in order to empanel criminal trial juries that are predominantly white. In particular, these proposed injunctions closely mirror the request in Hall for a permanent injunction against the defendants from engaging the discriminatory use of peremptory strikes.

---

[45] The Court assumes without deciding that abstention under O'Shea is not suitable for damages claims. See Boyd v. Farrin, 575 F. App'x 517, 519 (5th Cir. 2014) (finding Younger doctrine is not applicable to claims for damages).

19

Inherent in these alternative injunctions is the ability of African-American potential jurors in criminal trials who are subjected to a District Attorney's peremptory challenge to seek federal review before the Court. During oral argument, Plaintiffs' counsel attempted to sidestep addressing this inevitability by referring to them as "entirely salutary, prophylactic measure[s] for those prosecutors to follow the Constitution."[46] It is not the practice of the Court, however, to issue injunctions for which it has no intent or means to enforce. Moreover, the Court cannot waive away such concerns simply by assuming that the District Attorney would abide by any such injunctions. As discussed in Hall, the Court is required under O'Shea "to consider the 'hypothesized recalcitrance,' and must 'focus on the likely result of an attempt to enforce an order of the nature sought here.'" 849 F. Supp. 2d at 1339. Both of Plaintiffs' in-the-alternative requests for equitable relief would open the door to ongoing federal court intrusion into the operation of state criminal proceedings.

Similarly, a permanent injunction requiring the District Attorney to provide training to all attorneys and investigators of the office to prevent the use of peremptory challenges to discriminate against qualified African-American jurors in future criminal jury trials would require long-term involvement of the Court. Such a training program would necessarily be ongoing as it would need to continuously provide training to new attorneys and investigators. Further, the Court would have to periodically ensure that the District Attorney was adequately complying with the injunction. It is not the place of a federal court to administer training materials and practices to a District Attorney's office.

---

[46] Oral Argument Tr. (Doc. 61) at 48.

ii.   Declaratory Relief

As discussed above, Plaintiffs seek the following declaratory relief: (1) a declaratory judgment stating that the District Attorney has employed, and continues to employ, a custom, usage, and/or policy to exercise peremptory challenges against African-American citizens because of their race, in order to empanel criminal trial juries that are predominantly white; and (2) a declaratory judgment that Article 795 (C), (D), and (E) of the Louisiana Code of Criminal Procedure violate the rights of qualified African-Americans to be free from discrimination on the basis of race in jury selection in criminal trials.

"The Declaratory Judgment Act, 28 U.S.C. § 2201(a), 'is an enabling act, which confers discretion on the courts rather than an absolute right on a litigant.'" Sherwin-Williams Co. v. Holmes Cty., 343 F.3d 383, 389 (5th Cir. 2003). "In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration." Id. "It is well-settled that a district court has broad discretion over whether to decide or dismiss a declaratory judgment action." Montpelier US Ins. Co. v. Henry, No. 6:13-CV-00773, 2014 WL 1713407, at *3 (W.D. La. Apr. 29, 2014) (citations omitted).

It is difficult to overstate the magnitude of chaos that would ripple out from a federal declaratory judgment that the District Attorney has, and continues to, systematically exercise peremptory strikes in a discriminatory manner on the basis of race. Such a judgment would conceivably call into question most criminal conviction in Caddo Parish dating back to at least the time from which Plaintiffs collected data on juries, but perhaps even further. Every single person convicted in Caddo Parish in a criminal jury trial in which the District Attorney exercised a peremptory strike against an African-American prospective juror would have a potentially

colorable argument that his/her jury was empaneled in violation of the Equal Protection Clause and Batson/Powers. The creation of this novel avenue for the collateral attack of criminal convictions going back potentially decades may not be Plaintiffs' intent, but it is undoubtedly the end result. Hundreds, if not thousands, of criminal convictions could be challenged in federal courts throughout the country through 28 U.S.C. § 2254 motions for writ of habeas corpus. The principles of federalism, comity, and equitable restraint exist in large part to prevent exactly such an outcome.

Given the disposition of this matter, the Court finds it appropriate to dismiss Plaintiffs' request for a declaratory judgment finding Article 795(C), (D), and (E) unconstitutional as well. Plaintiffs acknowledge that none of them have been the subject of an Article 795 challenge. Notwithstanding any theories about the chilling effects of Article 795 in terms of the hesitancy of defense attorneys to challenge peremptory strikes, there is an insufficient factual basis for the Court to resolve this issue. The novel nature of this suit also weighs against retaining jurisdiction. Criminal defendants who have unsuccessfully raised Batson challenges subject to Article 795 are far better positioned to provide a court with the factual framework necessary to appropriately determine the constitutionality of Article 795. It would not serve the purposes of judicial economy for the Court to retain jurisdiction over this request for declaratory relief.

The Court concludes that the requested injunctive and declaratory relief falls within the type of relief condemned in O'Shea. For reasons of federalism, comity, and equitable restraint, the Court must therefore abstain from adjudication of these claims for injunctive and declaratory relief.[47] Moreover, the Court exercises its broad discretion in dismissing the claim that Article 795 is unconstitutional.

_____

[47] This finding is in harmony with the Fifth Circuit's decision to exercise jurisdiction in ODonnell v. Harris County, 892 F.3d 147 (5th Cir. 2018). In that case, plaintiffs sought injunctive relief against Harris County, Texas, concerning

22

2.  Standing

The only remaining claims are those for damages raised by Plaintiffs Carter, Johnson, Horton, and Hawthorne.

The United States Constitution limits the authority of the Federal Judiciary to "Cases" and "Controversies." U.S. CONST. art. III, § 2. "Though some of its elements express merely prudential considerations that are part of judicial self-government, the core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III." Lujan v. Defs. of Wildlife, 504 U.S. 555, 560 (1992). "In this way, '[t]he law of Article III standing . . . serves to prevent the judicial process from being used to usurp the powers of the political branches,' and confines the federal courts to a properly judicial role." Spokeo, Inc. v. Robins, 136 S.Ct. 1540, 1547 (2016) (internal citations omitted).

The Supreme Court has established that "the irreducible constitutional minimum of standing contains three elements." Lujan, 504 U.S. at 560.

> First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) "actual or imminent, not 'conjectural' or 'hypothetical.'" Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be "fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court." Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

---

issues such as the right to a timely bail hearing and a case-by-case bail evaluation. Id. at 163-64. The Fifth Circuit explained that O'Shea policy concerns were not implicated because the requested relief would "impose 'nondiscretionary procedural safeguard[s],' which will not require federal intrusion into pre-trial decisions on a case-by-case basis." Id. at 156-57. This is unlike the relief sought in this case, which would invite ongoing intrusion into state criminal proceedings for the reasons discussed above.

It is also worth briefly highlighting the ODonnell panel's treatment of abstention. After determining that the Younger doctrine did not apply, the court made a point of emphasizing that "the policy concerns underlying this doctrine are not applicable here" and cited O'Shea. Id. This lends further support to the notion that the "policy concerns" as embodied in O'Shea may independently form a basis for abstention.

Id. at 560-61 (internal citations omitted). "The party invoking federal jurisdiction bears the burden of establishing these elements." Id. at 561.

Carter, Johnson, Horton, and Hawthorne have satisfied all three standing criteria in regard to their damages claims. First, they have sufficiently stated a concrete and particularized injury by alleging that the District Attorney exercised peremptory challenges to exclude them, even though they were qualified and unbiased, from the petit jury solely by reason of their race. As alleged, this practice foreclosed a significant opportunity to participate in civic life. Second, the allegations directly attribute this injury to the alleged policy of the District Attorney to systematically exercise peremptory strikes against African-American prospective jurors on the basis of their race. Third, this asserted constitutional violation is redressable through damages. Thus, the Court finds that Carter, Johnson, Horton, and Hawthorne have standing to seek damages relief, if such relief is actually available and provable in fact.

3. Mootness

Again, the only remaining claims before the Court are the damages claims. The District Attorney concedes that the doctrine of mootness does not apply to these claims.[48] Accordingly, the Court need not address the issue of mootness.

C. 12(B)(6) MOTION TO DISMISS

The District Attorney argues that Plaintiffs have failed to state a claim for the following reasons: (1) their claims are barred by res judicata and collateral estoppel; (2) they have failed to state a claim under 18 U.S.C. § 243; (3) their federal and state claims are barred by prosecutorial immunity; (4) their federal claims are barred by qualified immunity; and (5) their federal claims

---

[48] Reply (Doc. 46), at 11 n.4.

are barred by the Eleventh Amendment. Additionally, the Attorney General argues that the Court should dismiss all claims pursuant to FED. R. CIV. P. 8(a)(2).[49]

To survive a 12(b)(6) motion to dismiss the plaintiff must plead enough facts to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. All well pleaded facts shall be deemed as true and all reasonable inferences must be drawn in the plaintiffs' favor. Lormand v. US Unwired, Inc., 565 F.3d 228, 232 (5th Cir. 2009) (citations omitted). Nonetheless, 12(b)(6) motions to dismiss are viewed with disfavor and rarely granted. Test Masters Educ. Servs., Inc. v. Singh, 428 F.3d 559, 570 (5th Cir. 2005).

1. Res Judicata

The District Attorney asserts that Plaintiffs' claims are barred by res judicata and collateral estoppel. The crux of his argument is that if a criminal defendant can raise an equal protection claim on behalf of a prospective juror, then the criminal defendant's Batson challenge, or even lack thereof, precludes a prospective juror from ever bringing his/her own equal protection claim. The District Attorney reasons that if the criminal defendant challenges a peremptory strike under Batson and a court makes a ruling, then the claim of whether the peremptory strike violated the equal protection rights of the prospective juror has been fully litigated and cannot be raised again by anyone, including the prospective juror.[50] He also goes one step farther, arguing that if the

---

[49] In his Reply, the District Attorney also argues that Plaintiffs failed to adequately plead under FED. R. CIV. P. 8(c). Reply (Doc. 46) at 16. This argument is not timely raised, and the Court will not address it. See Cavazos v. JP Morgan Chase Bank Nat'l Ass'n, 388 F. App'x 398, 399 (5th Cir. 2010) (quoting United States v. Jackson, 426 F.3d 301, 304 n.2 (5th Cir. 2005) ("Arguments raised for the first time in a reply brief, even by pro se litigants . . . are waived.")).
[50] In the context of federal res judicata law, the Court agrees with this argument. We are not persuaded by the argument that the lack of a Batson challenge would also have a preclusive effect.

criminal defendant declines to pursue a <u>Batson</u> challenge, then the equal protection claim is waived for both the criminal defendant and the prospective juror.

"The rule of res judicata encompasses two separate but linked preclusive doctrines: (1) true res judicata or claim preclusion and (2) collateral estoppel or issue preclusion." <u>Test Masters</u>, 428 F.3d at 571 (citing <u>St. Paul Mercury Ins. Co. v. Williamson</u>, 224 F.3d 425, 436 (5th Cir. 2000)). Res judicata is an affirmative defense that must generally be pleaded in an answer, not raised in a 12(b)(6) motion to dismiss. <u>Id.</u> at 570 n.2. However, the Fifth Circuit has explained that a 12(b)(6) motion to dismiss properly raises res judicata when "the facts are admitted or not controverted or are conclusively established." <u>Meyers v. Textron, Inc.</u>, 540 F. App'x 408, 410 (5th Cir. 2013) (quoting <u>Clifton v. Warnaco, Inc.</u>, 53 F.3d 1280, 1995 WL 295863, at *6 n.13 (5th Cir. 1995) (per curiam)). "When all relevant facts are shown by the court's own records, of which the court takes notice, the defense [of res judicata] may be upheld on a Rule 12(b)(6) motion without requiring an answer." <u>Id.</u> (citation omitted). Any facts necessary for the Court to decide the applicability of res judicata are agreed upon by the parties, and thus it is appropriate for the Court to rule on this matter.

"In determining the preclusive effect of an earlier state court judgment, federal courts apply the preclusion law of the state that rendered the judgment." <u>Wills v. Arizon Structures Worldwide, L.L.C.</u>, 824 F.3d 541, 545 (5th Cir. 2016) (quoting <u>Weaver v. Tex. Capital Bank N.A.</u>, 660 F.3d 900, 906 (5th Cir. 2011)). Any relevant <u>Batson</u> challenges would have been determined (or waived) in a Caddo Parish court, and thus Louisiana preclusion law applies. In Louisiana, "[t]he doctrine of res judicata is *stricti juris;* that is, any doubt concerning application of the principle of res judicata must be resolved against its application." <u>Webb</u>, 560 F. App'x at 366 (citations omitted). "[T]he party urging res judicata has the burden of proving each essential element by a preponderance of the evidence." <u>St. Paul Mercury</u>, 224 F.3d at 437 (citation omitted).

### a. *Claim Preclusion*

The Fifth Circuit has interpreted claim preclusion, or res judicata, under Louisiana law as containing five requirements:

> (1) the judgment is valid; (2) the judgment is final; (3) the parties are the same; (4) the cause or causes of action asserted in the second suit existed at the time of final judgment in the first litigation; and (5) the cause or causes of action asserted in the second suit arose out of the transaction or occurrence that was the subject matter of the first litigation.

Webb, 560 F. App'x at 365–66 (citations omitted); see LA. STAT. ANN. § 13:4231. "Under Louisiana law, identity of the parties does not mean that the parties must be the same physical or material parties, but they must appear in the suit in the same quality or capacity." St. Paul Mercury, 224 F.3d at 437. Specifically, Louisiana law defines privity as "one who . . . has acquired an interest in the subject matter affected by the judgment through or under one of the parties, as by inheritance, succession, purchase or assignment." OneBeacon Am. Ins. Co. v. Barnett, No. 18-60224, 2019 WL 993098, at *4 (5th Cir. Feb. 27, 2019) (citations omitted).

The District Attorney has failed to meet his burden of proving that both the third and fifth requirements have been met. There is no indication that the parties appear in the same quality or capacity as in the original suits. Plaintiffs have not acquired any interest from criminal defendants by inheritance, succession, purchase, or assignment. Furthermore, the District Attorney has not shown that this suit arises out of the transaction or occurrence that was the subject matter of the first litigation. For any given Plaintiff, the relevant prior action was a state criminal prosecution. The subject of that criminal prosecution would have been the alleged criminal conduct of the defendant, not a procedural issue concerning the selection of a venireperson for that action. Thus, the Court finds that res judicata does not bar Plaintiffs' remaining claims.

b. *Issue Preclusion*

Under Louisiana law, a party is collaterally estopped if "[a] judgment in favor of either the plaintiff or the defendant is conclusive, in any subsequent action between them, with respect to any issue actually litigated and determined if its determination was essential to that judgment." LA. STAT. ANN. § 13:4231. For collateral estoppel to apply, Plaintiffs must have an "identity" with one of the original parties. See OneBeacon, 2019 WL 993098, at *4. As discussed above, no such identity exists because no Plaintiff has acquired an interest from any criminal defendants as a result of inheritance, succession, purchase or assignment.

Keeping in mind that any doubt concerning the application of res judicata nor collateral estoppel bar be resolved in favor of maintaining the second action, the Court finds that neither doctrine bars Plaintiffs from raising the remaining claims.

2. 18 U.S.C. § 243

Plaintiffs acknowledge that they are not raising any claims under 18 U.S.C. § 243.

3. Prosecutorial Immunity

The District Attorney argues that Plaintiffs' state and federal claims are barred by common law prosecutorial immunity. Plaintiffs are suing the District Attorney in his official capacity; substantively, these are Monell claims against the District Attorney as a municipal entity. See Williamson v. City of Morgan City, No. CIV.A. 08-0441, 2009 WL 2176002, at *5 (W.D. La. July 21, 2009) (collecting cases). Prosecutorial immunity is inapplicable to Monell claims. Johnson v. Louisiana, No. CIV.A. 09-55, 2010 WL 996475, at *11-13 (W.D. La. Mar. 16, 2010). Accordingly, the District Attorney is not shielded by prosecutorial immunity in this case.

4. Qualified Immunity

"Unlike government officials sued in their individual capacities, municipal entities and local governing bodies do not enjoy immunity from suit, either absolute or qualified, under § 1983." Allen v. Hart, No. 2:09 CV 02011, 2010 WL 2505607, at *2 (W.D. La. June 14, 2010) (quoting Burge v. Parish of St. Tammany, 187 F.3d 452, 466 (5th Cir. 1999)). As discussed above, the damages claims are raised against the District Attorney as a municipal entity. Thus, he is not entitled to qualified immunity in this matter.

5. Sovereign Immunity

Finally, the District Attorney argues that he enjoys sovereign immunity in his official capacity under the Eleventh Amendment. However, "it is now well-established that Louisiana district attorneys are considered representatives of the state's political subdivisions rather than of the state itself and are not entitled to Eleventh Amendment immunity." Johnson, 2010 WL 996475, at *10 (citing Burge, 187 F.3d at 466). The Court finds that the District Attorney is not entitled to sovereign immunity in this suit.

6. FED. R. CIV. P. 8(a)(2)

The Attorney General contends that FED. R. CIV. P. 8(a)(2) requires dismissal of this matter because (1) the claims are implausible because of changes in membership of the District Attorney's office and (2) the claims fail to sufficiently allege causation. The first argument regarding change of staff in the District Attorney's office is in essence a mootness argument, which is irrelevant to the remaining damages claims. The Court will address the Attorney General's second argument.

"Determining whether a complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Ashcroft, 556 U.S. at 679. "[U]nder the Federal Rules of Civil Procedure's requirement of notice

pleading, defendants in all lawsuits must be given notice of the specific claims against them." Anderson v. U.S. Dep't of Hous. & Urban Dev., 554 F.3d 525, 528 (5th Cir. 2008) (citing FED. R. CIV. P. 8(a)(2)). "Although this notice does not require pleading specific facts, the complaint must 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Id. (quoting Twombly, 550 U.S. at 544).

Plaintiffs Carter, Johnson, Horton, and Hawthorne allege that they were struck as a result of the District Attorney's systemic use of discriminatory peremptory strikes. When accepted at face value, which the Court is obligated to do for the limited purpose of this analysis, Reprieve's statistics indicate that after controlling for relevant factors African-American jurors are subject to the District Attorney's peremptory strikes at five times the rate as non-African-American jurors. Carter, Johnson, Horton, and Hawthorne have specified the exact trials from which they were excused. Interestingly, Carter and Johnson were excused as jurors from the same trial, and Horton and Hawthorne were also struck as jurors in the same trial. Finally, Carter, Johnson, Horton, and Hawthorne assert that former members of the District Attorney's office have admitted to the intentional use of peremptory challenges to strike African-Americans because of their race. Together these allegations sufficiently put all parties to the suit on notice of what their claims are and the grounds upon which they rest.

Carter, Johnson, Horton, and Hawthorne have cleared the relatively low threshold of surviving a 12(b)(6) failure to state a claim challenge, the granting of which is generally disfavored. To prevail on the merits, or for that matter to survive a motion for summary judgment, is a significantly higher bar. Evidence specific to Carter, Johnson, Horton, and Hawthorne showing that the District Attorney exercised peremptory challenges against each of them because of their

race will be needed. Statistics appearing to show general trends will not suffice.[51] Accordingly, discovery will be limited to the cases from which Carter, Johnson, Horton, and Hawthorne were excused.

## III.    CONCLUSION

**IT WILL BE ORDERED** that the Motion to Dismiss (Doc. 20) be **GRANTED IN PART** and **DENIED IN PART**.

**IT WILL FURTHER BE ORDERED** that Plaintiffs' request for certification of a class be **DENIED**.

**IT WILL FURTHER BE ORDERED** that the request for a permanent injunction forbidding the District Attorney from exercising any peremptory challenges in criminal jury trials be **DISMISSED WITHOUT PREJUDICE**.

**IT WILL FURTHER BE ORDERED** that the request for a preliminary injunction forbidding the District Attorney from exercising any peremptory challenges to strike otherwise qualified African-American jurors from jury service in criminal jury trials be **DISMISSED WITHOUT PREJUDICE**.

**IT WILL FURTHER BE ORDERED** that the request for a permanent injunction forbidding the District Attorney to employ a custom, usage, and/or policy to exercise peremptory challenges against African-American citizens because of their race, in order to empanel criminal trial juries that are predominantly white be **DISMISSED WITHOUT PREJUDICE**.

**IT WILL FURTHER BE ORDERED** that the request for a permanent injunction requiring the District Attorney to provide training to all attorneys and investigators of the office to

---

[51] Notably, Plaintiffs do not allege that every single peremptory strike exercised by the District Attorney against African-American prospective jurors was done because of race.

prevent the use of peremptory challenges to discriminate against qualified African-American jurors in future criminal jury trials be **DISMISSED WITHOUT PREJUDICE.**

**IT WILL FURTHER BE ORDERED** that the request for a declaratory judgment that the District Attorney has employed, and continues to employ, a custom, usage, and/or policy to exercise peremptory challenges against African-American citizens because of their race, in order to empanel criminal trial juries that are predominantly white be **DISMISSED WITHOUT PREJUDICE.**

**IT WILL FURTHER BE ORDERED** that the request for a declaratory judgment that Article 795 (C), (D), and (E) of the Louisiana Code of Criminal Procedure violate the rights of qualified African-Americans to be free from discrimination on the basis of race in jury selection in criminal trials be **DISMISSED WITHOUT PREJUDICE.**

**IT WILL FURTHER BE ORDERED** that Reneé Pipkins, Everitt Pipkins, Theron Jackson, LaWhitney Johnson, Adriana Thomas, and Reginald Autrey be **DISMISSED** as Plaintiffs in this matter because all of their claims have been dismissed.

**IT WILL FURTHER BE ORDERED** that the Motion to Dismiss (Doc. 20) be **DENIED** inasmuch as it seeks dismissal of the request for an award of nominal and/or compensatory damages to Plaintiffs Darryl Carter, Diane Johnson, Kimberly Horton, and Theresa Hawthorne.

A separate judgment memorializing this ruling will follow.

**SIGNED** on this _____ day of April 2019, at Alexandria, Louisiana.


JUDGE DEE D. DRELL
UNITED STATES DISTRICT COURT